**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA TURNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION and NUANCE COMMUNICATIONS, INC.,<br><br>Defendants. | Case No. 4:22-cv-05827-DMR<br><br>Hon. Donna M. Ryu<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dana Turner ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF ACTION

1. JPMorgan Chase Bank ("Chase Bank") has integrated a voice biometric security solution provided by Defendant Nuance Communications, Inc. ("Nuance") (a subsidiary of Defendant Microsoft Corporation), called Gatekeeper, to detect and protect against instances of banking fraud.[1]

2. Nuance's Gatekeeper technology is used by numerous entities, including Chase Bank, to monitor channels for voice-based interactions.

3. Chase Bank utilizes Gatekeeper to monitor the telephone lines that its customers in California and across the nation call to, among other things, receive support ("Contact Center").

4. In a matter of seconds, Gatekeeper authenticates customers without prompting them to enter passwords or PINs, recite specific phrases or statements, or match the pitch, timbre, or rhythm of prior recordings of their speech. Rather, Gatekeeper analyzes callers' environments, their behavior, and other factors to passively authenticate them as they speak on the phone with the Contact Center.[2] Gatekeeper, in so doing, recognizes speakers and/or their speech, pinpoints identity mismatches, and flags instances in which known fraudsters may be calling the Contact Center, all without requesting or requiring callers' knowing cooperation.[3]

5. Critically, the Chase Bank Contact Center's implementation of Gatekeeper records and examines customers' voice prints and/or other voice stress patterns to ascertain the truth or falsity of statements that they make. For example, the Contact Center utilizes Gatekeeper to assess

---

[1] https://www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/infographic/ig-effortless-voice-auth%20jpmc-en-us.pdf

[2] *Id.*

[3] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED    1
CASE NO. 4:22-CV-05827-DMR

statements made by customers as to establish their identity (*i.e.*, stating that it is they who are the one calling), thus verifying users.

6.  Defendants never procured the express consent—written or otherwise—of any person who interacted with Chase Bank's Contact Center, prior to recording and examining Californians' voice prints and/or other voice stress patterns.

7.  Through their use of Gatekeeper, therefore, Defendants have failed to comply with numerous provisions of the California Invasion of Privacy Act ("CIPA"), including CIPA §§ 631, 632, and 637.3.

8.  Plaintiff brings this action to prevent Defendants from further violating the privacy rights of California residents, and to recover statutory damages for Defendants' having recorded and examined individuals' voice prints and/or other voice stress patterns without pursuing express written consent, in contravention of CIPA.

**PARTIES**

9.  Plaintiff Dana Turner resides in Alameda County, California and has an intent to remain there, and she is therefore a citizen of California. Ms. Turner was in California when she called the Contact Center.

10. Defendant Microsoft Corporation ("Microsoft") is a Washington corporation with its principal place of business located at 1 Microsoft Way, Redmond, Washington 98052. Microsoft does business throughout California and the entirety of the United States.

11. Defendant Nuance Communications, Inc. is a Delaware corporation with its principal place of business in Burlington, Massachusetts. Nuance is a subsidiary of Microsoft and vendor of voice recognition technologies. Nuance provides a voice biometric security solution called "Gatekeeper," which is at issue here and described more fully below.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate

1. amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

13. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the laws and benefits of doing business in California, and Plaintiff's claims arise out of each of the Defendants' forum-related activities. Further, Plaintiff called Chase Bank's Contact Center in California, and Plaintiff's voiceprint biometrics and the content of Plaintiff's communications with Chase Bank were collected in California.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District.

## FACTUAL BACKGROUND

**I.    The California Invasion Of Privacy Act**

15. The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

16. As part of CIPA, the California Legislature introduced § 631(a), which prohibits any person or entity from (i) "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," (ii) "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or (iii) "us[ing], or attempt[ing] to use … any information so obtained." CIPA § 631(a) also penalizes those who "aids, agrees with, employs, or conspires with any person" who conducts the aforementioned wiretapping.

17. The California Legislature also enacted CIPA § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication,

us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

18.  Finally, the California Legislature enacted CIPA § 637.3, which prohibits any person or entity from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without her or her express written consent given in advance of the examination or recordation."

19.  Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).  Individuals may bring an action against the violator of CIPA § 637.3 for actual damages or $1,000, whichever is greater.  Cal. Penal Code § 637.3(c).

**II.  Defendants Violate The California Invasion Of Privacy Act**

20.  Gatekeeper is a "[b]iometric authentication and intelligent fraud detection"[4] tool that "delivers authentication and fraud prevention in every voice and digital channel: live agent calls, IVRs [(interactive voice response automated telephone systems)], messaging, mobile and web apps, and even connected devices like smart TVs."[5]

21.  Gatekeeper integrates with a number of "Contact Center as a Service providers including FIve9 and Amazon Connect,"[6] and it has been deployed by the contact centers of numerous clients, including that of Chase Bank.[7]

---

[4] https://www.nuance.com/asset/en_us/collateral/enterprise/data-sheet/ds-nuance-gatekeeper-en-us.pdf

[5] https://www.nuance.com/omni-channel-customer-engagement/authentication-and-fraud-prevention/gatekeeper.html

[6] *Id.*

[7] https://www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/infographic/ig-effortless-voice-auth%20jpmc-en-us.pdf

22. Gatekeeper utilizes "[d]eep neural networks" that "analyze biometric, non-biometric, and other available data to make intelligent authentication and fraud risk assessments."[8] In part, it "[a]nalyze[s] a person's unique voice signature, including physical and speech delivery factors,"[9] as well as "how a person uses language, including word choice, grammar, emojis, and acronyms."[10]





23. Gatekeeper further notes it "analyzes how a person sounds, how they talk or type, and how they behave, while checking their device, network, location, and other factors for signs of fraud."[11]

24. Gatekeeper then compares such data "with profiles of legitimate users to detect abnormal behavior."[12]

---

[8] https://www.nuance.com/omni-channel-customer-engagement/authentication-and-fraud-prevention/gatekeeper.html

[9] *Id.*

[10] *Id.*

[11] https://www.nuance.com/asset/en_us/collateral/enterprise/data-sheet/ds-nuance-gatekeeper-en-us.pdf

[12] *Id.*

25. Gatekeeper collects and considers the unique voiceprint of the person behind the call to "[a]uthenticate customers based on the distinct characteristics of their voice, regardless of age or language"[13] and ascertain the truth or falsity of statements that consumers make.

26. Creating a voice print requires extracting an individual's phonetic features (including their unique speech patterns and characteristics) from their voice. As such, a voice print serves as an audible "fingerprint" which can directly identify an individual and can even reveal the speaker's behavioral traits.

27. Gatekeeper does so "passively,"[14] requiring "[n]o passwords, [an]d no effort"[15] to be inputted by those who are subject to its use. Instead, its functions may be fulfilled surreptitiously, "[d]uring the first few seconds of normal conversation,"[16] and without callers' knowledge or consent to Nuance's or Microsoft's inclusion in their conversations.

28. Nuance purports that it takes Gatekeeper "<1 sec audio to authenticate" users, as opposed to "57 sec+ with other authentication methods,"[17] while achieving "99% authentication success" and "90% detection of fraudsters in 15 seconds or less."[18]

29. When Gatekeeper is used on a telephone conversation, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, Gatekeeper involves Nuance and Microsoft—separate and distinct third-party entities from the parties to the conversation—using Gatekeeper to eavesdrop upon, record, extra data from, and analyze a conversation to which they are not a party. This is so because Nuance and Microsoft themselves are collecting the voiceprints

---

[13] https://www.nuance.com/asset/en_us/collateral/enterprise/data-sheet/ds-nuance-gatekeeper-en-us.pdf

[14] https://www.nuance.com/content/dam/nuance/en_us/collateral/enterprise/infographic/ig-effortless-voice-auth%20jpmc-en-us.pdf

[15] *Id.*

[16] *Id.*

[17] https://www.nuance.com/asset/en_us/collateral/enterprise/data-sheet/ds-nuance-gatekeeper-en-us.pdf

[18] *Id.*

and content of any conversation.  That data is then analyzed by Nuance and Microsoft before being provided to any entity that was a party to the conversation (like Chase Bank).

30. Gatekeeper is used by Nuance and Microsoft on calls between Chase Bank and consumers to ascertain the truth or falsity of statements that consumers make during their telephone conversations with Chase Bank's Contact Center.  For example, Gatekeeper assesses consumers' assertions regarding their respective identities (*i.e.*, stating that it is they who are the one calling), as a means of authenticating users.

31. By using Gatekeeper, Nuance and Microsoft, by virtue of collecting a consumer's voiceprint, also collects the content of any conversations between Chase Bank and consumers. Nuance and Microsoft, are required to collect and analyze consumers' answers to Chase Bank's questions in order to verify who those consumers are and the sentiment of consumers.

32. During consumers' calls with Chase Bank's Contact Center, Chase Bank fails to inform consumers, prior to any recording, (i) that third parties, Microsoft and Nuance, are listening in on consumers' confidential communications with Chase Bank, (ii) that third parties, Microsoft and Nuance, are tapping or otherwise making an unauthorized connection with the consumer's telephone conversation using Gatekeeper, (iii) that the content of consumers' confidential communications with Chase Bank are being recorded, collected, intercepted, and analyzed by third parties, Microsoft and Nuance, using Gatekeeper, and (iv) that consumers' voice prints and/or other voice stress patterns will be recorded or examined by third parties, Microsoft and Nuance, using Gatekeeper.

33. Chase Bank, likewise, fails to pursue or obtain consent—written or otherwise—from Contact Center callers, prior to allowing Microsoft and Nuance to record, examine, intercept, collect, and analyze consumer's voice prints and/or other voice stress patterns and the content of their confidential conversations with Chase Bank.

34. Therefore, Defendants' conduct violates the rights of consumers set forth by CIPA §§ 631, 632, and 637.3.

### III. Plaintiff Turner's Experience

35. Plaintiff Turner is a Chase Bank customer.

36. Plaintiff Turner has called Chase Bank's Contact Center several times, including, most recently, in or about October 2022.

37. Plaintiff Turner reasonably expected her conversation with Chase Bank to be confidential and only between Plaintiff Turner and Chase Bank. The conversation was with a banking entity, which naturally involves the discussion of confidential information, and Plaintiff Turner spoke to Chase Bank on her personal telephone and not in the direct presence of others.

38. During the call with Chase Bank, Plaintiff Turner was asked to make various "yes" or "no" statements in order to respond to questions Chase Bank asked him, or to otherwise provide additional information to Chase Bank.

39. Unbeknownst to her, when Plaintiff Turner called Chase Bank's Contact Center, her telephone was tapped by Nuance and Microsoft using Gatekeeper's voice biometric security solution.

40. Likewise, when Plaintiff Turner gave her responses to Chase Bank's questions, Plaintiff Turner's voice print and/or other voice stress patterns, as well as the content of Plaintiff Turner's confidential communications with Chase Bank, were intercepted in-transit and captured, recorded, collected, read, analyzed, and stored by Nuance and Microsoft using Gatekeeper's voice biometric security solution.

41. When Plaintiff Turner called Chase Bank's Contact Center, Defendants examined her voice, as well as voice print(s) that they had previously stored, to determine the truth or falsity of Plaintiff Turner's statements.

42. For instance, Defendants examined the truth or falsity of Plaintiff's assertions that it was, in fact, he, Dana Turner, who was calling the Contact Center, as Defendants sought to verify Plaintiff Turner's identity.

43. Chase Bank did not procure Plaintiff Turner's consent, prior to Nuance and Microsoft recording her voice print and examining her voice, nor prior to Microsoft and Nuance tapping Plaintiff Turner's phone or wiretapping her confidential communications with Chase Bank.

44. Plaintiff Turner did not give her consent, written or otherwise, to Chase Bank to have Microsoft and Nuance collect her voice print, to examine or analyze her voice for any purpose whatsoever, nor did Plaintiff Turner given her consent, written or otherwise, to Defendants to allow Microsoft and Nuance to wiretap Plaintiff Turner's confidential communications with Chase Bank.

45. Plaintiff Turner has, therefore, had her privacy severely invaded and been exposed to the risks and harmful conditions created by Defendants' violations of CIPA alleged herein.

## CLASS ALLEGATIONS

46. Plaintiff seeks to represent a class defined as all residents of the State of California who had their voice prints or other elements of their conversations recorded by Microsoft and Nuance using Gatekeeper (the "Class").

47. Plaintiff also seeks to represent a subclass defined as all residents of the State of California who had their voice prints or other elements of their conversations with Chase Bank recorded by Microsoft and Nuance using Gatekeeper (the "Subclass").

48. The Class and Subclass shall be collectively referred to as the "Classes."

49. The following people are excluded from the Classes: (1) any Judge presiding over this action and members of her or her family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel

CASE NO. 4:22-CV-05827-DMR

1 and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

50. **Numerosity:** The number of persons within the Classes are substantial and believed to amount to thousands, if not millions of persons. It is, therefore, impractical to join each member of the Classes as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Classes renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation. Moreover, the Classes are ascertainable and identifiable from Defendants' records.

51. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary between members of the Classes, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following:

   (a) Whether Defendants violated CIPA §§ 631, 632, and 637.3;

   (b) Whether Defendants sought or obtained prior express consent—written or otherwise—from Plaintiff and the Class; and

   (c) Whether Plaintiff and members of the Classes are entitled to actual and/or statutory damages for the aforementioned violations.

52. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Classes members, called Chase Bank's Contact Center and had her voice print and/or voice stress patterns, as well as the content of her confidential communications with Chase Bank, recorded, stored, collected, read, analyzed, and/or examined by Microsoft and Nuance.

53. **Adequate Representation:** Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members she seeks to represent,

she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

54. **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631(a)

55. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

56. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

57. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

58. To establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> Or
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> Or
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> Or
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

59. Microsoft and Nuance's Gatekeeper product is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

60. Microsoft and Nuance are "separate legal entit[ies] that offer[] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Microsoft and Nuance were third parties to any communication between Plaintiff and members of the Classes, on the one hand, and any entity Plaintiff and members of the Classes were communicating with, such as Chase Bank, on the other. *Id.* at 521.

61. At all relevant times, by using Gatekeeper, Microsoft and Nuance intentionally tapped, electrically or otherwise, the lines of telephone communication between Plaintiff and Class Members, on the one hand, and the entities with whom Plaintiff and Class Members were communicating, on the other hand.

62. At all relevant times, by using Gatekeeper, Microsoft and Nuance intentionally tapped, electrically or otherwise, the lines of telephone communication between Plaintiff and Subclass Members, on the one hand, and Chase Bank, on the other hand.

63. At all relevant times, by using Gatekeeper, Microsoft and Nuance willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative members of the Classes, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

64. At all relevant times, by using Gatekeeper, Microsoft and Nuance used the content of Plaintiff's and members of the Classes' communications to analyze Plaintiff's and members of the Classes' voices for identification and emotion, and that content was illegally obtained in violation of the other, aforementioned prongs of CIPA § 631(a).

65. Plaintiff and members of the Classes did not consent to any of Defendants' actions discussed above. Nor have Plaintiff or members of the Classes consented to Defendants' intentional access, interception, reading, learning, recording, collection, and analysis of Plaintiff and members of the Classes' communications.

66. The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

67. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Microsoft and Nuance's violations of CIPA § 631(a).

### COUNT II
### Violation Of The California Invasion of Privacy Act, Cal. Penal Code § 632

68. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

69. Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendants.

70. CIPA § 632(a) prohibits and entity from

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

71. Microsoft and Nuance's Gatekeeper product is an "electronic amplifying or recording device."

72. At all relevant times, the communications between Plaintiff and Subclass Members, on the one hand, and Chase Bank, on the other, were confidential.

73. At all relevant times, Microsoft and Nuance intentionally used Gatekeeper to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members, on the one hand, and Chase Bank, on the other.

74. When communicating with Chase Bank, Plaintiff and Subclass Members had an objectively reasonable expectation of privacy. Plaintiff and Subclass Members did not reasonably expect that anyone other than Chase Bank would be on the line, and that other, third party entities, Microsoft and Nuance, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

75. Plaintiff and Subclass Members did not consent to any of Microsoft and Nuance's actions. Nor have Plaintiff or Subclass Members consented to Microsoft and Nuance's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

76. The violation of CIPA § 632(a) constitutes an invasion of privacy sufficient to confer Article III standing.

77. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Microsoft and Nuance's violations of CIPA § 632(a).

**COUNT III**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 637.3**

78. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

79. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

80. CIPA § 637.3 prohibits any person or entity in the State of California from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without her or her express written consent given in advance of the examination or recordation."

81. Nuance's Gatekeeper voice biometric security solution is a "system which examines or records in any manner voice prints or other voice stress patterns" because it records and examines voice prints and/or other voice stress patterns, including those of the Plaintiff and the Classes.

82. Microsoft and Nuance used the Gatekeeper voice biometric security solution, as enabled by Chase Bank or other entities with whom Plaintiff and the Classes were communicating, to record and examine the voice prints and/or other voice stress patterns of Plaintiff and the Classes when they called the Chase Bank Contact Center or another call center.

83. Microsoft and Nuance, through Gatekeeper, recorded and examined Plaintiff's and the Classes' voice prints to determine the truth or falsity of their statements—including, for example, their statement about who they claimed to be.

84. Defendants did not obtain prior express written consent from Plaintiff and the Classes to use, examine, or record their voice prints and/or other voice stress patterns for any purpose whatsoever.

85. The violation of CIPA § 637.3 constitutes an invasion of privacy sufficient to confer Article III standing.

86. Plaintiff and members of the Classes seek statutory damages of $1,000 for each of Defendants' violation of CIPA § 637.3.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a) For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiff as the representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring that Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For statutory damages of $5,000 for each violation of CIPA §§ 631(a) and 632(a), and $1,000 for each violation of CIPA § 637.3;

(e) For pre- and post-judgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief; and

(g) For an order awarding Plaintiff and the Classes their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

| | |
|---|---|
| Dated: January 9, 2023 | Respectfully submitted, |
| | **BURSOR & FISHER, P.A.** |
| | By: */s/ Neal J. Deckant* |
| | Neal J. Deckant (State Bar No. 322946)<br>1990 North California Blvd., Suite 940<br>Walnut Creek, CA 94596<br>Telephone: (925) 300-4455<br>Facsimile: (925) 407-2700<br>E-mail: ndeckant@bursor.com |
| | *Attorneys for Plaintiff* |