Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: (415) 212-9300
Fax: (415) 373-9435

Neal J. Deckant (SBN 322946)
ndeckant@bursor.com
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, California 94596
Tel: (925) 300-4455
Fax: (925) 407-2700

Theo Benjamin (*pro hac vice*)
tbenjamin@edelson.com
EDELSON PC
350 North LaSalle Drive, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| DANA TURNER, DANIEL SMITH, and AARON YOUSHEI, individually and on behalf of all others similarly situated,<br><br>          *Plaintiffs*,<br><br>    *v.*<br><br>NUANCE COMMUNICATIONS, INC., a Delaware corporation,<br><br>          *Defendant*. | Case No.: 4:22-cv-05827-DMR<br>*Consolidated with: 4:23-cv-00797-DMR*<br><br>Hon. Donna M. Ryu<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Dana Turner, Daniel Smith, and Aaron Youshei bring this Consolidated Class Action Complaint and Demand for Jury Trial against Defendant Nuance Communications, Inc. to put a stop to its unlawful use, examination, and recording of Plaintiffs' and putative Class members' biometric voice prints or other voice stress patterns. Plaintiffs, for this Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Defendant Nuance markets and provides an artificial intelligence software-as-a-service that allows businesses to authenticate their customers' identities with their voice. Nuance describes its technology, called "Gatekeeper," as a "cloud-native biometric security solution that enables frictionless, fast, and accurate authentication for legitimate persons while detecting and preventing fraudsters."

2. Nuance is essentially a new generation lie detector test—one that is far more advanced than an old-fashioned polygraph that can only ask binary "yes" or "no" questions. Nuance listens to an individual's speech and analyzes "more than 1,000 characteristics" of a person's unique voice, such as the sound of a person's voice, how they talk, what they say, their pattern of speech, word choice, grammar, and syntax. Nuance uses "deep neural networks" and machine learning to determine whether the person is a potential fraudster or telling the truth when they identify themselves to a business.

3. Nuance performs its voice examination entirely in the "background of each engagement" or phone call. In other words, Nuance listens to the consumer's voice quietly in the background of a call, and in such a way that consumers will likely be entirely unaware they are unknowingly interacting with a third-party company. This surreptitious voice print capture, recording, examination, and analysis process is one of the core components of Nuance's overall biometric security suite.

4. Services like Nuance are becoming increasingly popular in the digital era, as businesses seek to authenticate the identities of their customers dialing into their call centers.

Nuance developed proprietary voice recognition software that records a consumer's voice, creates a biometric voice print of the caller, and then examines that voiceprint to determine whether the caller is a potential fraudster in future calls, and—above all—to determine whether the caller is telling the truth when identifying themselves and attempting to gain access to their customer account.

5. Businesses can partner with Nuance, and thus allow Nuance to have access to conversations made through the business's call centers. With this level of access, Nuance can verify a consumer's identity and determine whether the consumer is who they purport to be.

6. The use of voice analysis software without a consumer's consent poses a serious privacy risk. Voices are highly personal and can reveal a surprising amount of information about the individual, such as the individual's mental state and behaviors. For instance, machine-learning analysis of an individual's voice can reveal whether the individual is suffering from anxiety, the probability of the individual defaulting on their loan, and even the likelihood of them leaving a job.

7. Biometric identification software exposes consumers to serious and irreversible privacy risks, especially here where consumers are discussing sensitive personal information, such as financial information, and it is not clear to consumers that Nuance is recording, examining, and storing their voice prints, or otherwise involved in the conversation at all. Nuance's service is also known to have serious security flaws, including that AI-generated voices trained to sound like a specific person can circumvent Nuance's security systems and gain access to an individual's sensitive personal information.

8. Recognizing the need to protect its citizens from situations like these, California enacted the California Invasion of Privacy Act ("CIPA"), and specifically, Cal. Penal Code §§ 631, 632, and 637.3, to regulate companies that record and/or examine California citizens' voice prints or voice stress patterns without first obtaining consumers' prior express written consent. If left unchecked, California citizens are at risk of unknowingly having their voices analyzed and mined for data by third parties to make various determinations about their lifestyle, health, credibility, trustworthiness—and above all determine if they are in fact who they claim to be.

9. Despite these laws, Defendant disregards consumers' statutorily protected privacy

rights and unlawfully uses, records, and/or examines their biometric voice print or voice stress pattern data in violation of CIPA. Specifically, Defendant has violated (and continues to violate) the CIPA because it uses a system which examines and records California residents' voice prints or other voice stress patterns without first obtaining their express written consent, in violation of CIPA's provisions. *See* Cal. Penal Code §§ 631, 632, and 637.3(a).

10. Accordingly, this Complaint seeks an Order: (i) declaring that Defendant's conduct violates CIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding damages to Plaintiffs and the proposed Class.

## PARTIES

11. Plaintiff Dana Turner is a natural person and citizen of the State of California.

12. Plaintiff Daniel Smith is a natural person and a citizen of the State of California.

13. Plaintiff Aaron Youshei is a natural person and a citizen of the State of California.

14. Defendant Nuance Communications, Inc., is a corporation existing under the laws of the State of Delaware with its principal place of business located at 1 Wayside Road, Burlington, Massachusetts 01803.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because (i) at least one member of the Class, which consists of at least 100 members, is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000.000, exclusive of interest, fees, and costs, and (iii) none of the exceptions under that subsection apply to this action.

16. This Court has personal jurisdiction over Defendant because it conducts business in this State, and the conduct alleged in this Complaint occurred in, and/or emanated from, this State. Further, Plaintiffs' voiceprint or voice stress patterns and the content of Plaintiffs' communications were collected in this State.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the conduct at issue occurred in, and/or emanated, at least in part, from this District.

# FACTUAL BACKGROUND

## I.     The California Invasion of Privacy Act.

18.     The California Legislature enacted the Invasion of Privacy Act to protect the privacy rights of California citizens. The legislature expressly recognized that devices and techniques which create a serious threat to the free exercise of personal liberties cannot be tolerated in a free and civilized society. Specifically, the legislature recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

19.     As part of the Invasion of Privacy Act, the California Legislature introduced Cal. Penal Code § 631(a). Its purpose was to prohibit any person or entity from (i) "intentionally tap[ping], or mak[ing] any unauthorized connection . . . with any telegraph or telephone wire," (ii) "willfully and without the consent of all parties to the communication . . . read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or (iii) "us[ing], or attempt[ing] to use … any information so obtained." Cal. Penal Code § 631(a) also penalizes anyone who "aids, agrees with, employs, or conspires with any person" who conducts the aforementioned wiretapping. Cal. Penal Code § 631(a).

20.     As part of the Invasion of Privacy Act, the California Legislature also introduced Cal. Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." Cal. Penal Code § 632(a).

21.     Finally, as part of the Invasion of Privacy Act, the California Legislature introduced Cal. Penal Code § 637.3, which prohibits any person or entity from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation." Cal. Pen. Code § 637.3(a).

22. Creating a voice print and examining an individual's voice stress patterns requires extracting and analyzing an individual's phonetic features (including their unique speech patterns and characteristics, tone, rhythm, and pitch) from their voice. Such examination reveals a significant amount of information about the individual and can reveal the speaker's behavioral traits and determine the truthfulness of their statements. As such, a voice print serves as an audible "fingerprint" which can directly identify an individual.

23. The California Legislature intended to protect individuals from the unauthorized recording and examination of their voice prints or voice stress patterns, especially when it takes place without an individual's knowledge or permission. Such surreptitious recordings and examination pose a serious threat to California residents' personal liberties.

24. Individuals may bring an action against the violator of Cal. Penal Code §§ 631 and 632 for $5,000 per violation. *See* Cal. Penal Code §§ 631 and 632. Individuals may bring an action against a violator of Cal. Penal Code § 637.3 to recover actual damages or $1,000, whichever is greater. *See* Cal. Penal Code § 637.3(c).

## II. Nuance Violates the California Invasion of Privacy Act.

25. Polygraph tests have traditionally been administered on individuals to ostensibly determine whether they are telling the truth. Polygraph tests measure several physical indicators such as an individual's heart rate, breathing rate, skin conductivity, and blood pressure while being asked questions. The theory behind a polygraph test is that deceptive answers will produce different physical responses from truthful answers.

26. Similarly, voice prints and voice stress analysis tests seek to determine whether an individual is being deceptive by analyzing indicators in the speaker's verbal response. A voice stress test relies on the theory that certain verbal cues, such as a speaker's tone, pitch, rhythm, micro-tremors, and other subtle changes in voice convey information about the physiological and psychological state of the speaker.

27. Nuance provides a voice recognition software-as-as-service called "Gatekeeper," which is a tool intended to be integrated into the call centers of companies that have licensed

Nuance's software. The businesses using Nuance's software include the world's largest corporations and financial institutions, including Chase Bank (discussed below). These companies use Nuance's biometric voice recognition software to verify their callers' identities.

28. In its marketing materials, Nuance claims that its biometric voice recognition service is intended to efficiently detect and prevent fraud. Nuance represents that, through the application of "advanced biometrics," it is able to "authenticat[e] individuals by the way they talk, text and type and flagging potential bad actors in as quick as half a second."

29. This authentication relies on the initial creation of a voice print derived from a recording and examination of the consumers' voice and voice stress patterns. After Nuance (or one of its business customers) enrolls consumers into its database of voice prints, Nuance can compare the voice characteristics of later callers against their saved voice prints, in order to authenticate and identify callers.

30. Gatekeeper utilizes "[d]eep neural networks" that "[a]uthenticate[s] customers based on the distinct characteristics of their voice[]" and "analyze[s] word choice, grammar, syntax, and other elements across messaging and transcribed voice interactions." By "segment[ing]" and "cluster[ing]" voices and metadata from prior callers, Nuance turns individuals' personal biometric data into a product offering for corporate clients.

31. Gatekeeper uses "voice biometrics" to "[a]nalyze[s] a person's unique voice signature, including physical and speech delivery factors." Nuance also uses "conversational biometrics" or specifically "what [consumers] say" by analyzing "how a person uses language, including word choice, grammar, emojis, and acronyms." Gatekeeper further notes it uses "behavioral biometrics" which "analyzes how a person sounds, how they talk or type, and how they behave, while checking their device, network, location, and other factors for signs of fraud, as shown by Nuance's marketing below.

## AI Risk Engine

Deep neural networks transparently analyze biometric, non-biometric, and other available data to make intelligent authentication and fraud risk assessments.



**Voice biometrics**
*How they sound*
Analyze a person's unique voice signature, including physical and speech delivery factors.



**Behavioral biometrics**
*How they behave*
Analyze how a person interacts with their device, including speed, swiping patterns, and presses.



**Conversational biometrics**
*What they say*
Analyze how a person uses language, including word choice, grammar, emojis, and acronyms.

32.     In recording and creating consumer voice prints, Nuance has also amassed a massive voiceprint database of individuals, including those it considers to be "fraudsters." Nuance's technology can supposedly "[a]uthenticate trusted calls and then check caller voices against a watchlist to immediately alert on known fraudsters."

33.     Nuance further promises that "[o]nce they've enrolled a voiceprint, [a consumer's] account is secured for life," suggesting the company retains callers' biometric data for a significant period of time.

34.     The consequences of amassing a database of suspected fraudsters classified solely through voice analysis performed by artificial intelligence is dire. As a preliminary matter, artificial intelligence is extremely susceptible to racial and gender bias. It has been shown that artificial intelligence struggles to properly identify voices of non-white people and women. The danger that non-white people and women (and almost anyone) could be improperly classified by artificial intelligence as liars and fraudsters is serious.

35.     The fear of being improperly classified as a liar by companies like Nuance's Gatekeeper is by no means mere fiction. When First Direct, an HSBC affiliated bank, decided to use voice examination technology in its call centers, some individuals complained that they were locked out of their accounts because the software determined the individual was not who they purported to be. One woman commented, "I was locked out of my account for two weeks, which really put me in

jeopardy because I was unable to pay my bills."

36.     Nuance's service has also been known to include serious security flaws, including that Nuance's system can be easily fooled by fraudsters. In March 2023, the *Guardian* reported that Nuance's voice authentication system can be tricked by simply using a free online AI voice cloning service using an audio recording of a person's voice.

37.     Worse, Nuance surreptitiously creates voice prints from the consumer's voice without their knowledge or express written consent. In fact, Nuance's software seamlessly incorporates into its customers' call centers, without adequate notice (or any at all) that Nuance (a third-party) is even involved in the call.

38.     Nuance explains that its voice recognition solution "passively authenticates customers in seconds," requiring "[n]o passwords, [an]d no effort" to be inputted by those who are subject to its use.

39.     When Gatekeeper is used on a telephone conversation, it is not like a tape recorder, or a "tool" used by one party to record the other. Instead, Nuance—a separate and distinct third-party entity from the parties to the conversation—uses Gatekeeper to eavesdrop upon, record, extract data from, and analyze a conversation to which they are not a known party. The data, or voiceprints, that Nuance extracts from consumers while eavesdropping is then analyzed by Nuance before being provided to its business partners like Chase Bank to authenticate consumers.

40.     Nuance further uses Gatekeeper on calls between consumers and businesses such as Chase Bank to ascertain the truth or falsity of statements that consumers make during their telephone conversations with call centers. For example, Gatekeeper assesses consumers' assertions regarding their respective identities (*i.e.*, stating that it is they who are the ones calling) as a means of authenticating users.

41.     Neither Nuance nor its call center customers inform the consumer that (i) that a third party, Nuance, is listening in on the consumers' confidential communications with Nuance's customers like Chase Bank; (ii) that Nuance is tapping or otherwise making unauthorized connection with consumers' telephone conversations using the biometric software Gatekeeper; (iii)

that the content of the consumers' confidential communications with companies such as Chase Bank are being recorded, collected, intercepted, and analyzed by the third-party Nuance; or (iv) that Nuance will create unique voice prints from the consumers and/or analyze the consumers' voice stress patterns and subsequently use them to verify their identity.

42.     Likewise, Nuance fails to obtain consent from consumers—express written or otherwise—prior to recording, examining, intercepting, collecting, and analyzing the consumers' voice prints and/or voice stress patterns and the content of their confidential conversations with Nuance customers like Chase Bank.

43.     Ultimately, Nuance's conduct disregards consumers' statutorily protected privacy rights in violation of Cal. Penal Code §§ 631, 632, and 637.3.

## FACTS SPECIFIC TO PLAINTIFF TURNER

44.     Plaintiff Turner has called Chase's customer support call center on numerous occasions, including, most recently in or about October 2022.

45.     Plaintiff Turner reasonably expected her conversation with Chase to be confidential and only between Plaintiff Turner and Chase. The conversation was with a banking entity, which naturally involves the discussion of confidential information, and Plaintiff Turner spoke to Chase on her personal telephone and not in the direct presence of others.

46.     During the call with Chase Bank, Plaintiff Turner was asked to make various "yes" or "no" statements in order to respond to questions Chase Bank asked her, or to otherwise provide additional information to Chase Bank

47.     Unbeknownst to her, when Plaintiff Turner called Chase Bank's Contact Center, her telephone was tapped by Nuance using Gatekeeper's voice biometric security solution.

48.     Likewise, and unbeknownst to Plaintiff Turner, when she called Chase's customer support, Nuance's technology recorded and examined her voice, including her voice stress patterns, to create a voice print. Plaintiff Turner's voice print was also automatically enrolled in Nuance's biometric voice print database. The content of Plaintiff Turner's confidential communications with Chase were intercepted in transit and captured, recorded, collected, read, analyzed, and stored by

Nuance using Gatekeeper's voice biometric security solution.

49.    When Plaintiff Turner called Chase's customer support, Nuance's technology examined her voice and the voice print it has stored in its database to authenticate Turner's identity and to determine the truth or falsity of her statements (*e.g.*, to determine whether Turner is the person who she purports to be).

50.    Neither Nuance nor Chase disclosed to Turner that her voice was being recorded or analyzed by Nuance to make a voice print—nor that her voice print was being enrolled in Nuance's voice print database—for the purposes of determining the truth or falsity of Turner's statements. Likewise, Plaintiff Turner did not give her consent, written or otherwise, to either Nuance or Chase to allow Nuance to wiretap her confidential communications with Chase.

51.    Plaintiff Turner did not give her consent—written or otherwise—to Nuance to collect her voice print and to examine, record, wiretap, or analyze her voice for any purpose whatsoever.

52.    Plaintiff Turner has, therefore, been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

53.    Plaintiff Turner seeks statutory damages under CIPA as compensation for the injuries Defendant has caused.

**FACTS SPECIFIC TO PLAINTIFF SMITH**

54.    Plaintiff Smith has called Chase's customer support call center on numerous occasions within the past two years.

55.    Plaintiff Smith reasonably expected his conversation with Chase to be confidential and only between Plaintiff Smith and Chase. The conversation was with a banking entity, which naturally involves the discussion of confidential information, and Plaintiff Smith spoke to Chase on his personal telephone and not in the direct presence of others.

56.    Unbeknownst to him, when Plaintiff Smith called Chase Bank's Contact Center, his telephone was tapped by Nuance using Gatekeeper's voice biometric security solution.

57.    Likewise, and unbeknownst to Smith, when he called Chase's customer support, Nuance's technology recorded and examined his voice, including his voice stress patterns, to create

a voice print. Plaintiff Smith's voice print was also automatically enrolled in Nuance's biometric voice print database. The content of Plaintiff Smith's confidential communications with Chase were intercepted in transit and captured, recorded, collected, read, analyzed, and stored by Nuance using Gatekeeper's voice biometric security solution.

58. When Plaintiff Smith called Chase's customer support, Nuance's technology examined his voice and the voice print it has stored in its database to authenticate Smith's identity and to determine the truth or falsity of his statements (*e.g.*, to determine whether Smith is the person who he purports to be).

59. Neither Nuance nor Chase disclosed to Smith that his voice was being recorded or analyzed by Nuance to make a voice print—nor that his voice print was being enrolled in Nuance's voice print database—for the purposes of determining the truth or falsity of Smith's statements. Likewise, Plaintiff Smith did not give his consent, written or otherwise, to either Nuance or Chase to allow Nuance to wiretap his confidential communications with Chase.

60. Plaintiff Smith did not give his consent—written or otherwise—to Nuance to collect his voice print and to examine, record, wiretap, or analyze his voice for any purpose whatsoever.

61. Plaintiff Smith has, therefore, been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

62. Plaintiff Smith seeks statutory damages under CIPA as compensation for the injuries Defendant has caused.

## FACTS SPECIFIC TO PLAINTIFF YOUSHEI

63. Plaintiff Youshei has called Chase's customer support call center multiple times during the past two years.

64. Plaintiff Youshei reasonably expected his conversation with Chase to be confidential and only between Plaintiff Youshei and Chase. The conversation was with a banking entity, which naturally involves the discussion of confidential information, and Plaintiff Youshei spoke to Chase on his personal telephone and not in the direct presence of others.

65. Unbeknownst to him, when Plaintiff Youshei called Chase Bank's Contact Center,

his telephone was tapped by Nuance using Gatekeeper's voice biometric security solution.

66. Likewise, and unbeknownst to Plaintiff Youshei, when he called Chase's customer support, Nuance's technology recorded and examined his voice, including Youshei's voice stress patterns, to create a voice print. Plaintiff Youshei's voice print was also automatically enrolled in Nuance's biometric voice print database. The content of Plaintiff Youshei's confidential communications with Chase were intercepted in transit and captured, recorded, collected, read, analyzed, and stored by Nuance using Gatekeeper's voice biometric security solution.

67. When Plaintiff Youshei called Chase's customer support, Nuance's technology examined his voice and the voice print it has stored in its database. As alleged above, Nuance's technology did so in order to assess the truth or falsity of his statements (*e.g.*, to determine that Youshei was who he purported to be).

68. Neither Nuance nor Chase disclosed to Youshei that his voice was being recorded or analyzed by Nuance to make a voice print—nor that his voice print was being enrolled in Nuance's voice print database—for the purposes of determining the truth or falsity of Youshei's statements. Likewise, Plaintiff Youshei did not give his consent, written or otherwise, to either Nuance or Chase to allow Nuance to wiretap his confidential communications with Chase.

69. Plaintiff Youshei did not give his consent—written or otherwise—to Nuance to collect his voice print and to examine, record, wiretap, or analyze his voice for any purpose whatsoever.

70. Plaintiff Youshei has, therefore, been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

71. Plaintiff Youshei seeks statutory damages under CIPA as compensation for the injuries Defendant has caused.

## CLASS ALLEGATIONS

72. **Class Definition**: Plaintiffs Dana Turner, Daniel Smith, and Aaron Youshei bring this action on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All residents of the State of California who had their voice prints, voice stress patterns, or other elements of their conversation recorded and examined by Nuance without first

obtaining prior written consent.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

73. **Ascertainability and Numerosity**: The exact number of Class members is unknown to Plaintiffs at this time, but on information and belief, there are thousands of people in the Class, making joinder of each individual member impracticable. Additionally, the Class is ascertainable because its members will be easily identified through Defendant's records.

74. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a) whether Defendant violated Cal. Penal Code §§ 631, 632, and 637.3;

    b) whether Defendant used a system which intentionally accessed, intercepted, read, learned, recorded, collected, and analyzed the communications of Plaintiffs and the Class;

    c) whether Defendant used a system which examines or records the voice prints or voice stress patterns of Plaintiffs and the Class;

    d) whether Defendant used voice prints or voice stress patterns to determine the truth or falsity of statements made by Plaintiffs and the Class; and

    e) Whether Defendant obtained prior express written consent from Plaintiffs and the Class.

75. **Typicality**: Plaintiffs' claims are typical of the claims of all the other members of the Class. Plaintiffs and the Class members sustained substantially similar damages as a result of Defendant's uniform wrongful conduct, based upon the same interactions that were made uniformly with Plaintiffs and the Class.

76. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

77. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### Violation of Cal. Penal Code § 631(a)
#### (On Behalf of Plaintiffs and the Class)

78. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

79. Cal. Penal Code § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978); Cal. Penal Code § 631(a).

80. To establish liability under Cal. Penal Code § 631(a), a plaintiff need only establish

that the defendant, "by means of any machine, instrument, or contrivance, or in any other manner,"

does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable or is being sent from, or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

Cal. Penal Code § 631(a).

81.    Nuance's Gatekeeper product is a "machine, instrument, or contrivance, or . . . other manner" used to engage in the prohibited conduct at issue here.

82.    Defendant Nuance is a "separate legal entity that offers 'software-as-a- service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Nuance was third party to any communication between Plaintiffs and members of the Class, on the one hand, and any entity Plaintiffs and members of the Class were communicating with, such as Chase Bank, on the other. *Id.* at 521.

83.    At all relevant times, by using Gatekeeper, Nuance intentionally tapped, electrically or otherwise, the lines of telephone communication between Plaintiffs and Class Members, on the one hand, and the entities with whom Plaintiff and Class Members were communicating, on the

other hand.

84.     At all relevant times, by using Gatekeeper, Nuance willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, or attempted to read, or learn the contents or meaning of electronic communications of Plaintiffs and Class members, while the electronic communications were in transit or passing over any wire, line, or cable or were being sent from or received at any place within California.

85.     At all relevant times, by using Gatekeeper, Nuance used the content of Plaintiffs' and Class members' communications to analyze Plaintiffs' and Class members' voices for identification and emotion, and that content was illegally obtained in violation of the other, aforementioned prongs of Cal. Penal Code § 631(a).

86.     Plaintiffs and Class members did not consent to any of Defendant's actions discussed above. Nor have Plaintiffs and Class members consented to Defendant's intentional access, interception, reading, learning, recording, collection, and analysis of Plaintiffs and Class members communications.

87.     The violation of Cal. Penal Code § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

88.     On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with CIPA's requirements for the intentional access, interception, reading, learning, record, collection, and analysis of Plaintiffs and Class members communications as described herein; and (2) damages of $5,000 for each violation of CIPA pursuant to Cal. Penal Code § 631(a).

## SECOND CAUE OF ACTION
### Violation of Cal. Penal Code § 632(a)
### (On Behalf of Plaintiffs and the Class)

89.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

90.     Cal. Penal Code § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, use[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the

communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a).

91. Nuance's Gatekeeper product is an "electronic amplifying or recording device."

92. At all relevant times, the communications between Plaintiffs and Class members, on the one hand, and Chase Bank, on the other, were confidential.

93. At all relevant times, Nuance intentionally used Gatekeeper to eavesdrop upon and record the confidential communications of Plaintiffs and the Class members, on the one hand, and Chase Bank, on the other.

94. When communicating with Chase Bank, Plaintiffs and Class members had an objectively reasonable expectation of privacy. Plaintiff and Class members did not reasonably expect that anyone other than Chase Bank would be on the line, and that another third-party entity, Nuance, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiffs and the Class members.

95. Plaintiffs and Class members did not consent to any of Nuance's actions. Nor have Plaintiffs or Class members consented to Nuance's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiffs and the Class members.

96. The violation of Cal. Penal Code § 632(a) constitutes an invasion of privacy sufficient to confer Article III standing.

97. On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with CIPA's requirements for the use of an electronic amplifying or recording device that eavesdrops upon and records the communications of Plaintiffs and Class members as described herein; and (2) damages of $5,000 for each violation of CIPA pursuant to Cal. Penal Code § 632(a).

### THIRD CAUSE OF ACTION
**Violation of Cal. Penal Code § 637.3**
**(On Behalf of Plaintiffs and the Class)**

98. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

99.     Cal. Penal Code § 637.3 prohibits any person or entity in the State of California from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation." Cal. Penal Code § 637.3(a).

100.    Defendant is a corporation and therefore an "entity" under CIPA. *Id.*

101.    When Plaintiffs and the Class called call centers using Nuance's software (including, for example, Chase Bank) and identified themselves, Defendant examined and recorded their voice prints or voice stress patterns to determine the truth or falsity of their statements. In other words, Defendant used its biometric voice recognition software to examine the caller's voice and determine whether they are who they claim to be.

102.    Defendant automatically enrolled Plaintiffs' and the Class Members' voice prints into their voice print database

103.    Defendant did not obtain express written consent from Plaintiffs and the Class to use, examine, or record their voice prints or voice stress patterns for any purpose whatsoever.

104.    The violation of Cal. Penal Code § 637.3 constitutes an invasion of privacy sufficient to confer Article III standing.

105.    On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with CIPA's requirements for the use, recording, and examination of voice prints as described herein; and (2) damages of $1,000 for each violation of CIPA pursuant to Cal. Penal Code § 637.3(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Dana Turner, Daniel Smith, and Aaron Youshei, on behalf of themselves and the Class, respectfully request that the Court enter an Order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Turner, Smith, and Youshei as representatives of the Class, and appointing their counsel

as Class Counsel;

   B.   Declaring that Defendant's actions, as set out above, violate CIPA;

   C.   Awarding statutory damages of $5,000 for *each* violation of CIPA pursuant to Cal.
Penal Code §§ 631(a) and 632(a), and $1,000 for *each* violation of CIPA pursuant to Cal. Penal
Code § 637.3(c);

   D.   Awarding injunctive and other equitable relief as is necessary to protect the interests
of the Class;

   E.   Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys'
fees;

   F.   Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent
allowable; and

   G.   Awarding such other and further relief as equity and justice may require.

### JURY TRIAL

   Plaintiffs Dana Turner, Daniel Smith, and Aaron Youshei demand a trial by jury for all
issues so triable.

                                        Respectfully submitted,

                                        **DANA TURNER, DANIEL SMITH and AARON
                                        YOUSHEI**, individually and on behalf of all others
                                        similarly situated,

Dated: June 14, 2023                    By: /s/ Theo Benjamin
                                            One of Plaintiffs' Attorneys

                                        Rafey S. Balabanian (SBN 315962)
                                        rbalabanian@edelson.com
                                        EDELSON PC
                                        150 California Street, 18th Floor
                                        San Francisco, California 94111
                                        Tel: (415) 212-9300
                                        Fax: (415) 373-9435

                                        Theo Benjamin (*pro hac vice*)
                                        tbenjamin@edelson.com
                                        EDELSON PC
                                        350 North La Salle Dr., 14th Floor
                                        Chicago, IL 60654

Tel: (312) 589-6370
Fax: (312) 589-6378

Neal J. Deckant (SBN 322946)
ndeckant@bursor.com
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Counsel for Plaintiffs*