Neal J. Deckant (SBN 322946)
ndeckant@bursor.com
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
BURSOR AND FISHER, P.A.
Tel: (925) 300-4455
Fax: (925) 407-2700

Rafey S. Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: (415) 212-9300
Fax: (415) 373-9435

Theo Benjamin (*pro hac vice*)
tbenjamin@edelson.com
EDELSON PC
350 N. LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 572-7212
Fax: (312) 589-6378

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| DANA TURNER, DANIEL SMITH, and AARON YOUSHEI, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>NUANCE COMMUNICATIONS, INC., a Delaware corporation,<br><br>*Defendant*. | Case No. 4:22-cv-05827-DMR<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date: October 26, 2023<br>Time: 1:00 p.m.<br>Ctrm: 4<br>Judge: Hon. Donna M. Ryu |

**TABLE OF CONTENTS**

**PAGE(S)**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Plaintiffs Allege Nuance (Not Chase) Violated The California Invasion Of Privacy Act .......... 2

B. Nuance Is Not A Signatory To The Chase Deposit Account Agreement, Nor Is Nuance Mentioned Anywhere In The Agreement .......... 4

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

A. The Plain Terms Of The Chase Agreement Limit Its Scope To Claims Concerning Plaintiffs And Chase, Not Non-Signatories Like Nuance .......... 6

B. Nuance Cannot Claim The Benefits Of Chase's Deposit Account Agreement Under The Doctrine Of Equitable Estoppel .......... 7

1. Plaintiffs' Invasion of Privacy Allegations Are Unrelated to Chase's Deposit Account Agreements .......... 8

2. Plaintiffs Exclusively Allege That Nuance's Sole Conduct Caused Their Privacy Violations—Not "Interdependent And Concerted Misconduct" Between Chase And Nuance .......... 13

C. Even If Nuance Could Enforce The Chase Agreement (And It Cannot), The Arbitration Clause Does Not Cover Plaintiffs' Privacy Claims .......... 15

D. Plaintiffs Are Entitled To Decide Whom To Sue And Where .......... 17

V. CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) .......... 5

*Britton v. Co-op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993) .......... 1

*Bugarin v. All Nippon Airways Co.*,
2021 WL 4974978 (N.D. Cal. Oct. 26, 2021) .......... 8, 12

*Caterpillar Inc. v. Williams*,
482 U.S. 389 (1987) .......... 18

*In re Carrier IQ, Inc. Consumer Priv. Litig.*,
2014 WL 1338474 (N.D. Cal. Mar. 28, 2014) .......... *Passim*

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) .......... 7

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) .......... 15, 16

*Davitashvili v. Grubhub, Inc.*,
2023 WL 2537777 (S.D.N.Y. Mar. 16, 2023) .......... 16

*Dill v. JPMorgan Chase Bank, N.A.*,
2020 WL 4345755 (S.D.N.Y. July 29, 2020) .......... 16

*Doe v. Princess Cruise Lines, Ltd.*,
657 F.3d 1204 (11th Cir. 2011) .......... 15, 16

*Franklin v. Cmty. Reg'l. Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) .......... 12, 13

*Garbie v. DaimlerChrysler Corp.*,
211 F.3d 407 (7th Cir. 2000) .......... 18

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (Cal. Ct. App. Apr. 22, 2009) .......... 1, 7, 14

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 2, 16, 17

*Johnson v. JP Morgan Chase Bank, N.A.*,
2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) .......... 16

*Jones v. Halliburton Co.*,
583 F.3d 228 (5th Cir. 2009) ........ 15

*Jurosky v. BMW of N. Am., LLC*,
441 F. Supp. 3d 963 (S.D. Cal. 2020) ........ 13, 14

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ........ *Passim*

*Lap-ping Chen v. BMW of N. Am., LLC*,
2021 WL 3604691 (N.D. Cal 2021) ........ 7, 8, 10

*Lincoln Prop. Co. v. Roche*,
546 U.S. 81 (2005) ........ 17

*Mance v. Mercedes-Benz USA*,
901 F. Supp. 2d 1147 (N.D. Cal. 2012) ........ 11

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
858 F.2d 509 (9th Cir. 1988) ........ 18

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009) ........ 12

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ........ *Passim*

*Newtok Village v. Patrick*,
21 F.4th 608 (9th Cir. 2021) ........ 17

*Ngo v. BMW of N. Am., LLC*,
23 F.4th 942 (9th Cir. 2022) ........ 10, 11

*Norcia v. Samsung Telecomm. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ........ 7

*In re Pac. Fertility Ctr. Litig.*,
814 F. App'x 206 (9th Cir. 2020) ........ 13, 15

*Pestarino v. Ford Motor Co.*,
2020 WL 3187370 (N.D. Cal. June 15, 2020) ........ 12

*Rajagopalan v. NoteWorld, LLC*,
718 F.3d 844 (9th Cir. 2013) ........ 8, 9

*Rhodes v. Robinson*,
621 F.3d 1002 (9th Cir. 2010) ........ 14

*Sandquist v. Lebo Auto., Inc.*,
1 Cal. 5th 233 (2016)........................................................................................................7

*Satterfield v. Simon Schuster*,
569 F.3d 946 (9th Cir. 2009)..............................................................................................6

*Soto v. Am. Honda Motor Co., Inc.*,
2012 WL 5877476 (N.D. Cal. Nov. 20, 2012)...................................................11, 12, 16

*Sunmonu v. Chase Bank, N.A.*,
2019 WL 1258788 (D. Md. Mar. 19, 2019).....................................................................16

*U. S. ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017)........................................................................................15, 17

**Statutes**

9 U.S.C. § 1 ......................................................................................................................5

Cal. Civ. Code § 1639 ........................................................................................................7

Cal. Civ. Code § 1644 ........................................................................................................6

Cal. Penal Code § 630 ........................................................................................................3

Cal. Penal Code §§ 631, 632, 637.3 ..................................................................................3

**Rules**

Fed. R. Civ. P. 15(a)(2) ....................................................................................................18

## I. INTRODUCTION

Defendant Nuance Communications, Inc. ("Nuance") has moved to compel arbitration under a contract that Nuance did not sign, and to which Nuance is not a party. But Nuance and Plaintiffs never agreed to arbitrate. In fact, they have never agreed to anything—Plaintiffs have never even heard of Nuance prior to this litigation.

Nuance bases its motion to compel arbitration on an agreement between Plaintiffs and JP Morgan Chase Bank ("Chase"). Nuance's primary argument is that Plaintiffs are bound by obligations to arbitrate in their Chase Deposit Account Agreements (the "Chase Agreement"). However, the express terms of that agreement limit its applicability to customers and Chase and excludes disputes—like this one—where Chase is not a named party. *See* MTC at 3, Deck Decl. Ex. A at 25 ("Arbitration applies whenever there is a Claim *between you and us*.") (emphasis added). Indeed, "us" is specifically and narrowly defined as "JPMorgan Chase Bank, N.A. or 'Chase,'" and does not extend to other entities like Nuance. Deck Decl. Ex. A at 5.

The general rule is that non-signatories cannot enforce arbitration clauses like the one found in the Chase Agreement. Therefore, Nuance lacks standing to compel. *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) ("An entity that is neither a party nor agent for nor beneficiary of the contract lacks standing to compel arbitration"). The only exception to this general rule on which Nuance relies is the doctrine of equitable estoppel. The purpose of that doctrine is a narrow one: to prevent a plaintiff from having it both ways, in bringing a claim that is founded in or "intertwined" with a contract while trying to avoid the arbitration piece of the contract alone. That does not apply where, as here, the claim is separate from the contract itself. Courts have repeatedly rejected the very argument Nuance is making, denying estoppel even over claims that are clearly predicated on the existence of contracts and relationships that exist only as a result of those contracts. *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230-32 (9th Cir. 2013) ("In California, equitable estoppel is inapplicable where a plaintiff's allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [customer] agreements.") (citing and summarizing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013)); *Goldman v. KPMG, LLP* (2009) 173 Cal. App. 4th 209, 218 (Cal. Ct. App. Apr. 22, 2009) ("merely making

reference to an agreement with an arbitration clause is not enough" to compel arbitration) (internal quotes omitted).

Finally, even if Nuance had standing to enforce Plaintiffs' agreement with Chase (and it does not), Plaintiffs do not seek to enforce any contract claims. Instead, they raise violations of the California Invasion of Privacy Act ("CIPA") for Nuance's (not Chase's) unlawful examination and recording of Plaintiffs' voice prints without their consent. These violations affect broad groups of consumers regardless of whether they have signed the Chase Agreement, including prospective consumers who call Chase, as well as consumers who call another Nuance business partner. Such claims fall outside the scope of Chase's arbitration clause because these claims arise independently of and are unrelated to the Chase Agreement. *See*, *e.g.*, *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1102 (9th Cir. 2023) (privacy claims not subject to arbitration where "the allegations underlying [plaintiff's] claims involve [] misconduct wholly unrelated to the parties' agreement").

Accordingly, the motion to compel arbitration should be denied.

## II. BACKGROUND

### A. Plaintiffs Allege Nuance (Not Chase) Violated The California Invasion Of Privacy Act

Nuance markets and sells propriety software called "Gatekeeper" that allows businesses to authenticate their customers' identities with their voice. Dkt. No. 34, Consolidated Amended Compl. ("CAC") ¶ 1. Nuance is essentially the next generation of lie detector tests. *Id.* ¶ 2. Specifically, Nuance's software uses artificial intelligence and deep neural networks to analyze a consumer's distinct voice characteristics to determine whether the person is telling the truth when they identify themselves to a business. *Id.* ¶¶ 3, 31. Nuance's software listens to an individual's speech and analyzes a person's unique voice, such as the sound of a person's voice, how they talk, what they say, their pattern of speech, word choice, grammar, and syntax. *Id.* ¶ 2.

A core feature of Nuance's voice recognition solution is that it operates entirely in the background of each phone call. *Id.* ¶ 3. In other words, Nuance listens to a consumer's voice quietly in the background of each call and passively records, examines, and analyzes a consumer's voice without any notice to the consumer that Nuance is even involved in the call at all. *Id.* ¶ 3, 37-38.

To confirm a consumer's identity, Nuance records a customer's voice, creates a biometric voice print of the caller, and then examines that voice print to determine whether the caller is a potential fraudster in future calls and whether the caller is telling the truth when identifying themselves and attempting to gain access to their customer account. *Id.* ¶ 4. Businesses, like Chase, can partner with Nuance and use Nuance's proprietary software for their own call centers to verify a consumer's identity and determine whether the consumer is who they purport to be. *Id.* ¶¶ 4, 5. As a third-party technology provider, Nuance provides voice recognition software-as-a-service, which allows businesses to license and integrate Nuance's existing technology, without needing to build an in-house voice verification system. *Id.* ¶ 27.

The use of voice analysis software without a consumer's consent poses serious privacy risks. *Id.* ¶ 6. Voices are highly personal, and reveal a lot of information about the individual, such as the individual's mental state and behaviors. *Id.* ¶ 6. Biometric identification software exposes consumers to serious privacy risks, especially where consumers are discussing sensitive personal information, such as financial information, and it is not clear to consumers that Nuance is recording, examining, and storing their voice prints. *Id.* ¶ 7.

The California Legislature enacted the Invasion of Privacy Act to protect the privacy rights of California citizens against practices like these. Specifically, the legislature recognized "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

Plaintiffs allege that, in the course of providing biometric verification services, Nuance used a system to examine and record their voice prints or other voice stress patterns without their consent in violation of the California Invasion of Privacy Act while they were on calls with Chase. CAC ¶¶ 44-71. Cal. Penal Code §§ 631, 632, 637.3. Plaintiffs filed a consolidated class action complaint against Nuance in this Court.[1] Dkt. No. 34. Plaintiffs assert claims against Nuance under CIPA on behalf of a putative class of California residents "who had their voice prints, voice stress patterns,

[1] On May 31, 2023 the Court consolidated two related suits against Nuance—the *Turner* action and the *Smith* action—alleging similar violations of CIPA. Dkt. No. 33.

or other elements of their conversation recorded and examined by Nuance without first obtaining prior written consent." *Id.* ¶ 72.[2]

### B. Nuance Is Not A Signatory To The Chase Deposit Account Agreement, Nor Is Nuance Mentioned Anywhere In The Agreement

As Nuance acknowledges, the Chase Agreement expressly applies only to Chase and its customers, and Nuance is not a party. *See* MTC at 3, Deck Decl. Ex. A at 10 ("Whether you're a personal or business customer with a Chase deposit account, this is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or 'Chase')."). Likewise, the arbitration provision itself repeatedly makes clear that the agreement applies solely between users and Chase:

> You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).
>
> …
>
> **What claims or disputes are subject to arbitration?**
>
> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims." (Deck Decl. Ex. A at 24).

There is no reference to arbitration involving Nuance, nor does Nuance provide an explanation for how or why a Chase customer might understand Chase's terms "us" and "we" to include not only just Chase and its various employees and departments, but also an entirely separate company that

---

[2] Nuance's attack on the sufficiency of Plaintiffs' Complaint on a motion to compel arbitration is both strange and inappropriate. *See* MTC at n.1. Nuance's privacy misconduct and CIPA violations have yet to be determined. In any case, whether Chase used the cloud-based software called Gatekeeper as alleged is not "without basis," nor is that fact dispositive for the privacy violations described in the Complaint. Nuance publicly states Chase uses Gatekeeper, *see* Nuance Infographic, attached hereto as Ex. A, and that its security and biometric solutions are "[a]vailable **on the cloud as a SaaS model with Nuance Gatekeeper**, or on-premise with Nuance Security Suite." *See* Nuance Data Sheet, "Easy, secure biometric authentication," attached hereto as Ex. B. Whether Nuance's software examines and records Plaintiffs' and the Class's voices (either on the cloud or installed on-premises) in violation of CIPA is more appropriately reserved for the discovery process.

appears nowhere in the agreement. On the contrary, as noted above, the agreement makes clear that "us" refers solely to Chase. Deck Decl. Ex. A at 5.

Chase does anticipate that its arbitration clause can sometimes apply to third parties, but its scope is limited to situations where, unlike here, Chase is involved in the claim:

> **Does arbitration apply to Claims involving third parties?**
>
> Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration. No award or relief will be granted by the arbitrator except on behalf of, or against, a named party. For purposes of arbitration, "you" includes any person who is listed on your account, and "we" includes JPMorgan Chase Bank, N.A., all its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim. (If we assign your account to an unaffiliated third party, then "we" includes that third party.) The arbitration may not be consolidated with any other arbitration proceeding. (Deck Decl. Ex. A at 25).

By its own terms, the Chase Agreement specifically limits the applicability of arbitration involving third parties to "affiliates" and to those "regarded as agents or representatives of [Chase's] in connection with a Claim." *Id.* And here, there is no indication in the Chase Agreement, nor does Nuance provide any supporting argument, that they are viewed as an affiliate, intended beneficiary, or regarded as an agent of Chase.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1740 (2011). "Generally, one who is not signatory to an agreement has no right to enforce it." *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 2014 WL 1338474, *5 (N.D. Cal. Mar. 28, 2014). "Accordingly, the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Kramer,* 705 F.3d at 1126 (9th Cir. 2013) (internal quotes omitted). In some circumstances, a non-signatory to an "an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Id*. at 1128. "Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration," principles of equity like equitable estoppel (which Nuance solely relies) are "narrowly confined." *Murphy*, 724 F.3d at 1229.

## IV. ARGUMENT

### A. The Plain Terms Of The Chase Agreement Limit Its Scope To Claims Concerning Plaintiffs And Chase, Not Non-Signatories Like Nuance

Even assuming that Plaintiffs are bound by the Chase Agreement for disputes between signatories to that contract (*i.e.*, Chase and Plaintiffs), the plain terms of the agreement clearly exclude this litigation because it does not govern disputes where Chase is not a named party.

In making its argument, Nuance relies on the following provision of the arbitration agreement, which Nuance states "broadly" applies to: "Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement … are also included." *See* MTC at 14; Deck Decl. Ex. A at 24.

This provision does not support Nuance's point. The second paragraph of Chase Agreement specifically states that the agreement is between customers and Chase, specifically and narrowly defining "us" as solely "JPMorgan Chase Bank, N.A. or 'Chase.'" *See* Deck Decl. Ex. A at 10. No mention is made of *any* third parties, let alone Nuance. The only time the Chase Agreement *does* cover a dispute with a third party is if that third party is also "involved in a Claim between [customer] and [Chase]." Deck Decl. Ex. A at 25.

In order to hold that the arbitration provision applies to this dispute, the Court would have to ignore both that sentence and California's "strong public policy" against extending arbitration to non-signatories to an arbitration agreement. *Kramer*, 705 F.3d at 1126. Here, there is no claim between Plaintiffs and Chase—only an invasion of privacy claim against a third party, Nuance. Leaving that fact aside, there is also no indication that Nuance is viewed as an affiliate,[3] intended beneficiary, or regarded as an agent of Chase. *See*, *e.g.*, *Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017) ("The Customer Agreement is an agreement between Verizon Wireless and its customer. Samsung is not a signatory. While the agreement itself includes a

[3] The Chase Agreement does not define "affiliate," so the phrase is "to be understood in [its] ordinary and popular sense." Cal. Civ. Code § 1644. Black's Law Dictionary defines "affiliate" as a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, *Black's Law Dictionary* (11th ed. 2019); *see also Satterfield v. Simon Schuster*, 569 F.3d 946, 955 (9th Cir. 2009) ("The plain and ordinary meaning of 'affiliate' supports this definition as 'a company … associated with others under common ownership or control.'").

number of terms governing the relationship between Norcia and Verizon Wireless, including an arbitration provision, nothing in the agreement references Samsung or any other party."); *Lap-ping Chen v. BMW of N. Am., LLC*, 2021 WL 3604691, at *4 (N.D. Cal 2021) (Ryu, J.) (denying third-party motion to compel arbitration and noting third-party lease agreement never mentioned, nor stated any intent to benefit, defendant); *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible…"). Thus, even if Nuance could seek to enforce the arbitration agreement, it would not cover this dispute.

Further, to the extent there is ambiguity as to whether claims against Nuance are covered by the arbitration clause, such ambiguity must be construed in Plaintiffs' favor. *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 248 (2016) ("Where the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation.").

### B. Nuance Cannot Claim The Benefits Of Chase's Deposit Account Agreement Under The Doctrine Of Equitable Estoppel

The heart of the disagreement between the parties concerns whether this Court should apply the doctrine of equitable estoppel, which "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *see also* MTC at 15-20. In other words, estoppel reflects the principle that a signatory "cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Goldman*, 173 Cal. App. 4th at 220.

Allowing a third party to enforce an agreement, as a matter of equity, accordingly springs from this very narrow principle. *Lap-ping Chen*, 2021 WL 3604691 at *4 ("Because generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly confined.") (quoting *Murphy*, 724 F.3d at 1229). "The 'linchpin' for equitable estoppel is fairness." *Kramer*, 705 F.3d at 1133 (internal quotations

omitted). The doctrine of equitable estoppel may apply to a non-signatory's request to enforce an arbitration clause in two circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract [...] and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." (*Id.* at 1128–29 (affirming denial of third-party motion to compel arbitration).

The first circumstance plainly does not apply where, as here, Plaintiffs raise "statutory claims that are separate from the contract itself." *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847–48 (9th Cir. 2013) (internal quotes omitted) (affirming denial of third-party motion to compel arbitration); *see also Bugarin v. All Nippon Airways Co.*, 2021 WL 4974978, at *2 (N.D. Cal. Oct. 26, 2021) (denying third-party motion to compel arbitration after finding the plaintiff's claim was based solely on the defendant's own conduct and not on any obligation found in a third-party's arbitration agreement); *Lap-ping Chen*, 2021 WL 3604691 at *4 (holding same). The second circumstance is similarly inapplicable because Plaintiffs only bring claims concerning Nuance's invasion of their privacy—and California case law makes clear that another entity's (in this case Chase's) involvement in facilitating that interaction does not rise to the level of "interdependent and concerted misconduct." *See In re Carrier IQ*, 2014 WL 1338474. Because neither circumstance applies, this Court should deny Nuance's motion.

### *1. Plaintiffs' Invasion of Privacy Allegations Are Unrelated to Chase's Deposit Account Agreements*

Plaintiffs allege that Nuance violated CIPA by "recording, examining, and storing their voice prints" without their consent—a cause of action wholly unrelated to the Chase Agreement. CAC ¶¶ 7-8. Nuance argues that equitable estoppel is appropriate under the first *Kramer* prong because Plaintiffs' claims "are intimately founded in and intertwined with" the Chase Agreement. MTC at 15-18.

But Plaintiffs here make no claims rooted in the Chase Agreement and the CAC is adequate without reference to the Chase Agreement at all. *See generally* CAC (raising only claims arising from CIPA and never referencing Chase Agreement); *Murphy*, 724 F.3d 1218 at 1230 (affirming denial of third-party motion to compel arbitration where plaintiffs' claims depended on California

consumer statutes). Further, Plaintiffs do not seek to hold Nuance responsible for any duty imposed by any contractual agreement, let alone the Chase Agreement. The only duty that Plaintiffs seek to enforce—not to invade their privacy by recording and examining their voices—is imposed by statute, not by contract. Because Plaintiffs' "statutory claims 'd[o] not arise out of or relate to the contract that contained the arbitration agreement,' [Nuance] may not compel [Plaintiffs] to arbitrate [their] claims on the basis of equitable estoppel." *Rajagopalan*, 718 F.3d at 848.

The irrelevance of the Chase Agreement becomes even more clear after considering the population of consumers whose voices are examined and recorded by Nuance as alleged. While Nuance captures the voice prints of Chase customers who call into a Chase call center, it is also true that Nuance's biometric voice capture system invades the privacy of individuals who have *never* signed a Chase Agreement—like prospective customers of Chase or a consumer that calls another business that uses Nuance's software. *See* CAC ¶ 5 ("Businesses can partner with Nuance, and thus allows Nuance to have access to conversations made through the business's call centers. With this level of access, Nuance can verify a consumer's identity and determine whether the consumer is who they purport to be."); *see also id.* ¶ 27 ("The businesses using Nuance's software include the world's largest corporations and financial institutions, including Chase Bank [].").

The court's analysis in *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013), provides a helpful framework for understanding why Plaintiffs' claims have nothing to do with the Chase Agreement. In *Murphy*, DirecTV and Best Buy faced litigation under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA") for allegedly deceiving customers into believing they had purchased equipment, when in reality, customers had merely leased the equipment. *Id.* at 1223-25. Plaintiffs signed an arbitration agreement with DirecTV—which the court enforced—but not with Best Buy. Best Buy nevertheless attempted to "piggyback[] on DirecTV's Customer Agreement" and compel arbitration under the doctrine of equitable estoppel, but its attempt was unsuccessful. *Id.* at 1224.

Best Buy attempted to argue that the DirecTV Agreement was "a necessary precondition for Plaintiffs' claims" against Best Buy, but the court was unpersuaded, noting that the plaintiffs' "complaint [was] replete with allegations of deceit by Best Buy that [had] nothing to do with the

[DirecTV] Agreement." *Id.* at 1230. Although the DirecTV Agreement set the terms for the equipment lease at the center of plaintiffs' case, the agreement itself was "factually irrelevant to [the plaintiffs'] claims against Best Buy, which charge misrepresentations to customers at the point of sale." *Id.* at 1230. The court squarely rejected Best Buy's attempt to piggyback on the DirecTV Agreement, even though Best Buy's facilitation of the agreement was obvious to consumers—who were standing inside a Best Buy store, interacting with Best Buy employees, and receiving receipts at Best Buy stores that suggested the equipment had been purchased. *Id.* at 1223-24.

The Ninth Circuit's decision in *Murphy* is similarly applicable here, where Plaintiffs only allege facts regarding Nuance's privacy invasions that are wholly unrelated to the Chase Agreement. Just as the DirecTV Agreement was the contract over the interaction that led to the consumer law violations by Best Buy, the Chase Agreement facilitated the interaction at the center of the privacy violations at issue here. But the cause of action for remedying each harm—consumer or privacy—is located outside the contract. *Lap-ping Chen,* 2021 WL 3604691 at *4 ("Applying the doctrine of equitable estoppel is 'particularly inappropriate where plaintiffs seek the protection of consumer protection laws against misconduct that is unrelated to any contract except to the extent that a customer service agreement is an artifact of the consumer-provider relationship itself.'") (quoting *Murphy*, 724 F.3d at 1231 n.7.). Indeed, Nuance's attempt to deny claims by piggybacking on the Chase Agreement is even more tenuous given that Plaintiffs never even knew that Nuance existed.

*Murphy* also articulates why Nuance's attempt to distinguish two additional cases—*Kramer* and *Ngo*—fails. MTC at 17 n.5. In both *Kramer* and *Ngo*, plaintiffs brought actions against car manufacturers alleging violations of state and federal statutes, breach of the implied warranty of merchantability, and breach of contract. *Kramer*, 705 F.3d 1122; *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942 (9th Cir. 2022). The manufacturers both moved to compel arbitration based on the customers' agreements with the dealership, arguing that the plaintiffs could not have been harmed by manufacturers absent their dealership contracts facilitating the sale of the cars. *Kramer*, 705 F.3d at 1130; *Ngo*, 23 F.4th at 949. The Ninth Circuit denied the motions, finding that none of the claims arose out of the dealership contracts; the fact that the plaintiffs only had the cars as a result of the

purchase agreements does not make those claims "intertwined." *Kramer*, 705 F.3d at 1130-33 (rejecting argument that "Plaintiffs' claims are intertwined with the Purchase Agreements because they rely upon the existence of Plaintiffs' vehicle purchase transactions."); *Ngo*, 23 F.4th at 949 (9th Cir. 2022) ("BMW argues that if Ngo had not signed the purchase agreement with the dealership, she would not have been able to purchase her car; if she had not purchased her car, BMW would have issued no warranties; and if BMW had issued no warranties, Ngo could not bring statutory claims. But this 'attenuated chain of reasoning' has been rejected by California courts.").

Nuance's effort to distinguish these cases is based on far too crabbed a view of their holdings. In Nuance's view, the holdings of *Kramer* and *Ngo* turned on a very specific factual distinction: that the purchase agreements in those cases expressly differentiated between warranties provided by the dealer and warranties provided by the manufacturer. *See* MTC at n.5. But the focus of those cases was, in reality, that the plaintiffs brought warranty claims that weren't founded in the purchase agreements at all—exactly the case here.

In sum, California courts have "expressly rejected" the argument that Plaintiffs' "claims are "necessarily intertwined" with the Chase Agreement "merely because the lawsuit [is] predicated on the bare fact that a [deposit account initiation] occurred." *Murphy*, 724 F.3d at 1230-32 (citing and summarizing *Kramer*, 705 F.3d at 1128–29). Yet Defendants make this exact argument, relying primarily on *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012), for the proposition that without the Chase Agreement, Nuance's privacy violations would not have occurred. MTC at 16-17. But *Mance* is no longer good law.

In *Soto v. Am. Honda Motor Co., Inc.*, 2012 WL 5877476, at *2-3 (N.D. Cal. Nov. 20, 2012), the court explained how and why Ninth Circuit cases rejected *Mance's* logic, finding instead that as long as Plaintiffs' claims can be resolved without reference to the contract—as is the case here—equitable estoppel does not apply. The *Soto* court reasoned that *Mance* was not consistent with Ninth Circuit decisions that effectively overruled the cases on which *Mance* relied. *Id.* (citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046 (9th Cir. 2009)). Summarizing why a non-signatory could not invoke a loan agreement to compel arbitration, the *Soto* court explained:

> In *Mundi*, the Ninth Circuit affirmed the district court's denial of the defendant's motion to compel arbitration as a third party nonsignatory because it found that the

> claims were not intertwined with the underlying action. The *Mundi* court did not use the "but-for" test or the "makes reference to" test that [defendant] advocates.
>
> …
>
> [Indeed,] plaintiff's claims necessarily "made reference to" the loan agreement, because, "but for" the loan agreement, defendant would not have issued the insurance policy. However, the Ninth Circuit found that the claims were not intertwined with the loan agreement because "[t]he resolution of [the plaintiff's] claim does not require the examination of any provisions of the [contract]" and the plaintiff was not making any allegations against the other signatory of the contract. (*Soto*, 2012 WL 5877476 at *3).

Yet Nuance attempts this exact argument, stating that Plaintiffs would not have "access[ed] [] the Chase customer service center and the Chase voice authentication [performed by Nuance] that forms the basis of their claims" without the Chase Agreement. MTC at 17. The mere existence of a contract that facilitates a transaction is not enough to invoke equitable estoppel where Plaintiffs' CIPA claims arise separately from the contract. *See In re Carrier IQ*, 2014 WL 1338474 at *2 (denying motion to compel arbitration where claim arose in part from state privacy laws); *Bugarin v. All Nippon Airways Co.*, 2021 WL 4974978, at *7 (N.D. Cal. Oct. 26, 2021) (denying motion to compel arbitration where claim arose from airline's own conduct, not from conduct of third party travel vendor whose contract contained the arbitration clause); *Pestarino v. Ford Motor Co.*, 2020 WL 3187370, at *3-4 (N.D. Cal. June 15, 2020) (finding "lemon law claims" against manufacturer not "intertwined" with plaintiff's contract with dealership, as such claims do "not rely on the terms of the sale contract").

Nuance's last remaining argument hinges on an inapposite employment case, which explicitly distinguished itself from other contexts—like consumer claims—and noted that courts should continue to view non-signatories' motions to compel arbitration with skepticism. MTC at 15-16 (citing *Franklin v. Cmty. Reg'l. Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021)). In *Franklin*, the court emphasized "the relationship between employees (like nurses), staffing agencies, and clients (like hospitals) bears little resemblance to the relationship between consumers and participants in the supply chain." *Id*. at 873 (collecting consumer cases including *Murphy*, *Kramer*, *Rajagopalan*, and *Mundi*).[4] Cases refusing to compel non-signatory arbitration comfortably situate privacy claims

[4] In acknowledging the exceptionality of the employment context, the court in *Franklin* noted only one other case in which the Ninth Circuit granted a non-signatory's motion to compel arbitration: *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020) (discussed below). *See Franklin*, 998 F.3d at 873.

within the consumer line of cases, and this Court should do the same. *See*, *e.g.*, *In re Carrier IQ,* 2014 WL 1338474 (denying non-signatory motion to compel arbitration of state privacy claims).

### ***2. Plaintiffs Exclusively Allege That Nuance's Sole Conduct Caused Their Privacy Violations—Not "Interdependent And Concerted Misconduct" Between Chase And Nuance***

Nuance next argues under the second *Kramer* prong that Plaintiffs essentially assert claims against both Nuance and Chase. However, California courts have made clear there can be no "interdependent and concerted misconduct" where plaintiffs bring claims exclusively against a non-signatory to an arbitration agreement. *Jurosky v. BMW of N. Am., LLC*, 441 F. Supp. 3d 963, 970-71 (S.D. Cal. 2020) ("Other courts have found that where no claim or allegation is made against the nonsignatory in a complaint, the second circumstance in *Kramer* does not apply.").

Nuance argues that Plaintiffs have "strategically chosen to pursue this action against Nuance, rather than against Chase directly," and therefore should be required to arbitrate. MTC at 20. Judge Chen considered this exact factual scenario in *In re Carrier IQ, Inc.*, and decided otherwise. *In re Carrier IQ*, 2014 WL 1338474. In *Carrier IQ*, defendants argued that "[p]laintiffs [did not] not sue[] the wireless carriers but argue that [they] should not be able to avoid arbitration simply by taking the tactical strategy of not naming the wireless carriers with whom they would clearly be required to arbitrate." *Id.*, at *10. The court found that to be of no import: "[t]he problem here is that Plaintiffs' unlawful interception/transmission claims asserted herein are not predicated on allegations that Defendants colluded or otherwise acted in concert with the wireless carriers." *Id.* at 11. This applies here too, where the CAC alleges that Nuance did the recording, Nuance made the voiceprint, and Nuance failed to obtain consent before examining and analyzing Plaintiffs' private biometric data. The claim is independent. *See*, *e.g.*, CAC ¶ 9 ("Defendant has violated (and continues to violate) the CIPA because it uses a system which examines and records California residents' voice prints or other voice stress patterns without first obtaining their express written consent…"); *id.* ¶ 32 ("In recording and creating consumer voice prints, Nuance has also amassed a massive voiceprint database of individuals…"); *id.* ¶ 39 ("Nuance—a separate and distinct third-party entity from the parties to the conversation—uses Gatekeeper to eavesdrop upon, record, extract data from, and analyze a conversation to which they are not a known party."); *id.* ("The data,

or voiceprints, that Nuance extracts from consumers while eavesdropping is then analyzed by Nuance…"); *id.* ¶ 42 ("Nuance fails to obtain consent from consumers…").

Moreover, "[e]ven if Plaintiff[s'] complaint initially contained allegations of collusion or interdependent misconduct" between Nuance and Chase,[5] "the allegations of interdependent misconduct must be founded in or intimately connected **with the obligations of the underlying agreement**." *Jurosky*, 441 F. Supp. 3d at 971 (emphasis added) (quoting *Kramer*, 705 F.3d at 1132-33). In other words, not listing Chase as a defendant is dispositive, but even if the Court rules otherwise, Nuance still cannot meet the requirements of the second *Kramer* prong. Again, the Ninth Circuit's decision in *Murphy* is directly on point:

> Mere allegations of collusion are insufficient to trigger equitable estoppel. Even where a plaintiff alleges collusion, the sine qua non for allowing a nonsignatory to enforce an arbitration clause based on equitable estoppel is that the claims the plaintiff asserts against the nonsignatory are dependent on or **inextricably bound up with the contractual obligations of the agreement containing the arbitration clause**. *Murphy*., 724 F.3d at 1231-32 (9th Cir. 2013) (citing *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 213-14 (2009)) (emphasis added).

The reasoning follows directly from *Murphy*: "[a]s we have already explained, Plaintiffs' claims do not bear the requisite relationship to the [Chase] Agreement to warrant application of equitable estoppel." *Id.* at 1232; *see also In re Carrier IQ*, 2014 WL 1338474, at *11 (same). Plaintiffs never once cite to the Chase Agreement to assert their CIPA claims, nor do their CIPA claims arise out of, relate to, or depend on the Chase Agreement.

Finally, Nuance cites *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020), to support their argument, but that case is easily distinguishable because plaintiffs' claims in that case arose directly from a contract, not statute, as is the case here. MTC at 18-19. In fact, plaintiffs in *Fertility Ctr.* also brought claims under the UCL against a different defendant, Chart, and the court refused to compel arbitration against that defendant. ("None of Plaintiffs' claims against Chart, therefore, rely on the terms of the [contract], nor are they intimately founded in or intertwined with the terms of the [contract]."). *Id* at 209. Again, because Plaintiffs' claims are

[5] "As a general rule, when a plaintiff files an amended complaint, the amended complaint super[s]edes the original, the latter being treated thereafter as non-existent." *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (internal quotes omitted). Accordingly, for all intents and purposes, Plaintiffs have never asserted claims against Chase, and the CAC is all that exists as far as the pleadings go.

rooted in Nuance's privacy violations and not from Chase or the Chase Agreement, the Court should deny Nuance's motion to compel arbitration based on estoppel.

### C. Even If Nuance Could Enforce The Chase Agreement (And It Cannot), The Arbitration Clause Does Not Cover Plaintiffs' Privacy Claims

Even if Nuance could demonstrate its entitlement to enforce the arbitration clause, Nuance would still have to show that Plaintiffs' claims fall within the arbitration clause's scope. Nuance cannot do so.

While the Chase Agreement calls for arbitration of "[a]ny claims or disputes arising from or relating to this agreement" (Deck Decl. Ex. E at 25), its reach is not "unlimited." *See, e.g.*, *U. S. ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 798 (9th Cir. 2017). Here, though broadly worded, numerous courts have specifically recognized that the use of "related to" does not make the arbitration clause "limitless." *See*, *e.g., Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (denying motion to compel arbitration and noting clause requiring arbitration of all disputes "relating to" an employment agreement was "broad, but not limitless."); *Jones v. Halliburton Co.*, 583 F.3d 228, 238-39 (5th Cir. 2009) (denying motion to compel arbitration and noting "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, the phrase would not have much limiting power because really, universally, relations stop nowhere") (internal quotes omitted); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021) (citing *Jones* and *Doe* with approval, and noting these cases held "'[r]elatedness' could not encompass everything that touched employment in any way");[6] *Davitashvili v. Grubhub, Inc.*, 2023 WL 2537777, at *10 (S.D.N.Y. Mar. 16, 2023) ("[T]he Ninth Circuit and several district courts have declined to enforce 'infinite arbitration clauses' where, as here, the claims at issue lacked any nexus to the agreement containing the clause.").

---

[6] *Cooper* also noted the "*Jones* and *Doe* courts both accepted that the [tort claim] alleged in each case would not have occurred 'but for' the plaintiff's employment with the defendant company, but determined nonetheless that the circumstances giving rise to the claim were outside the scope of her employment," and thus, were not arbitrable. *Cooper*, 990 F.3d at 183.

Instead, there must be some "direct relationship" between the arbitration clause and the claims at issue. *Doe*, 657 F.3d at 1218.[7] The core factual allegations of Plaintiffs' claims involve Nuance's unlawful examination and recording of Plaintiffs voices. And because Plaintiffs claims do "not require the examination of any provisions of the [contract]" and do not make "any allegations against the other signatory of the contract"—those claims are not within the scope of the Chase Agreement. *Soto*, 2012 WL 5877476 at *2-3.

Two Ninth Circuit decisions are instructive. *First*, in *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1096 (9th Cir. 2023), an Amazon delivery driver filed a class action suit against Amazon, alleging that it "wiretapped Flex drivers' communications and invaded their privacy by monitoring their closed Facebook groups." Amazon claimed the privacy claims were subject to arbitration, noting the plaintiff had agreed to an arbitration clause covering "any dispute or claim [] arising out of or relating in any way to this Agreement, including [] participation in the program or [] performance of services." *Id.* at 1101. The Ninth Circuit acknowledged that Amazon delivery drivers communicated in Facebook groups about work-related topics, and "membership in Jackson's proposed class would require participation in the Amazon Flex program." *Id.* at 1102. Nonetheless, the Ninth Circuit denied Amazon's motion to compel arbitration because "Amazon's alleged misconduct existed independently of the contract." *Id.* at 1104. As the court explained, the plaintiff's claims did "not depend on any terms of his contract as a driver for Amazon Flex," "the harm Jackson alleges is not measured by or dependent on the terms of his work for Flex," and "the allegations underlying Jackson's claims involve employer misconduct wholly unrelated to the parties' agreement." *Id.* at 1102 (internal quotes omitted).

*Second*, in *Welch*, 871 F.3d at 798, the plaintiff agreed to arbitrate, *inter alia*, "any claim between the Company and Employee arising out of 'or related to' the employment relationship." The plaintiff then brought a False Claims Act claim against the company. *Id.* at 799. Notwithstanding that the case stemmed from information the plaintiff learned while she was an

[7] The cases cited by Nuance that relate to the Chase agreement cover services including the of issuance of cashiers' checks, the processing of transactions, and overdraft fees. *See* MTC at 14-15 (citing *Dill v. JPMorgan Chase Bank, N.A.*, 2020 WL 4345755 (S.D.N.Y. July 29, 2020); *Sunmonu v. Chase Bank, N.A.*, 2019 WL 1258788 (D. Md. Mar. 19, 2019); *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018)).

employee, the Ninth Circuit nonetheless denied the motion to compel arbitration. Specifically, the Ninth Circuit noted "Defendants could have engaged in the same fraudulent conduct absent any relationship with Welch, and [] the legal basis of this FCA case would exist regardless of where Welch worked or observed the fraud." *Id.* at 799. Accordingly, the plaintiff's claims did not arise out of or relate to her employment relationship. *Id*.

*Jackson* and *Welch* dictate the same result here. As the CAC makes clear, the core issue is Nuance's voice recognition software, which records and wiretaps consumers independently of the Chase Agreement. Plaintiffs' invasion of privacy claims would still exist regardless of why Plaintiffs' called Chase or what Plaintiffs and Chase spoke about. *Jackson*, 65 F.4th at 1104. Indeed, Plaintiffs' CIPA claims would still exist **even if they were not Chase customers**. *See* Argument § IV.B.1, *supra* ("While Nuance captures the voice prints of Chase customers who call into a Chase call center, it is also true that Nuance's biometric voice capture system invades the privacy of individuals who have *never* signed a Chase Agreement—like prospective consumers of Chase or a consumer that calls another business that uses Nuance's software.") (citing CAC ¶¶ 5, 27).

### D. Plaintiffs Are Entitled To Decide Whom To Sue And Where

Although Nuance repeatedly states Plaintiffs' decision not to sue Chase is part of some "strategic[]" maneuver and somehow improper, that is contrary to well-settled legal principles. MTC at 2, 17, 20. "In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005) (quoting 16 J. Moore et al., MOORE'S FEDERAL PRACTICE § 107.14[2][c], at 107-67 (3d ed. 2006)); *see also Newtok Village v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) ("A plaintiff is the master of his complaint and responsible for articulating cognizable claims."). Plaintiffs "may include (or omit) claims or parties in order to determine the forum." *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 389, 392 (1987)). In other words, it is entirely appropriate for a plaintiff to choose to name or not name a party against whom they have a valid claim for the sole purpose of selecting a certain forum. And arbitration is a forum, like state or

federal court. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, n.4 (9th Cir. 1988) (noting an arbitration agreement is "a specialized forum selection clause.").[8] Nuance must respect Plaintiffs' right to decide which entities they want to sue.

## V. CONCLUSION

Because there is no agreement between the parties to this case to arbitrate this dispute, and because the claims asserted here are solely rooted in Nuance's conduct, Plaintiffs respectfully request that the Court deny Nuance's motion to compel arbitration and request to stay the action and grant any such further relief as the Court deems reasonable and just. In the alternative, Plaintiffs request leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).

Date: August 28, 2023

By: */s/ Theo Benjamin*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Theo Benjamin (*pro hac vice*)
tbenjamin@edelson.com
350 N. LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 572-7212
Fax: (312) 589 6378

Neal J. Deckant (SBN 322946)
ndeckant@bursor.com
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Attorneys for Plaintiffs*

[8] Plaintiffs do not concede that, had they brought claims against Chase, they would be required to arbitrate such claims.

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 28, 2023 I electronically filed the foregoing document(s) using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered in the CM/ECF system.

*/s/ Theo Benjamin*
Theo Benjamin