**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

**JENNER & BLOCK LLP**
David C. Layden (*pro hac vice*)
dlayden@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Attorneys for Defendant
Nuance Communications, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

DANA TURNER, DANIEL SMITH, and AARON YOUSHEI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NUANCE COMMUNICATIONS, INC.,

Defendant.

Case No. 4:22-cv-05827-DMR
*Consolidated with 4:23-cv-00797-DMR*

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION PENDING ARBITRATION**

Judge: Honorable Donna M. Ryu

Hearing Date: October 26, 2023
Time: 1:00 p.m.
Courtroom: 4

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. The Broad Arbitration Agreements Cover Plaintiffs' Claims. ........ 2

B. Plaintiffs Are Equitably Estopped from Refusing to Arbitrate Their Claims. ........ 5

1. Plaintiffs' claims are "intimately founded in and intertwined with" the Deposit Account Agreements. ........ 5

2. Plaintiffs Allege Substantially Interdependent and Concerted Misconduct by Chase and Nuance. ........ 8

III. CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Balan v. Tesla, Inc.*,
840 F. App'x 303 (9th Cir. 2021) ....................3

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....................5

*Brinkley v. Monterey Fin. Servs., Inc.*,
242 Cal. App. 4th 314 (2015) ....................4

*In re Carrier IQ, Inc. Consumer Priv. Litig.*,
2014 WL 1338474 (N.D. Cal. Mar. 28, 2014)....................9, 10

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022)....................5

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ....................5, 6

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) ....................4

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....................4

*Jurosky v. BMW of N. Am., LLC*,
441 F. Supp. 3d 963 (S.D. Cal. 2020)....................10

*Katz v. BMW of N. Am., LLC*,
2019 WL 4451014 (N.D. Cal. Sept. 17, 2019) ....................6

*Kroeger v. Vertex Aerospace LLC*,
2020 WL 3546086 (C.D. Cal. June 30, 2020) ....................3, 5

*Lanning v. BMW of N. Am., LLC*,
2019 WL 5748518 (S.D. Cal. Nov. 5, 2019) ....................6

*Lap-ping Chen v. BMW of N. Am., LLC*,
2021 WL 3604691 (N.D. Cal 2021) ....................8

*Mance v. Mercedes-Benz USA*,
901 F. Supp. 2d 1147 (N.D. Cal. 2012) ....................6

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ....................7

*Optimum Prods. v. Home Box Off.*,
839 F. App'x 75 (9th Cir. 2020) ....................4

*In re Pac. Fertility Ctr. Litig.*,
814 F. App'x 206 (9th Cir. 2020) ....................9

*Rajagopalan v. NoteWorld*, *LLC*,
718 F.3d 844 (9th Cir. 2013) ........................................................................................8

*Simula Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ........................................................................................3

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ......................................................................3, 5

*U. S. ex rel. Welch v. My Left Foot Children's Therapy*, *LLC*,
871 F.3d 791 (9th Cir. 2017) ........................................................................................4

## I. INTRODUCTION

Plaintiffs do not dispute that they entered into Chase Deposit Account Agreements, that they agreed to individually arbitrate claims covered by those agreements, or that those agreements advised them that Chase "may use your voice to verify your identity." Nor do Plaintiffs dispute that their claims are based on their calls to the Chase customer service center, Chase's use of Nuance software to verify their identities, and the alleged inadequacy of Chase's disclosures regarding its use of that software. Consequently, the only issues remaining for the Court are whether the arbitration agreements cover Plaintiffs' claims against Nuance, which provided the software technology Chase used, and whether the doctrine of equitable estoppel requires Plaintiffs to individually arbitrate their claims. The answer to both questions is yes.

First, Plaintiffs' claims fall within the scope of the arbitration agreements, which govern "[c]laims or disputes between you and us about your deposit account, transactions involving your deposit account . . . and any related service or agreement with us." *See* Deck Decl., Ex. A at 25. Plaintiffs' argument that the arbitration agreements only can be applied to claims between Plaintiffs and Chase is a red herring, as Nuance does not contend it is a party to or intended third-party beneficiary of the agreements, but rather that Plaintiffs are equitably estopped from denying their obligation to arbitrate. And Plaintiffs' assertion that their privacy claims are supposedly "unrelated" to the Deposit Account Agreements lacks merit because in those agreements Plaintiffs agreed that Chase could use their voices to identify them and their claims arise from Chase's use of Nuance software to do so.

Second, Plaintiffs fail to rebut the reasons why this Court should apply the doctrine of equitable estoppel, repeatedly insisting, instead, that their claims are "wholly unrelated" to and "have nothing to do with" the Deposit Account Agreements. But those conclusions are squarely contradicted by Plaintiffs' allegations and the plain terms of Plaintiffs' agreements. For example, Plaintiffs' CIPA claims rest upon allegations that Chase failed to make sufficient disclosures regarding Chase's use of Nuance software, *see* CAC ¶¶ 50, 59, 68, *and* the Deposit Account Agreements expressly provide that Chase "may record and/or monitor any of our telephone

conversations with you" and "may use your voice to verify your identity." *See* Deck Decl., Ex. A at 19. Plaintiffs' arguments responding to Nuance's motion to compel depend upon persuading the Court to simply ignore these facts, as well as the fact that Plaintiff Turner initially sued Chase in this action, only to voluntarily dismiss Chase without prejudice after Chase reminded Turner of the existence of the binding arbitration agreement. These undisputed facts demonstrate that Plaintiffs' claims are "intimately founded in and intertwined with" the Deposit Account Agreements and allege substantially interdependent and concerted misconduct by Chase and Nuance. The doctrine of equitable estoppel therefore applies, and the Court should compel Plaintiffs to individually arbitrate their claims.

## II. ARGUMENT

### A. The Broad Arbitration Agreements Cover Plaintiffs' Claims.

Plaintiffs do not dispute that they entered into and are bound by the Chase Deposit Account Agreements or that those agreements contain binding and enforceable arbitration agreements. *See generally* Op. Nor do they dispute that this Court may decide the question of arbitrability.

Instead, they argue the language of the arbitration agreements "applies solely between users and Chase," and the Court cannot apply the agreements to anything other than disputes "between customers and Chase[.]" Op. at 4, 6. In doing so, Plaintiffs appear to be responding to a third-party beneficiary argument Nuance does not make. *See*, *e.g.*, *id.* at 6–7 (citing third-party beneficiary cases). Here, Nuance does not contend it is a party to the Deposit Account Agreements or an intended third-party beneficiary of those agreements, but rather that Plaintiffs are equitably estopped from denying their obligation to arbitrate due to the nature of their claims and allegations. Plaintiffs do not disagree with the principle, admitting, as they must, that non-signatories can enforce arbitration agreements under the doctrine of equitable estoppel. *See id*. at 5.

Plaintiffs also contend that Nuance asks the Court to treat the arbitration agreements in the Deposit Account Agreements as "limitless." Op. at 15. But in fact, Nuance simply asks the Court to enforce the arbitration agreements as written, and under those written terms, Plaintiffs agreed to individually arbitrate "[c]laims or disputes between you and us about your deposit account,

transactions involving your deposit account . . . and any related service or agreement with us," *see* Deck Decl., Ex. A at 24. To circumvent this language, Plaintiffs argue that Nuance's motion rests only upon the next sentence of the arbitration agreements, which states "[a]ny claims or disputes arising from or relating to this agreement . . . are also included." Op. at 15.[1] But as Nuance's motion makes clear, that is not so. *See* Mot. at 14.

Nor can Plaintiffs avoid their arbitration agreements by willfully ignoring that they base their claims against Nuance entirely on calls they allegedly made to the Chase customer service center about their accounts, their interactions with Chase voice authentication, and the alleged inadequacy of Chase's disclosures regarding its use of Nuance software. *See* CAC ¶¶ 44–50; 54–59; 63–68. In other words, Plaintiffs' claims against Nuance arise only because of their interactions with Chase, bringing their claims well within the scope of their arbitration agreements.

Plaintiffs' "direct relationship" arguments fare no better. They say the arbitration agreements do not cover their claims because, according to them, there is no "direct relationship" between their claims and the Deposit Account Agreements, their claims "do 'not require the examination of any provisions of the [contract],'" and they "do not make 'any allegations against the other signatory of the contract." Op. at 16. But the Deposit Account Agreements expressly state that Chase will use Plaintiffs' voices to verify their identities, and Plaintiffs expressly allege that Chase failed to sufficiently disclose its use of Nuance software to perform that authentication. *See* Mot. at 19; Deck Decl., Ex. A at 19; CAC ¶¶ 50, 59, 68. Under long-settled law, courts interpret the scope of arbitration agreements broadly, and the same holds true here.[2]

---

[1] By electing not to address the arbitration language on which Nuance relies, Plaintiffs have waived any argument that the arbitration agreements do not cover their claims. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citation and quotations omitted); *Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020) (plaintiff conceded argument by failing to address it in his opposition) (collecting cases).

[2] *See Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (the phrase "arising out of or relating to" in an arbitration agreement must be construed broadly, and the factual allegations at issue "need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability."); *Balan v. Tesla, Inc.*, 840 F. App'x 303, 304–05 (9th Cir. 2021) ("Balan's defamation claims are arbitrable if the underlying factual allegations 'touch matters' covered by the defined scope of the arbitration agreement, with any doubts

The cases Plaintiffs cite for the proposition that their CIPA claims have no "direct relationship" to the Deposit Account Agreements—and thus allegedly fall outside the scope of the agreements—are inapposite. For instance, in *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101–02 (9th Cir. 2023), the plaintiff, an Amazon employee, alleged that Amazon "spied on Flex drivers while they were *not* working, by monitoring and wiretapping private conversations in closed Facebook groups without the drivers' knowledge." *Id.* at 1101 (emphasis added). The Ninth Circuit determined that the plaintiff's privacy claims fell outside the scope of the arbitration agreement in their employment agreements because "the allegations underlying [the plaintiff's] claims involve[d] employer misconduct wholly unrelated to the parties' agreement." *Id.* at 1102. But the same is not true here; unlike in *Jackson*, the Chase Deposit Account Agreements *expressly contemplate* the very conduct on which Plaintiffs base their claims *in the specific setting* in which Plaintiffs claim such conduct occurred. *See* Deck Decl., Ex. A at 19 (Chase "may record and/or monitor any of our telephone conversations with you" and "may use your voice to verify your identity"); CAC ¶¶ 50, 59, 68 (alleging Chase and Nuance failed to sufficiently disclose Nuance's alleged role in Chase's verification of Plaintiffs' identities).

Plaintiffs' grasping analogy to *U. S. ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 798 (9th Cir. 2017), fares no better. There, the Court held that the plaintiff's whistleblower claims under the federal and state False Claims Acts—which were based on the defendant's allegedly false statements to the government—were not covered by arbitration provisions in her employment agreements, which were "limited to disputes that 'arise out of the employment context'" and "'the employment relationship.'" *Id.* Again, unlike in *Welch*, the Deposit Account Agreements here expressly address the alleged conduct at issue in the Complaint. *Cf. Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 549 (9th Cir. 2021) (directing district

---

resolved in favor of arbitrability.") (citation omitted); *Optimum Prods. v. Home Box Off.*, 839 F. App'x 75, 77 (9th Cir. 2020) ("[T]o require arbitration, [the plaintiff's] factual allegations need only 'touch matters' covered by the contract.") (citation omitted); *Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314, 332 (2015) (plaintiff's allegations that her telephone conversations with representatives at financial service company were recorded without her knowledge or consent "touch[ed] matters covered by the contract" and were thus arbitrable) (internal quotations omitted).

court to compel arbitration based on broad arbitration provision for CIPA claims, among others).

Should there be any doubt as to the scope of the agreements, the Deposit Account Agreements delegate that issue to the arbitrator by incorporating the JAMS and AAA Rules. *See, e.g.*, Mot. at 13, n. 4; Deck Decl., Ex. A at 25; *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 936 (S.D. Cal. 2022) (compelling arbitration of CIPA claims because "a review of the arbitration agreement reveals that it incorporates the JAMS Comprehensive Arbitration Rules," which constitutes "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"). Plaintiffs do not respond, waiving any argument to the contrary. *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132; *Kroeger*, 2020 WL 3546086, at *8.

**B. Plaintiffs Are Equitably Estopped from Refusing to Arbitrate Their Claims.**

Plaintiffs' effort to avoid equitable estoppel relies on their dogged refusal to confront what the Deposit Account Agreements say and what they are alleging, and the Court should reject it.

**1. Plaintiffs' claims are "intimately founded in and intertwined with" the Deposit Account Agreements.**

Even though the Deposit Account Agreements expressly contemplate and disclose the very conduct on which Plaintiffs base their claims, and even though Plaintiffs make allegations against both Chase and Nuance related to that conduct, Plaintiffs insist they "make no claims rooted in the Chase Agreement and the CAC is adequate without reference to the Chase Agreement at all." Op. at 8–13. But "[i]n matters of equity, such as the application of equitable estoppel, it is the substance of the plaintiff's claim that counts, not the form of its pleading." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 875 (9th Cir. 2021). Courts "analyze [Plaintiffs'] claims by looking at the relationship between the parties and their connection to the alleged violations[,]" regardless whether the Plaintiffs avoid expressly referencing the agreements at issue in their pleading. *Id.* So, whether Plaintiffs' Complaint expressly mentions the Deposit Account Agreements or not, their pleading repeatedly alleges that Chase failed to disclose or obtain their consent to Chase's use of

Nuance software to verify their identities, and the Deposit Account Agreements expressly state that Chase will use Plaintiffs' voices to verify their identities. It is thus clear that, despite artful pleading, Plaintiffs' claims are intertwined with the Deposit Account Agreements.

Plaintiffs' attempt to dismiss *Franklin* as limited to the employment context falls flat. Op. at 12–13. While the *Franklin* court distinguished cases involving "consumers and participants in the supply chain (like manufacturers)" from the employment matter at issue, it did so on the basis that "the specific facts [in the consumer cases] did not suggest the plaintiffs' claims were 'intimately founded in and intertwined with' the arbitration contract." 998 F.3d at 873. By contrast, in *Franklin*, "the substance of [the plaintiff's claims]" were "so intertwined" with the agreement that "it would be unfair for [the plaintiff] to avoid arbitration." *Id.* at 875. The same is true here: regardless of how the allegations are cast or which entities Plaintiffs have chosen to sue, the Complaint charges Nuance and Chase with misconduct that is intimately founded in, contemplated by, and disclosed by the Deposit Account Agreements. And as stated by the *Franklin* court, "[Plaintiffs] cannot avoid arbitration simply because [they have] sued only [Nuance] and not [Chase]." *Id.* (citing *Grigson v. Creative Artists Agency*, *L.L.C.*, 210 F.3d 524, 530 (5th Cir. 2000), for the proposition that "an action against only nonsignatories [is] 'a quite obvious, if not blatant, attempt to bypass the agreement's arbitration clause'") (citation omitted).[3]

*Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147 (N.D. Cal. 2012), further supports Nuance's argument that Plaintiffs' claims are intertwined with the Deposit Account Agreements. Plaintiffs are wrong in asserting that "*Mance* is no longer good law." Op. at 11. To the contrary, courts in the Ninth Circuit have repeatedly relied on *Mance* to compel arbitration in recent years. *See Lanning v. BMW of N. Am., LLC*, 2019 WL 5748518, at *1, 3 (S.D. Cal. Nov. 5, 2019); *Katz v. BMW of N. Am., LLC*, 2019 WL 4451014, at *1, 3 (N.D. Cal. Sept. 17, 2019). Plaintiffs' district court authority, which is non-binding and over a decade old, does not control.

[3] In any event, nothing about *Franklin* suggests consumers should be allowed to avoid their arbitration agreements through the tactics Plaintiffs have invoked here: suing the party with whom they have a contractual relationship and its service provider first, only to drop the former upon realizing their obligation to arbitrate and instead pursuing claims only against the latter.

The cases Plaintiffs cite for the proposition that the Deposit Account Agreements are completely "irrelevant" to their allegations, *see* Op. at 8–13, are all distinguishable on the basis that the arbitration agreements in those cases only incidentally addressed—or failed to address at all—the conduct at issue in the complaints. For instance, in *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1223 (9th Cir. 2013), the plaintiffs allegedly believed they were purchasing satellite television equipment from Best Buy, when they were instead leasing the equipment from the service provider, DirecTV. *Id*. The plaintiffs sued DirecTV and BestBuy, and both defendants moved to compel arbitration based on the plaintiffs' customer agreements with DirectTV, which contained an arbitration provision. *Id*. at 1224. In rejecting BestBuy's attempt to invoke the arbitration provision under an equitable estoppel theory, the Ninth Circuit held that the plaintiffs' claims "ha[d] nothing to do with the [c]ustomer [a]greement[s]." *Id*. at 1230. The Court observed:

> Best Buy argues that, in addition to governing the general contours of the customer-provider relationship, the Customer Agreement clarifies that the leased equipment is not the property of the customer, cannot be transferred, and must be returned, rendering the existence of the Customer Agreement a necessary precondition for Plaintiffs' claims. But the Customer Agreement itself merely provides that, *if* a customer is leasing his DirecTV equipment, it is non-transferable and must be returned upon cancellation.

*Id*. (emphasis in original).

This case differs. The Chase Deposit Account Agreements do not merely "govern[] the general contours of the customer-provider relationship" or deal in qualified hypotheticals; instead, they expressly address the very circumstance on which Plaintiffs base their claims because they disclose that Chase "may record and/or monitor any of our telephone conversations with you" and "may use your voice to verify your identity." Deck Decl., Ex. A at 19. The fact that Chase uses Nuance's software to execute this contractual term is of no moment; in fact, Plaintiffs themselves acknowledge that Nuance's software is "***a tool intended to be integrated into the call centers of companies that have licensed Nuance's software***," "including Chase Bank," which "use Nuance's biometric voice recognition software to verify their callers' identities[.]" CAC ¶ 27 (emphasis added). Unlike in *Murphy*, the conduct underlying Plaintiffs' claims is thus expressly contemplated

by – and intimately founded in – the Deposit Account Agreements. Plaintiffs may not avoid their obligation to arbitrate while also benefitting from the fraud prevention measures employed by Chase, as outlined in the same agreements. This also distinguishes *Kramer* and *Ngo*. Op. at 10.[4]

*Lap-ping Chen v. BMW of N. Am., LLC* does not dictate a different result. There, a consumer brought breach of warranty claims against a BMW manufacturer, BMW of North America, LLC. BMW NA moved to compel arbitration based on a lease agreement between a BMW dealership and the consumer because "the Lease Agreement 'satisfie[d]' [the plaintiff's] standing to sue as a 'buyer of consumer goods'" and incidentally referenced the warranty at issue. 2021 WL 3604691 at *5 (N.D. Cal 2021). This Court rejected that argument because "the Lease Agreement [was] at most tangentially connected with [the plaintiff's] claims." *Id*. But again, the Deposit Account Agreements here *specifically disclose and address* the conduct at issue. Thus, the agreements are not merely "artifact[s] of the consumer-provider relationship itself," but instead directly govern Chase's use of voice authentication to protect Plaintiffs from fraudulent access to their accounts. And for the same reason, Plaintiffs are not "seek[ing] the protection of consumer protection laws against misconduct that is unrelated to any contract," *id*., but are instead seeking to hold Nuance responsible for Chase's use of its software, as expressly contemplated by the agreements. Plaintiffs' claims are therefore intimately founded in and intertwined with the Deposit Account Agreements, and so Plaintiffs are estopped from denying their obligations to arbitrate.[5]

**2. Plaintiffs Allege Substantially Interdependent and Concerted Misconduct by Chase and Nuance.**

In yet another attempt to ignore the fact that they originally levied the *exact same claims* against Chase and even retained many of those same allegations in the operative Complaint,

---

[4] Plaintiffs' argument that the Deposit Account Agreements are "irrelevant" because "Nuance's biometric voice capture system invades the privacy of individuals who have never signed a Chase Agreement—like prospective customers of Chase or a consumer that calls another business that uses Nuance's software," is a red herring. Op. at 9 (emphasis omitted). Nuance is moving to compel *these three individual Plaintiffs* to arbitration, all of whom are admittedly Chase customers and who executed Deposit Account Agreements containing the arbitration agreement.

[5] *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 848 (9th Cir. 2013), where the statutory claims did "not arise out of or relate" to the contract with the arbitration agreement, also does not apply.

Plaintiffs allege that "Nuance's sole conduct," rather than conduct of Chase and Nuance, "caused their privacy violations." *See* Op. at 13–15. But again, the Complaint remains replete with allegations of wrongful conduct by *both Nuance and Chase*. *See* CAC ¶¶ 50, 59, 68 (alleging that "**[n]either Nuance nor Chase** disclosed" to Plaintiffs that they would allegedly record calls, and that Plaintiffs "did not give [their] consent, written or otherwise, to **either Nuance or Chase**") (emphasis added). In fact, the Complaint acknowledges that Nuance's software is merely a device Chase used to execute on the terms in the Deposit Account Agreements, noting that the software is "a **tool** intended to be integrated into the call centers of companies that have licensed Nuance's software," "including Chase Bank," which "use Nuance's biometric voice recognition software to verify their callers' identities[.]" *Id.* ¶ 27 (emphasis added); *see also* Deck Decl., Ex. A at 19.

Thus, contrary to Plaintiffs' assertion that they are challenging "Nuance's sole conduct," "[u]nderlying each claim are allegations about [Chase's] conduct, not just [Nuance's] . . . Even though Plaintiffs do not mention the [Deposit Account Agreements], the claims they raise against [Nuance] are founded in and inextricably intertwined with the terms and obligations of the [agreements]." *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020). And Plaintiffs' attempt to distinguish *In re Pac. Fertility* fails for this reason: because the Complaint alleges that both Nuance and Chase failed to disclose and obtain consent regarding Chase's use of Nuance's software, because Chase disclosed this use in the Deposit Account Agreements, and because Plaintiffs allege concerted misconduct between the Nuance and Chase, they must arbitrate.

Plaintiffs' cases do not compel a different result. For instance, in *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 2014 WL 1338474 at *1 (N.D. Cal. Mar. 28, 2014), the plaintiffs asserted wiretapping claims, among others, against mobile device manufacturers and CIQ, a vendor of software capable of intercepting and processing data on mobile devices. Plaintiffs alleged that several wireless carriers (not defendants in the case) licensed CIQ's software and ordered the mobile device manufacturers to install such software in their devices, which was then allegedly intercepted by CIQ. The device manufacturers and CIQ moved to compel arbitration under an equitable estoppel theory based on an agreement between the plaintiffs and their wireless carriers.

In denying the motion to compel, the Court repeatedly relied on the fact that the plaintiffs were not suing the defendants for "any conduct on the part of Defendants related to interception for/transmittal to *the wireless carriers*" who were the signatories to the arbitration agreements. 2014 WL 1338474 at *8; *see also id.* at *10 (noting that plaintiffs' claims arise from alleged conduct by CIQ that is "separate and distinct from the interception and transmission of information to wireless carriers"); *id.* at *11 ("The problem here is that Plaintiffs' unlawful interception/transmission claims asserted herein are not predicated on allegations that Defendants colluded or otherwise acted in concert with the wireless carriers. Plaintiffs' claims are based on interception for and transmittal to persons or entities *other* than the wireless carriers . . . .").

By contrast, here, Plaintiffs' claims arise from *Chase's use* of Nuance's voice recognition software—*i.e.*, the alleged interception of information by Nuance *for the use of Chase*. Thus, unlike in *In re Carrier IQ*, the claims against Nuance are *not* based on conduct "separate and distinct from the interception and transmission of information to [Chase]," the signatory to the arbitration agreements; to the contrary, they are based on *precisely* such transmission. And as discussed, this conduct is "intimately founded in and intertwined with" the Deposit Account Agreements, which expressly contemplate the use of such software.[6]

## III. CONCLUSION

For the foregoing reasons and the reasons in Nuance's motion to compel, Nuance respectfully requests that the Court grant this motion and enter an order: (1) compelling each Plaintiff to individually arbitrate his or her claims against Nuance under the terms of the binding arbitration agreements; and (2) staying this action in its entirety under 9 U.S.C. § 3.

[6] Plaintiffs are wrong that "California courts have made clear there can be no 'interdependent and concerted misconduct' where plaintiffs bring claims exclusively against a nonsignatory to an arbitration agreement." Op. at 13. Indeed, Plaintiffs' quote from *Jurosky v. BMW of N. Am., LLC*, 441 F. Supp. 3d 963, 970–71 (S.D. Cal. 2020), does not support their assertion. In *Jurosky*, the court observed that "[o]ther courts have found that where no claim or allegation is made against the *nonsignatory* in a complaint, the second circumstance in *Kramer* does not apply." (emphasis added). Here, Nuance is the nonsignatory, and despite dismissing Chase, the signatory, Plaintiffs make allegations against both entities.

Dated: September 18, 2023

JENNER & BLOCK LLP

By: /s/ Kate T. Spelman
Kate T. Spelman
David C. Layden

Attorneys for Defendant
Nuance Communications, Inc.