**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

**JENNER & BLOCK LLP**
David C. Layden (*pro hac vice*)
dlayden@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Attorneys for Defendant
Nuance Communications, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

DANA TURNER, DANIEL SMITH, and AARON YOUSHEI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NUANCE COMMUNICATIONS, INC.,

Defendant.

Case No. 4:22-cv-05827-DMR
*Consolidated with 4:23-cv-00797-DMR*

**DEFENDANT NUANCE COMMUNICATIONS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Judge: Honorable Donna M. Ryu

Hearing Date: February 22, 2024
Time: 1:00 p.m.
Courtroom: 4

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on February 22, 2024, at 1:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 4 of the Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, California, Defendant Nuance Communications, Inc. will, and hereby does, move this Court for an order dismissing Plaintiffs' Consolidated Class Action Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiffs fail to state any claim on which relief can be granted. Nuance seeks dismissal without leave to amend.

Nuance's motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; the pleadings, files, and records in this action; and such additional evidence and arguments as may be presented at the hearing of this motion.

DATED: December 8, 2023

JENNER & BLOCK LLP

By: */s/ Kate T. Spelman*

Kate T. Spelman
David C. Layden
Attorneys for Defendant
Nuance Communications, Inc.

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 3

a. Nuance Licenses Voice Recognition Software That Allows Businesses to Authenticate Their Customers' Identities. .......... 3

b. Plaintiffs Consented to Chase Using Their Voices to Verify Their Identities. .......... 4

c. Plaintiffs Allege CIPA Violations Based on Chase's Alleged Use of Nuance Voice Recognition Software. .......... 5

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

a. Plaintiffs' CIPA Claims Are Barred Because They Consented to Any Purported Monitoring of Their Calls with Chase to Verify Their Identities. .......... 7

b. Plaintiffs' Section 631(a) and Section 632(a) Claims Fail Because Nuance is Not a Third Party to Plaintiffs' Communications with Chase. .......... 9

c. Plaintiffs Cannot State a Claim Under Clauses Two or Three of Section 631(a). .......... 13

i. Plaintiffs' 631(a) Clause Two "Eavesdropping" Claim Fails Because They Do Not Allege That Nuance Learns the Contents or Meaning of Communications. .......... 13

ii. Plaintiffs' 631(a) Clause Three "Use" Claim Fails Because They Have Not Stated a Clause One or Two Claim and They Fail to Plead "Use." .......... 15

d. Plaintiffs Fail to State a Claim Under Section 637.3 Because the Nuance Software Does Not Function as a Lie Detector. .......... 16

V. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Allison v. Wells Fargo Bank, N.A.*, No. 22-CV-0510, 2022 WL 10756885 (S.D. Cal. Oct. 18, 2022) ....14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....6

*Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal.) .... *passim*

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ....13

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal.) .... *passim*

*Cody v. Boscov's, Inc.*, No. 22-CV-01434, 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023) ....3

*Cooper v. Slice Techs., Inc.*, No. 17-CV-7102, 2018 WL 2727888 (S.D.N.Y. June 6, 2018) ....8

*Garcia v. Build.com, Inc.*, No. 22-CV-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ....3, 11

*Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....1, 7

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ....11, 17

*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) ....6, 9, 15

*Graham v. Noom*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) .... *passim*

*Johnson v. Blue Nile, Inc.*, No. 20-CV-08183, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ....11, 13

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ....1

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ....5, 12

*Licea v. Am. Eagle Outfitters, Inc.*, No. 22-CV-1702, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ....3

*Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954 (C.D. Cal.) ....3

*Licea v. Cinmar, LLC*,
No. 22-CV-6454, 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023)....3, 5

*Licea v. Old Navy*,
No. 22-CV-01413, 2023 WL 3012527 (C.D. Cal. Apr. 19, 2023)....12, 16

*Licea v. Vitacost.com, Inc.*,
No. 22-CV-1854, 2023 WL 5086893 (S.D. Cal. July 24, 2023)....3

*Martin v. Sephora USA, Inc.*,
No. 22-CV-01355, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)....15

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)....5, 6, 15

*Mayen v. CAL Cent. Harvesting, Inc.*,
No. 21-CV-0145, 2021 WL 4951792 (E.D. Cal. Oct. 25, 2021)....14

*Powell v. Union Pac. R.R. Co.*,
864 F. Supp. 2d 949 (E.D. Cal. 2012)....9

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....11

*Sharma v. ARS Aleut Constr., LLC, et al.*,
No. 21-CV-4004, 2021 WL 4554193 (N.D. Cal. Oct. 5, 2021)....11, 17

*Silver v. Stripe Inc.*,
No. 20-CV-08196, 2021 WL 3191752 (N.D. Cal. July 28, 2021)....7, 8

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)....7

*Tulelake Irrigation Dist. v. United States Fish & Wildlife Serv.*,
40 F.4th 930 (9th Cir. 2022)....9

*Williams v. DDR Media, LLC*,
No. 22-CV-03789, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023)....11

*Williams v. What If Holdings, LLC*,
No. 22-CV-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....3, 9, 11

*Zadrozny v. Bank of N.Y. Mellon*,
720 F.3d 1163 (9th Cir. 2013)....18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....13, 14

**Statutes**

Cal. Penal Code §§ 630 *et seq.*.... *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In the face of growing fraud and cybercrime threats, Defendant Nuance Communications, Inc. licenses voice authentication software to help companies protect their customers—customers like Plaintiffs. Plaintiffs allege that their bank—Chase Bank—licensed Nuance's software to authenticate the identities of people calling Chase's customer support center. They further contend that Nuance's software works by finding many different qualities in a caller's voice that the software can use to identify the person. And they admit that this voice authentication is meant to protect customers—like Plaintiffs—from fraudsters. Nonetheless, Plaintiffs now sue Nuance for providing Chase with the very software the bank uses to help keep Plaintiffs' assets and information safe.

But Plaintiffs' claims should fail. Plaintiffs attempt to impose liability on Nuance under the decades-old California Invasion of Privacy Act ("CIPA"), a criminal statute that could never have envisioned the kind of technology at issue here, let alone anticipated imposing its severe statutory damages based on the facts alleged by Plaintiffs. Indeed, Plaintiffs seek these harsh consequences even though they do not claim to have suffered any actual harm.

Plaintiffs' brazen theory of liability, however, is not supported by the law, and their claims suffer from many fatal flaws. As a threshold matter, Plaintiffs' claims all fail because Plaintiffs expressly consented to the alleged conduct that forms the basis of their claims. Specifically, each Plaintiff and Chase entered into a Deposit Account Agreement ("DAA"), the operative version of which discloses that Chase "may record and/or monitor any of our telephone conversations with you" and "may use your voice to verify your identity." Declaration of Laura Deck at Exs. A, D and E § VI.C.[1] And even if Chase's alleged use of Nuance software did involve disclosure of

[1] The DAAs and Plaintiffs' assent to them are properly considered under the "incorporation by reference" doctrine, which the Ninth Circuit has "extended . . . to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, consent is a necessary element of Plaintiffs' claims, and thus Plaintiffs' claims "depend on the contents of" the DAAs governing their Chase accounts. *See*

Plaintiffs' information to Nuance (it did not), the DAA and Chase's related Privacy Policy also contemplate disclosure of Plaintiffs' "personal information" to third parties for Chase's "everyday business purposes," which undoubtedly encompass account security measures. Because express consent is a complete bar to any claim under CIPA, none of Plaintiffs' claims can proceed.

Each of Plaintiffs' individual CIPA claims also fails for the following independent reasons:

*First*, Plaintiffs' Section 631(a) and 632(a) claims both fail in their entirety because they are precluded by CIPA's "party exemption." Plaintiffs' Complaint is replete with allegations showing that Nuance is not an independent wiretapping or eavesdropping third party but rather a software provider that allegedly licenses software to Chase for its own voice authentication.

*Second*, even assuming that Plaintiffs could sufficiently allege that Nuance was a third party for purposes of Sections 631(a) and 632(a) (they cannot), Plaintiffs still cannot pursue claims under Clauses Two or Three of Section 631(a). Plaintiffs do not plausibly allege that the Nuance software intercepted the "content or meaning" of any purported communications as would be necessary to state a claim under Clause Two; rather, the Complaint is clear that the Nuance software analyzes "characteristics" of an individual's voice to authenticate their identity. And Plaintiffs do not allege that the Nuance software "uses" any purportedly intercepted information for any purpose other than providing it to Chase for Chase's own fraud detection efforts, which sinks Plaintiffs' claim under Clause Three.

*Third*, Plaintiffs' Section 637.3 claim fails because the statute criminalizes the use of voice stress patterns to "detect the truth or falsity of statements," whereas the Nuance software uses such patterns only to authenticate Plaintiffs' identities. As another California district court recently held, this type of "biometric passcode" does not function as a lie detector and thus falls outside the

---

*Garcia*, 78 F. Supp. 3d at 1136 (citing *Knievel* and holding that "[b]ecause Plaintiff's claim necessarily depends on the application of Zimride's policies—which relate directly to the issue of consent—the Court finds that these documents may appropriately be considered on a motion to dismiss."). The relevant documents are alternatively subject to judicial notice. *See* Nuance's concurrently-filed Request for Judicial Notice.

"unequivocal[] limits" of the statute. *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1084 (S.D. Cal.).[2]

Plaintiffs' claims are not unique in their fatal flaws. Court after court has dismissed similar claims on similar grounds.[3] Plaintiffs' Complaint should share their fate and be dismissed with prejudice.

## II. FACTUAL BACKGROUND

### a. Nuance Licenses Voice Recognition Software That Allows Businesses to Authenticate Their Customers' Identities.

Nuance is a software technology company that creates and licenses, among other software, the cloud-native "biometric voice recognition software" "Gatekeeper," which is designed to protect consumers like Plaintiffs by "allow[ing] businesses to authenticate their customers' identities with their voice" in order to efficiently detect and prevent fraud. *See* CAC ¶¶ 1, 27–28. According to Plaintiffs, Gatekeeper accomplishes this task by "analyz[ing] 'more than 1,000 characteristics' of a person's unique voice, such as the sound of a person's voice, how they talk, what they say, their pattern of speech, word choice, grammar, and syntax . . . to determine whether the person is a potential fraudster" and prevent the theft of sensitive personal and financial information. *Id*. ¶ 2. "This authentication relies on the initial creation of a voice print derived

[2] In February 2023, the Southern District of California dismissed a similar CIPA suit against Nuance pursuant to a 12(b)(6) motion. *See Balanzar et al. v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal.) Nuance subsequently asked Plaintiffs to dismiss their CIPA § 637.3 claims in light of the decision, but Plaintiffs refused. By contrast, several other plaintiffs voluntarily dismissed their cases in the wake of the *Balanzar* decision. *See Smith v. TD Bank, N.A.*, No. 3:22-cv-01370 (S.D. Cal.); *Laughead v. The Charles Schwab Corp.*, No. 3:22-cv-01498 (S.D. Cal.); *Melchor et al. v. Capital One Bank (USA) N.A.*, No. 3:22-cv-01371 (S.D. Cal.); *Moore, Jr. et al. v. T. Rowe Price Retirement Services, Inc.*, No. 22-cv-1673 (S.D. Cal.); *Ortiz v. Vanguard Marketing Corp.*, No. 3:22-cv-01685 (S.D. Cal.).

[3] *See*, *e.g.*, *Graham v. Noom* ("Noom"), 533 F. Supp. 3d 823 (N.D. Cal. 2021); *see also*, *e.g.*, *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal.); *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954 (C.D. Cal.); *Licea v. Vitacost.com, Inc.*, No. 22-CV-1854, 2023 WL 5086893, at *1 (S.D. Cal. July 24, 2023); *Garcia v. Build.com, Inc.*, No. 22-CV-01985, 2023 WL 4535531 (S.D. Cal. July 13, 2023); *Licea v. Cinmar, LLC*, No. 22-CV-6454, 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023); *Licea v. Am. Eagle Outfitters, Inc.*, No. 22-CV-1702, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023); *Cody v. Boscov's, Inc.*, No. 22-CV-01434, 2023 WL 2338302 (C.D. Cal. Mar. 2, 2023); *Williams v. What If Holdings, LLC*, No. 22-CV-03780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022).

from a recording and examination of the consumers' voice and voice stress patterns." *Id.* ¶ 29. Nuance licenses Gatekeeper as "a tool intended to be integrated into the call centers of companies that have licensed Nuance's software." *Id.* ¶ 27. Plaintiffs claim that Nuance has licensed Gatekeeper to Chase Bank. *Id.*[4]

**b. Plaintiffs Consented to Chase Using Their Voices to Verify Their Identities.**

All three Plaintiffs are Chase customers. Declaration of Christopher D. Moore at Exs. A–C. When each Plaintiff opened his/her Chase account, he/she was presented with and acknowledged receipt of the DAA governing that account. As the DAA stated, it was "the basic agreement between you [Plaintiff] and us (JPMorgan Chase Bank, N.A. or 'Chase')," and that "[b]y signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement." Deck Decl. Ex. A at 5; *id.* Ex. B at 2; *id.* Ex. C at 2. Plaintiff Turner executed a Personal Electronic Signature Card, by which she acknowledged that she had "read and agree[d] to the . . . Deposit Account Agreement." Moore Decl. Ex A. Plaintiffs Smith and Youshei also executed Personal Electronic Signature Cards, by which each expressly "acknowledge[d] [that they received] the Bank's Deposit Account Agreement" and "agree[d] to be bound by the terms and conditions as amended from time to time." *Id.* Exs. B and C.

The operative DAAs at the time of the alleged calls at issue included Plaintiffs' express agreement that Chase "may record and/or monitor any of our telephone conversations with you" and "may use your voice to verify your identity." Deck Decl. Exs. A, D and E § VI.C.[5] The Chase Privacy Notice, which is attached to the DAA, provides that Chase "can [and does] share your personal information" "[f]or our everyday business purposes – such as to process your transactions [and] maintain your account(s)[.]" *Id.* at Privacy Notice at 1.

---

[4] Plaintiffs' allegation that Chase uses cloud-native Gatekeeper software-as-a-service is not true. Solely for purposes of this motion to dismiss, however, Nuance treats as true Plaintiffs' allegations that Chase uses Gatekeeper software-as-a-service.

[5] The Chase DAA has contained this language since at least November 2020 and therefore covers the period relevant to Plaintiffs' Complaint. *See* Deck Decl. Ex. A (effective as of November 8, 2020); *id.* Ex. D (effective as of June 12, 2022); *id.* Ex. E (effective as of October 16, 2022).

**c. Plaintiffs Allege CIPA Violations Based on Chase's Alleged Use of Nuance Voice Recognition Software.**

Plaintiffs allege that they each called Chase's customer support call center "on numerous occasions within the past two years." CAC ¶¶ 44, 54, 63. They claim that their "telephone[s] [were] tapped by Nuance using Gatekeeper's voice biometric security solution." *Id.* ¶¶ 47, 56, 65. According to Plaintiffs, Nuance's software examined their "voice stress patterns" through "voice stress test[s]," "which rel[y] on the theory that certain verbal cues, such as a speaker's tone, pitch, rhythm, micro-tremors, and other subtle changes in voice convey information about the physiological and psychological state of the speaker." *Id.* ¶¶ 26, 29. Nuance allegedly used the results of those voice stress analyses to create voice prints to authenticate Plaintiffs' identities. *Id.* ¶¶ 49, 58, 67. Specifically, Plaintiffs contend that Nuance created a database of "voice prints" to "compare the voice characteristics of later callers against their saved voice prints." *Id.* ¶ 29. According to the Complaint, Plaintiffs were "unaware" that their voices were being "examine[d], record[ed], wiretap[ped], or analyze[d]" without their consent. *Id.* ¶¶ 3, 51, 60, 69.

Based on these allegations, Plaintiffs—who seek to represent a putative class of "[a]ll residents of the State of California who had their voice prints, voice stress patterns, or other elements of their conversation recorded and examined by Nuance without first obtaining prior written consent"—assert claims against Nuance for allegedly wiretapping, eavesdropping on, and/or recording their calls with Chase, or otherwise examining and/or analyzing their voice patterns, in violation of CIPA Sections 631(a), 632(a), and 637.3.

## III. <u>LEGAL STANDARD</u>

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Cinmar*, 2023 WL 2415592, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]'" as any such conclusions "must be supported by factual allegations." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1133 (E.D. Cal. 2021) (quoting *Iqbal*, 556 U.S. at 678). "[U]nwarranted inferences" are also "insufficient to

avoid dismissal." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (citation omitted). Rather, the plaintiff must "allege more by way of factual content to 'nudg[e]' his claim" of unlawful action "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV. ARGUMENT

CIPA criminalizes various forms of "wiretapping" and "eavesdropping" by third parties without consent. Here, Plaintiffs assert claims under CIPA Sections 631(a), 632(a), and 637.3.

In analyzing Section 631(a), globally entitled "Wiretapping," the California Supreme Court has delineated "three distinct and mutually independent patterns of conduct" giving rise to liability: (1) "intentional wiretapping" ("Clause One" or "Wiretapping"); (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire" ("Clause Two" or "Eavesdropping"); and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities" ("Clause Three" or "Use"). *Mastel*, 549 F. Supp. 3d at 1134 (quoting *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)). Plaintiffs assert violations of all three clauses.

Section 632(a) prohibits "[a] person" from "intentionally . . . us[ing] an electronic amplifying or recording device to eavesdrop upon or record [] confidential communication[s]" "without the consent to all parties" to the communication. Cal. Penal Code § 632(a). "California courts interpret 'eavesdrop,' as used in § 632, to refer to a third party secretly listening to a conversation between two other parties." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020).

Finally, Section 637.3 "prohibits any person or entity in California from using 'any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such person without his or her express written consent given in advance of the examination or recordation.'" *Balanzar,* 654 F.

Supp. 3d at 1078 (quoting Section 637.3(a)). Put differently, Section 637.3 "only regulates the use of voiceprints for the narrow and specific purpose of lie detection." *Id.* at 1083.

Plaintiffs cannot state claims against Nuance under any of these provisions because they expressly consented to the alleged monitoring they now challenge, and they do not and cannot plead the facts necessary to establish violations of the individual CIPA provisions they invoke.

**a. Plaintiffs' CIPA Claims Are Barred Because They Consented to Any Purported Monitoring of Their Calls with Chase to Verify Their Identities.**

Express written consent is a complete defense to alleged CIPA violations. *See* CIPA § 631 (prohibiting wiretapping and eavesdropping "without [] consent"); CIPA § 632 (prohibiting recording of confidential communications "without the consent of all parties"); CIPA § 637.3 (prohibiting examining or recording voice prints to determine the truth or falsity of statements "without [] express written consent"). Furthermore, "terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims." *Silver v. Stripe Inc.*, No. 20-CV-08196, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing CIPA claims based on notice in privacy policy presented via a sign-in wrap agreement); *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (finding "Plaintiffs' consent [to Facebook's Data Policy] bars their statutory causes of action" under CIPA and the Wiretap Act), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("The district court properly held that Plaintiffs consented to Facebook's data tracking and collection practices."). For instance, in *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135–37 (N.D. Cal. 2015), the Privacy Policy at issue disclosed that the provider "may share your personal information with our agents, representatives, contractors and service providers." The Court concluded that the Policy "contradict[ed] Plaintiff's claim that he was unaware of and did not consent to the transfer of his personal information to a third party." *Id*. at 1136.

Here, Chase's DAA, to which all Plaintiffs agreed and are bound, expressly discloses that Chase "may record and/or monitor any of our telephone conversations with you" and "may use

your voice to verify your identity."[6] Deck Decl. Exs. A, D, and E § VI.C. That is the precise conduct that forms the basis for all of Plaintiffs' CIPA claims. And even assuming *arguendo* that Nuance received communications between Plaintiffs and Chase (which it did not), the DAA does not proscribe the method by which Chase may effectuate the verification of customers' identities, and indeed *expressly contemplates* alleged disclosure of customer information to third parties. Specifically, the Chase DAA provides that "[i]nformation about your account or the transactions you made will be disclosed to third parties: . . . [a]s permitted by our Privacy Notice." *Id*. § III.D.8. The Chase Privacy Notice, which is attached to the DAA, provides that Chase "can share your personal information" "[f]or our everyday business purposes – such as to process your transactions [and] maintain your account(s)[.]" *Id.* at Privacy Notice at 1. "That the disclosures were provided by [Chase] (as opposed to [Nuance] directly) does not require a different result." *Silver*, 2021 WL 3191752, at *4.

Because Chase affirmatively disclosed that it may record calls with consumers, use Plaintiffs' voices to verify their identities (and thereby protect their accounts from fraudsters), and share information with third parties for Chase's business purposes (which undoubtedly includes account security), and Plaintiffs accepted the terms of the DAA and any subsequent amendments upon creating their Chase accounts, Plaintiffs consented to any alleged monitoring of their communications with Chase and any purported disclosure to third parties. This is fatal to all claims under any Section of CIPA and cannot be cured by amendment, requiring dismissal with prejudice.

[6] "[Chase's] use of the word 'may,' as opposed to 'will,' in the privacy policy does not make it such that the policy gives insufficient notice of the alleged conduct. Privacy policies often make disclosures by stating what companies 'may' do, and such disclosures have been upheld time and again by courts as sufficient to establish consent." *Silver*, 2021 WL 3191752, at *4; *see also id.* (citing *Cooper v. Slice Techs., Inc*., No. 17-CV-7102, 2018 WL 2727888, at *4 (S.D.N.Y. June 6, 2018)) ("Plaintiffs argue that the privacy policy is misleading because it says only that UnrollMe may sell consumer data, not that it would do so. But this distinction is without difference. If I ask you if I may enter your house, and you say yes, you have given me permission to enter your house.").

**b. Plaintiffs' Section 631(a) and Section 632(a) Claims Fail Because Nuance is Not a Third Party to Plaintiffs' Communications with Chase.**

Both federal and state courts in California have long made clear a fundamental aspect of CIPA: only a third-party can be liable for wiretapping or eavesdropping because "[p]arties to a conversation cannot eavesdrop on their own conversation." *Byars*, 656 F. Supp. 3d at 1064; *see also Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012) ("Published cases are in accord that section 631 applies only to third parties and not participants."); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827 ("California courts interpret 'eavesdrop,' as used in § 632, to refer to a third party secretly listening to a conversation between two other parties.") (citing *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008). Here, Plaintiffs allege that Nuance simply licenses voice authentication software to Chase, which is the only party to the alleged conversations with Plaintiffs. This sinks both Plaintiffs' Section 631(a) claim in its entirety, and Plaintiffs' Section 632(a) claim to the extent premised on alleged eavesdropping.[7] The same rationale also sinks Plaintiffs' Section 632(a) "recording" claim because Chase's alleged use of Nuance's *software* cannot give rise to a plausible claim that *Nuance* intentionally recorded any "confidential communication" with Plaintiffs.

Plaintiffs' attempt to circumvent this well-recognized party exception by endeavoring to characterize a technology provider like Nuance as a "third party" rather than merely a software provider that allegedly licenses software "that [Chase] use[s] to record its own communications with [Plaintiffs]" has been repeatedly rejected. *Williams*, 2022 WL 17869275, at *3. In analyzing this issue, a significant majority of courts have held that a plaintiff's failure to plausibly allege that a technology provider captures communications *for its own purpose*—rather than to facilitate the owner's purpose—is strong indicia that the provider's service is "merely a tool," *i.e.*, merely an

[7] While the case law largely analyzes the party exception with respect to Section 631(a) claims, the term "eavesdrop" is interpreted in both Sections to require *third party* intervention, and thus the *absence* of a third party precludes both claims. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827; *see also Tulelake Irrigation Dist. v. United States Fish & Wildlife Serv.*, 40 F.4th 930, 937 (9th Cir. 2022) ("It is an elementary principle of statutory construction that similar language in similar statutes should be interpreted similarly.").

extension of the party to whom the plaintiff provided consent, and thus a CIPA claim cannot stand against the software provider. The same result should occur here.

*Graham v. Noom, Inc*. is directly on point. 533 F. Supp. 3d at 831. There, the plaintiffs visited Noom's website to investigate Noom's "diet offerings." *Id*. at 829. Noom used software supplied by a third-party vendor, FullStory, "to capture and analyze data" so that Noom could see how visitors were using its website. *Id*. at 828. Noom allegedly used FullStory's code on its website to capture the data, which was then stored "in the cloud on Fullstory's servers" and made available for Noom to review. *Id*. Based on this use, the plaintiffs alleged that FullStory eavesdropped on their communications with Noom in violation of CIPA § 631(a). *Id*. at 831. They argued that FullStory was liable for recording Noom's communications with visitors, as FullStory was not a party to the conversations, and Noom was liable for aiding and abetting that eavesdropping. *Id*.

The court disagreed and granted Noom's motion to dismiss. It held that FullStory could not be liable for eavesdropping (and Noom could not be liable for aiding and abetting it), because FullStory merely provided a software used by Noom. *Id*. at 832–33. In so holding, the court explained:

> FullStory is a vendor that provides a software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients to analyze their data. . . . [T]here are no allegations here that FullStory intercepted and used the data itself. Instead, as a service provider, FullStory is an extension of Noom. It provides a tool — like the tape recorder in *Rogers* — that allows Noom to record and analyze its own data in aid of Noom's business. . . . It is not a third-party eavesdropper. As a result, Noom is not liable for aiding and abetting FullStory's wrongdoing because there is no wrongdoing.

*Id*. (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897–899 (1975)). The court thus concluded that FullStory was not a third-party eavesdropper within the meaning of CIPA. *Id*.; *see also Byars*, 656 F. Supp. 3d at 1068 (granting motion to dismiss CIPA lawsuit because "Defendant uses a third-party vendor to record and analyze its own data in aid of [Defendant's] business, not the aggregation of data for resale, which makes the third-party an extension of Defendant's website,

not a third-party eavesdropper") (quotations and citation omitted); *Williams,* 2022 WL 17869275, at *4 (granting motion to dismiss CIPA lawsuit because "the facts as pled show that [the software] functioned as a recorder, and not as an eavesdropper. [The third-party vendor] is not liable for wiretapping under Section 631(a) for providing a software tool, and the fact that [the defendant] used software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping"); *Johnson v. Blue Nile, Inc*., No. 20-CV-08183, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (granting motion to dismiss CIPA lawsuit because "for the reasons stated in *Graham v. Noom*, FullStory is not a third-party eavesdropper. As a result, Blue Nile is not liable for aiding and abetting FullStory's wrongdoing because there is no wrongdoing").[8]

The same is true here. Plaintiffs allege that Nuance's software is merely a tool, describing it as "*a tool* intended to be integrated into the call centers of companies that have licensed Nuance's software." CAC ¶ 27 (emphasis added). Chase allegedly used Nuance's software to conduct the alleged recording for Chase's own purposes (including to ensure Plaintiffs were the customers on the accounts they sought to access), and the Section 631(a) and Section 632(a) claims must fail.

Plaintiffs' later attempts to plead around this fact are not plausible given the totality of their allegations. *See Sharma v. ARS Aleut Constr., LLC, et al*., No. 21-CV-4004, 2021 WL 4554193, at *2 (N.D. Cal. Oct. 5, 2021) ("While the Court is required to assume plaintiff's allegations are true, the Court may disregard statements that are contradictory and implausible."); *see also In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (similar). Plaintiffs strangely pair their allegation that Nuance's software is a tool with a conclusory denial of the same fact. *See* CAC ¶ 39. But Plaintiffs' numerous allegations describing Nuance's software confirm that they are indeed contending it is a tool that Chase allegedly uses for Chase's own purpose (ensuring

---

[8] The minority view of Section 631(a)'s requirements focuses on the capability of the software provider rather than the purpose of the purported interception. But these cases, such as *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) and its progeny, are dwarfed by the overwhelming majority of decisions dismissing CIPA claims where, as here, the plaintiff fails to plausibly allege that a technology provider captures communications for its own purpose—rather than to facilitate the website owner's purpose. *See, e.g., Noom*, 533 F. Supp. 3d at 832–33; *Williams v. DDR Media, LLC*, No. 22-CV-03789, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023); *Garcia*, 2023 WL 4535531, at *5; *Byars*, 656 F. Supp. 3d at 1068; *Williams*, 2022 WL 17869275, at *4; *Johnson*, 2021 WL 1312771, at *2.

Chase does not grant unauthorized access to a customer's account). *See, e.g., id.* ¶ 1 (alleging that Nuance's software "*allows businesses* to authenticate their customers' identities with their voice") (emphasis added); *id.* ¶ 4 ("*Services like Nuance* are becoming increasingly popular in the digital era, as businesses seek to authenticate the identities of their customers dialing into their call centers.") (emphasis added); *id.* ¶ 27 (alleging that companies such as Chase "*use* Nuance's biometric voice recognition software to verify their callers' identities") (emphasis added); *id.* ¶ 37 ("*Nuance's software* seamlessly incorporates into its customers' call centers . . .") (emphasis added); *id.* ¶ 39 ("*When Gatekeeper is used* on a telephone conversation . . .") (emphasis added).

Of particular importance is Plaintiffs' omission of any allegation that the Nuance software purportedly intercepted communications for something other than helping Chase protect customers like Plaintiffs. Plaintiffs' allegations that Nuance's software "surreptitiously creates voice prints from the consumer's voice" and that Nuance has "amassed a massive voiceprint database of individuals, including those it considers to be 'fraudsters'" do not change this conclusion. CAC ¶¶ 32, 37. In fact, Plaintiffs allege themselves that these voiceprints and the alleged voiceprint database are used only by Chase for the purpose of fraud detection, in aid of its own business, rather than for Nuance to realize any independent financial benefit. *See, e.g.*, *id*. ¶ 39 (alleging that "the data, or voiceprints, that Nuance extracts from consumers while eavesdropping is then analyzed by Nuance before *being provided to its business partners like Chase Bank to authenticate consumers*") (emphasis added); *id*. ¶ 32 (alleging with respect to Nuance's alleged "voiceprint database" that "Nuance's technology can supposedly '[a]uthenticate trusted calls and then check caller voices against a watchlist to immediately alert on known fraudsters'"). At bottom, Plaintiffs' allegations are "insufficient to avoid dismissal" given that they assert no facts whatsoever suggesting that the Nuance software collects data from Chase's calls for any purpose other than "simply supplying this information back to [Chase]." *Kwan*, 854 F.3d at 1096; *Licea v. Old Navy*, No. 22-CV-01413, 2023 WL 3012527, at *3 (C.D. Cal. Apr. 19, 2023); *see also Byars,* 656 F. Supp. 3d at 1068 (granting motion to dismiss CIPA case and finding that "[w]ithout alleging a single specific fact in support of the contention that the third party 'harvest[s] data for financial

gain,' the allegation is a mere conclusion disregarded under *Twombly* and *Iqbal*").

Because Plaintiffs' factual allegations establish that Nuance functions not as a third party eavesdropper, but rather as "a vendor that provides" "a tool . . . that allows [Chase] to record and analyze its own data in aid of [its] business," *Noom*, 533 F. Supp. 3d at 832 (citing *Rogers*, 52 Cal. App. 3d at 897–99), the party exemption precludes Plaintiffs' Sections 631(a) and 632(a) claims in their entirety.

**c. Plaintiffs Cannot State a Claim Under Clauses Two or Three of Section 631(a).**

**i. Plaintiffs' 631(a) Clause Two "Eavesdropping" Claim Fails Because They Do Not Allege That Nuance Learns the Contents or Meaning of Communications.**

Plaintiffs also fail to plausibly allege that the Nuance software learned or attempted to learn the "contents or meaning" of Plaintiffs' communications with Chase, as required to state a claim under Section 631(a) Clause Two.

Courts in the Ninth Circuit agree CIPA should be interpreted coterminous with the Federal Wiretap Act. *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("contents" of a communication under CIPA are the same as "contents" under the Federal Wiretap Act). The Ninth Circuit has held that the "contents" of a communication under the Federal Wiretap Act are the communication's "meaning" and "refer[] to the intended message conveyed by the communication," which "does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig*., 750 F.3d 1098, 1106 (9th Cir. 2014) (under the Federal Wiretap Act, contents transmitted by Facebook.com did not include a user's Facebook ID and browsing history when automatically gathered, but it could include messages that stated that information); *see also Noom*, 533 F. Supp. 3d at 833 ("[P]laintiffs predicate their [CIPA] claim in part on information — such as IP addresses, locations, browser types, and operating systems — that is not content."); *Johnson*, 2021 WL 1312771, at *2 (same).

Here, the Complaint lacks any well-pled factual allegation that the Nuance software (or Nuance) learned or attempted to learn the "contents" of Plaintiffs' communications with Chase.

The Complaint fails to identify any specific communication "contents" allegedly collected by Nuance. Most notably, none of the individual Plaintiffs identify any specific "content" communicated to Chase, let alone collected by the Nuance software. Rather, the Complaint's allegations related to "content" are merely conclusory, parroting the language of the statute without any allegations showing that the facts meet the legal term of art. CAC ¶¶ 48, 57, 66 (alleging that "[t]he content of [each Plaintiff's] confidential communications with Chase were intercepted in transit and captured, recorded, collected, read, analyzed, and stored by Nuance"). Such recitations are insufficient to meet federal pleading standards. *See, e.g., Allison v. Wells Fargo Bank, N.A.*, No. 22-CV-0510, 2022 WL 10756885, at *3 (S.D. Cal. Oct. 18, 2022) ("Complaint language that 'simply parrots the statute without providing any factual support for the allegations' does not satisfy the plausibility pleading standard.") (citation omitted); *Mayen v. CAL Cent. Harvesting, Inc.*, No. 21-CV-0145, 2021 WL 4951792, at *3 (E.D. Cal. Oct. 25, 2021) ("Merely parroting the statute does not constitute plausible factual allegations.").

Plaintiffs' descriptions of how the Nuance software allegedly uses collected information confirm the implication of these omissions: neither the Nuance software nor Nuance attempts to learn content. Though Plaintiffs allege that "Nuance used the content of Plaintiffs' and Class members' communications" and "what [consumers] say," they admit that the Nuance software only did so "to analyze Plaintiffs' and Class members' voices for identification and emotion." CAC ¶¶ 85; *see also id.* ¶ 31 (alleging that Nuance "uses . . . 'what [consumers] say' by analyzing 'how a person uses language, including word choice, grammar, emojis, and acronyms"). Plaintiffs contend only that the Nuance Gatekeeper software analyzes the "characteristics" of the purportedly intercepted communications to identify potential fraud; Plaintiffs do not and cannot allege that the Nuance software seeks to learn "the intended message conveyed by th[at] communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106; *see also*, *e.g.*, CAC ¶ 9 (alleging that Nuance's software analyzes "voice prints or other voice stress patterns"); *id.* ¶ 22 (noting that "[c]reating a voice print and examining an individual's voice stress patterns requires extracting and analyzing an individual's phonetic features (including their unique speech patterns and characteristics, tone,

rhythm, and pitch) from their voice"); *id*. ¶ 28 (referencing Nuance's marketing materials that its software can "authenticat[e] individuals by the way they talk, text and type"). Consequently, Plaintiffs have not plausibly alleged that the Nuance software attempted to learn the "contents or meaning" of any communications in violation of Section 631(a) Clause Two.

#### ii. Plaintiffs' 631(a) Clause Three "Use" Claim Fails Because They Have Not Stated a Clause One or Two Claim and They Fail to Plead "Use."

To state a claim under Clause Three of Section 631(a), Plaintiffs must first state a claim under Clause One or Clause Two, which Plaintiffs cannot do. This is because Clause Three prohibits a defendant from "attempting to use or communicate information obtained *as a result of engaging in either of the two previous activities*"—*i.e.*, the "activities" enumerated in Clauses One and Two of Section 631(a). *Martin v. Sephora USA, Inc*., No. 22-CV-01355, 2023 WL 2717636, at *6 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, No. 22-CV-01355, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (emphasis added).

Thus, in accordance with the plain language of the statute, courts have held that "[a] finding of a violation under the third clause of § 631(a) is contingent on a finding of a violation of the first or second clause of § 631(a)." *Id*. at *11; *see also Mastel*, 549 F. Supp. 3d at 1136 ("Because the court concludes that Mastel has failed to state a claim under either clause 1 or 2, his claim that Miniclip violated § 631(a)'s third clause fails as a matter of law."). Because Plaintiffs have failed to state a claim under Clauses One or Two of Section 631(a), Plaintiffs' Section 631(a) Clause Three claim necessarily fails. *See In re Google Assistant Priv. Litig*., 457 F. Supp. 3d at 827 ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses [of § 631(a)]. Because Plaintiffs have not done so, they have also failed to plead a violation of the third clause.").

Plaintiffs also cannot state a claim under Clause Three of Section 631(a) because they fail to allege that the Nuance software (or Nuance) uses the data allegedly collected by Gatekeeper for any purpose outside of furnishing it to customers like Chase to support the customers' fraud detection efforts. *See* CAC ¶ 29 (alleging only that Nuance "uses" such data for identification

purposes and "compare[s] the voice characteristics of later callers against their saved voice prints, in order to authenticate and identify callers"). Courts have repeatedly held that such "use"—which simply assists a party to the communication—cannot trigger CIPA liability; rather, "Plaintiff must provide facts suggesting that the third party recorded Defendant's customers' information for some use or potential future use *beyond simply supplying this information back to Defendant*." *Old Navy*, 2023 WL 3012527, at *3 (emphasis added); *see also Noom*, 533 F. Supp. 3d at 832. Without factual allegations supporting Nuance's *independent* "use" of the allegedly intercepted data (which Plaintiffs cannot plead), Plaintiffs' Clause Three claim fails.

**d. Plaintiffs Fail to State a Claim Under Section 637.3 Because the Nuance Software Does Not Function as a Lie Detector.**

The plain language of Section 637.3 regulates the "examin[ation] or record[ing]" of voiceprints for a specific purpose: to "determine the truth or falsity of statements." By contrast, the factual allegations in the Complaint demonstrate that the Nuance software used voiceprints as a means of identification, not as a functional "lie detector." Beyond conclusory allegations that merely restate the statutory language, Plaintiffs plead no facts indicating that the Nuance software analyzed voice stress patterns for the purpose of detecting lies. Plaintiffs' Section 637.3 claim must fail.

A recent decision squarely addresses this issue. *See Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal.). There, Fidelity Brokerage Services, LLC used the "MyVoice" system to verify its callers' identities by creating a biometric voice print for each caller. *Id*. at 1078. The plaintiff alleged that Fidelity examined or recorded voice prints and other voice stress patterns to "determine the truth or falsity" of callers' statements. *Id*. at 1079. Fidelity moved to dismiss, arguing in relevant part that Section 637.3 regulates the use of voiceprints for lie detection rather than the use of voiceprints to determine a speaker's identity. *Id*.

In granting Fidelity's motion to dismiss, the Court observed that "the plain text of § 637.3 unequivocally limits the scope of the statute to the examination or recordation of a voice stress pattern for the purpose of determining 'the truth or falsity' of the statement(s). The provision is

crystal clear on this point." *Id*. at 1084. The Court also noted that the legislative history of § 637.3 supported that conclusion. The Court thus concluded that because the "MyVoice" system did "not require a caller to claim they are the account holder or to make any other claim or affirmative statement," "MyVoice is nothing more than a biometric passcode and is not a lie detector" in violation of § 637.3. *Id*. at 1085–86.

The same is true here. Like "MyVoice," the Nuance software at issue here allegedly "[a]uthenticate[s] customers based on the distinct characteristics of their voice[s]" and uses "voice biometrics" to authenticate callers. CAC ¶¶ 30–31. Despite Plaintiffs' single conclusory allegation[9] that the Nuance software "assesses consumers' assertions regarding their respective identities (i.e., stating that it is they who are the ones calling) as a means of authenticating users," *id*. ¶ 40, Plaintiffs expressly acknowledge throughout the Complaint that the Nuance software "analyzes 'more than 1,000 characteristics' of a person's unique voice . . . to determine whether the person is a potential fraudster." *Id.* ¶ 2; *see also id*. ¶ 27 (characterizing Gatekeeper as "biometric voice recognition software," like MyVoice); *id*. ¶ 29 (alleging that the Nuance software "compare[s] the voice *characteristics* of later callers against their saved voice prints") (emphasis added); *id*. ¶¶ 30–31 (similar). Because the Nuance software utilizes the characteristics of a caller's voice to authenticate their identity and determine if they are a "potential fraudster" rather than to determine whether the contents of their representations are truthful, Plaintiffs fail to state a viable claim under Section 637.3.

## V. CONCLUSION

This lawsuit is a misguided attempt to expand CIPA far beyond its statutory purview to criminalize a software product allegedly utilized by Chase Bank to prevent fraudsters from gaining access to Plaintiffs' personal and financial information. Plaintiffs' claims—like scores of equally specious CIPA claims before them—should be dismissed. Because amendment would be futile

[9] "While the Court is required to assume plaintiff's allegations are true, the Court may disregard statements that are contradictory and implausible." *Sharma*, 2021 WL 4554193, at *2; *see also In re Gilead Scis. Sec. Litig*., 536 F.3d at 1055.

here, as there are no factual allegations Plaintiffs could assert that would render their claims plausible, Nuance respectfully requests that this Court grant dismissal with prejudice and without leave to amend. *See Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013) ("A party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile.") (alteration and citation omitted).

DATED: December 8, 2023

JENNER & BLOCK LLP

By: */s/ Kate T. Spelman*

Kate T. Spelman
David C. Layden
Attorneys for Defendant
Nuance Communications, Inc.