**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
kspelman@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

**JENNER & BLOCK LLP**
David C. Layden (*pro hac vice*)
dlayden@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

Attorneys for Defendant
Nuance Communications, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

DANA TURNER, DANIEL SMITH, and AARON YOUSHEI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NUANCE COMMUNICATIONS, INC.,

Defendant.

Case No. 4:22-cv-05827-DMR
*Consolidated with 4:23-cv-00797-DMR*

**REPLY IN SUPPORT OF DEFENDANT NUANCE COMMUNICATIONS, INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Judge: Honorable Donna M. Ryu

Hearing Date: February 21, 2024
Time: 10:00 a.m.
Courtroom: 4

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

a. Plaintiffs' CIPA Claims Are Barred Because Plaintiffs Consented to the Alleged Recording of Their Calls to Verify Their Identities........ 3

b. Plaintiffs' Section 631(a) and Section 632(a) Claims Fail Because Nuance is Not a Third Party to Plaintiffs' Communications with Chase........ 7

c. Plaintiffs Cannot State a Claim Under Clauses Two or Three of Section 631(a)........ 10

i. Plaintiffs' 631(a) Clause Two "Eavesdropping" Claim Fails Because They Do Not Plausibly Allege That Nuance Learns the Contents or Meaning of Communications........ 10

ii. Plaintiffs' 631(a) Clause Three "Use" Claim Fails Because They Have Not Stated a Clause One or Two Claim and They Fail to Plead "Use."........ 12

d. Plaintiffs Fail to State a Claim Under Section 637.3 Because the Nuance Software Does Not Function as a Lie Detector........ 14

III. CONCLUSION........ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Allison v. Wells Fargo Bank, N.A.*,
No. 22-CV-0510, 2022 WL 10756885 (S.D. Cal. Oct. 18, 2022) ....................11

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023)....................3

*Balletto v. Am. Honda Motor Co.*,
No. 23-CV-01017, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ....................10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................11

*Employee Painters' Trust v. J & B Finishes*,
77 F.3d 1188 (9th Cir. 1996) ....................6

*Epstein v. Washington Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) ....................13

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....................4, 5

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................11, 12

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ....................10

*Licea v. Old Navy*,
No. 22-CV-01413, 2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) ....................13

*Norcia v. Samsung Telecommunications Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) ....................6

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ....................7

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
732 F. Supp. 2d 952 (N.D. Cal. 2010) ....................6, 13

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ....................14

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................4, 5, 15

*Soo v. Lorex Corp.*,
No. 20-CV-01437, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020) ....................7

*Swarts v. The Home Depot, Inc.*,
No. 23-CV-0995, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ....................9

*Yockey v. Salesforce, Inc.*,
No. 22-CV-09067, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ....................9, 10

*Zadrozny v. Bank of N.Y. Mellon*,
720 F.3d 1163 (9th Cir. 2013) ....................15

**Statutes**

Cal. Penal Code § 631 .................... *passim*

Cal. Penal Code § 632 .................... *passim*

Cal. Penal Code § 637.3 ....................3, 14, 15

# I. INTRODUCTION

In their Opposition, Plaintiffs speculate that software meant simply to identify a customer when she speaks with her bank somehow puts Californians at risk of "having their voices analyzed and mined for data by third parties who could then make far-reaching determinations about their lifestyle, health, and credibility." Opp. at 1–2.[1] But the fearmongering in Plaintiffs' Opposition is belied by the simple allegations in their Complaint that Chase allegedly licensed Nuance software for one laudable purpose: to protect its customers. As Plaintiffs admit in their Complaint, the software is merely a "tool" that Chase, not Nuance, allegedly uses to protect customers: "Nuance provides a voice recognition software as-a-service called 'Gatekeeper,' which is a *tool* . . . These companies *use* Nuance's biometric voice recognition software to verify their callers' identities." CAC ¶ 27 (emphasis added). These allegations not only expose Plaintiffs' fearmongering for what it is, but also are fatal to Plaintiffs' claims because they reveal that Nuance did not wiretap or eavesdrop on Plaintiffs' communications, but only allegedly provided a tool that allegedly could be used to lawfully protect bank customers. Likely aware that these allegations are fatal to their claims, Plaintiffs try elsewhere to walk them back, but these allegations persist and render their conclusory allegations to the contrary simply implausible. Because Plaintiffs themselves allege that the software is a tool that Chase, not Nuance, allegedly uses, they cannot plausibly allege that Nuance engaged in the alleged misconduct, and Plaintiffs claims should be dismissed.

Plaintiffs further assert that they bring this suit because "Californians would reasonably want an opportunity to consent before having their conversations recorded or a voice print created." *Id.* at 2. But Plaintiffs' suit has no such basis, because Plaintiffs *did* consent to recording and sharing their voices for identification purposes. Plaintiffs entered into the Deposit Account Agreement ("DAA") with Chase, and they do not dispute that fact. Nor do they dispute that the DAA contains clear disclosures that Chase may record and/or monitor telephone communications *and* may use Plaintiffs' voices to verify their identities. *See generally id.* Plaintiffs' consent goes

[1] All terms not independently defined in Nuance's Reply retain their definitions as set forth in Nuance's Motion to Dismiss.

even further because under the Privacy Notice attached to the DAA, Plaintiffs agreed that Chase could disclose their "personal information" to third parties for Chase's "everyday business purposes." *Id*. Plaintiffs' efforts to avoid their agreements by mischaracterizing the DAA and the Privacy Notice as "vague" and "generic" fail. Plaintiffs' express consent bars all of their claims and requires dismissal of the Complaint.

Each of Plaintiffs' individual CIPA claims also fails for independent reasons.

Plaintiffs' Section 631(a) and 632(a) claims both fail in their entirety because they are precluded by CIPA's "party exemption." Plaintiffs' allegations, even taken as true, show that Nuance is not a separate party independently wiretapping or eavesdropping on others' communications, but rather is a software provider allegedly licensing software to Chase that Chase allegedly uses for its own fraud prevention efforts. Though Plaintiffs expend significant effort mischaracterizing the authority cited by Nuance as "narrow" and advocating for the Court's adoption of the minority approach, that effort goes nowhere both because the widely adopted view cited by Nuance is sound and Plaintiffs' claims fail even under their preferred line of cases.

Plaintiffs' claims under Clause Two and Three of Section 631(a) separately fail. As to Clause Two, Plaintiffs do not plausibly allege that the Nuance software intercepted the "contents or meaning" of their purported communications with Chase as opposed to "record" information regarding the characteristics of their communications, which is not protected by the statute. This conclusion is confirmed by Plaintiffs' Opposition, which unsuccessfully seeks to mischaracterize the allegations in their Complaint by relying on the Complaint's conclusory recitations of the statutory language and ignoring its specific factual allegations, and by arguing that Plaintiffs' identities were the alleged "subject" of their communication with Chase, which—aside from being factually erroneous—ignores Plaintiffs' allegations that Nuance software analyzes only speech and voice *characteristics*. As to Clause Three, Plaintiffs do not allege any facts showing that the Nuance software "uses" any purportedly intercepted information for any purpose other than allegedly providing it to Chase for Chase's own fraud detection efforts. Plaintiffs' Opposition does not and cannot change this pleading failure.

Lastly, Plaintiffs' Section 637.3 claim fails because the statute only applies to the use of voice stress patterns to "detect the truth or falsity of statements," whereas the Nuance software purportedly uses such patterns only to authenticate customer identities. Though Plaintiffs fault Nuance for relying solely on the well-reasoned decision in *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal. 2023) to support dismissal, Plaintiffs cite *no case law* to support their position. And Plaintiffs cannot successfully distinguish this case from *Balanzar*. Despite Plaintiffs' assertion otherwise, the relevant factual allegations are nearly identical, and Plaintiffs' Section 637.3 claim similarly fails. Because Plaintiffs' claims fail as a matter of law and cannot be rectified by amendment, Plaintiffs' Complaint should be dismissed with prejudice.

## II. ARGUMENT

### a. Plaintiffs' CIPA Claims Are Barred Because Plaintiffs Consented to the Alleged Recording of Their Calls to Verify Their Identities.

Plaintiffs' claims against Nuance should be dismissed in their entirety because Plaintiffs expressly consented to the alleged recording of their calls and the creation of voiceprints when they agreed to the DAA. Such consent provides a complete defense under CIPA.

Plaintiffs do not dispute that the DAA governs their accounts with Chase, nor do they dispute that they are bound by the DAA's terms, which expressly disclose that Chase "may record and/or monitor any of our telephone conversations with you" and "may use your voice to verify your identity." Opp. at 8 (quoting relevant DAA provisions). The Privacy Notice attached to the DAA further informs Plaintiffs that Chase shares personal information with third parties for everyday business purposes such as maintaining their accounts. *Id*. Plaintiffs do not dispute any of this, but instead argue in vain that Chase's express disclosures of the precise conduct they now challenge are insufficient to establish consent under CIPA because (a) the disclosures do not specifically apprise Plaintiffs of *Nuance's* alleged "role in monitoring and recording conversations, or in analyzing their voices" (Opp. at 1) (emphasis added); and (b) Nuance has not established that Plaintiffs were "on notice" of the relevant disclosures (Opp. at 12). These arguments fail.

It is well settled that disclosures in privacy policies and similar terms of use can establish actual consent where they disclose the alleged conduct challenged under CIPA. *See* Mot. at 7. For instance, in *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1130 (N.D. Cal. 2015), the privacy policy at issue disclosed that the provider "may share your personal information with our agents, representatives, contractors and service providers." Based on this disclosure, the court concluded that the policy "contradict[ed] Plaintiff's claim that he was unaware of and did not consent to the transfer of his personal information to a third party." *Id*. at 1136 (dismissing CIPA claim). Notably, the privacy policy in *Garcia* (like the Notice here) did not identify the *specific* third party with whom the plaintiff's information could be shared. Similarly, in *Smith v. Facebook, Inc*., 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018), the plaintiffs argued that Facebook's privacy policy was "too vague and broad" to cover sensitive medical information when it stated, "We collect information when you visit or use third-party websites . . . ." *Id*. at 954 (internal quotations omitted). The court rejected this argument, noting that while "'information' might be broad,'" a "contractual term is not ambiguous just because it is broad," and the "policy discloses the precise conduct at issue in this case." *Id*. (citing *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010) and dismissing CIPA claim).[2]

Plaintiffs' attempts to distinguish these authorities fall flat. Plaintiffs assert that the relevant policy in *Garcia*, "unlike here," disclosed "that the personal information at issue would be shared with a third party." Opp. at 9, n.5.[3] And Plaintiffs describe the disclosures in *Smith* as "detailed." *Id*. at 9. But both are true here as well. The DAA and Privacy Notice *specifically*

---

[2] Strangely, Plaintiffs cite *Smith* for the asserted proposition that "[g]enerally, consent is a fact-bound question." Opp. at 6, n.2. But in *Smith*, the Ninth Circuit affirmed that consent can be dispositive at the pleading stage. 745 F. App'x 8, 9 (9th Cir. 2018). In so holding, the Ninth Circuit concluded that "[t]he district court properly held that Plaintiffs consented to Facebook's data tracking and collection practices" and "properly dismissed the complaint."

[3] Plaintiffs also argue that *Garcia* involved a different provision of CIPA (Section 637.6), *see* Opp. at 9 n.5, but this is a distinction without a difference, as the provisions contain substantively identical language regarding consent. *Compare* CIPA § 637.6 (requiring "prior written consent of the individual") *with* CIPA § 631 (requiring "consent"); CIPA § 632 (requiring "the consent of all parties"); CIPA § 637.3 (requiring "express written consent").

*disclose* that Chase "may record . . . telephone conversations" with Plaintiffs and use their "voice[s] to verify [their] identity," and can share "personal information" with third parties for Chase's "everyday business purposes." Deck Decl. Exs. A, D, and E §§ III.D.8, VI.C. Plaintiffs thus consented to Chase's alleged use of software allegedly provided by Nuance to record calls and verify callers' identities.

Plaintiffs' own authority is unpersuasive, as is their mischaracterization of Chase's disclosures as "vague" and "generic." Opp. at 9. For instance, Plaintiffs rely on *In re Meta Pixel Healthcare Litigation* (*see* Opp. at 7, 9), which held that Meta's "generalized notice [wa]s not sufficient to establish consent." 647 F. Supp. 3d 778, 791 (N.D. Cal. 2022). Here, by contrast, the DAA specifically discloses the exact conduct at issue: Chase's alleged monitoring and recording of customers' conversations and the use of their voices to verify their identities. Deck Decl. Exs. A, D, and E § VI.C. And the DAA's Privacy Notice also explicitly disclosed the possibility that Chase may share personal information with third parties as Plaintiffs claim occurred here. As in *Garcia*, the specific identity of the alleged third party is of no moment. Mot. at 8; *Garcia*, 78 F. Supp. 3d at 1136. Rather, it is sufficient that the DAA discloses the *precise conduct* that forms the basis of Plaintiffs' claims.

Plaintiffs also seek to mischaracterize the Privacy Notice through selective quotation, but this too is unavailing. As an initial matter, Plaintiffs assert that because the Notice lists examples of personal information Chase *may* disclose, the Notice *forecloses* the disclosure of any other categories of personal information. Opp. at 10–11. But a plain reading of the Privacy Notice belies this interpretation, as the relevant provision states that "[t]he types of personal information [Chase] collect[s] and share[s] *depend on the product or service you have with us*," and that "[t]his information *can include*" (but is not limited to) "Social Security number and income[;] account balances and transaction history[; and] credit history and payment history." Deck Decl. Ex. A at Privacy Notice (emphasis added). Just like the term "information" in *Smith* was held to encompass sensitive medical information, the term "personal information" in the Privacy Notice would encompass voice print data (if it were shared with Nuance as Plaintiffs claim, which it is not).

Plaintiffs also argue that the Privacy Notice "paints a picture of a financial company sharing traditional financial information to support traditional banking functions." Opp. at 11. But again, nowhere in the Privacy Notice does Chase limit the "personal information" it may share to Plaintiff's nebulous concept of "financial information" (indeed, Social Security numbers are one of the enumerated examples). Moreover, Chase expressly discloses that it can share "personal information" for its "everyday business purposes" "such as to . . . maintain your account(s)." Deck Decl. Ex. A at Privacy Notice. Such account maintenance undoubtedly includes account *security*, which is (even accepting Plaintiffs' mischaracterization of the Notice) a "traditional banking function[]." Opp. at 11. Plaintiffs' argument that the Notice "does not disclose that information will be shared with nonaffiliates for any purpose other than marketing" (*id*. at 10–11) also fails, as it is based on a patent misreading of the Notice that ignores the plain language upon which Nuance relies. The Notice provides in relevant part that Chase "can share your personal information" "[f]or our everyday business purposes[,]" without limitation to any particular category of nonaffiliates.

Plaintiffs' contention that they were not on notice of the relevant disclosures because they were allegedly "buried" in the DAA is equally specious. *See* Opp. at 12–13. It is axiomatic that Plaintiffs have "a duty to read the terms of a contract before signing." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 965 (N.D. Cal. 2010); *see also id*. (citing *Employee Painters' Trust v. J & B Finishes*, 77 F.3d 1188, 1192 (9th Cir. 1996) for the proposition that a "party who signs a written agreement even without reading it is bound by its terms"). Plaintiffs do not dispute that they received, entered into, and are bound by the DAA. *See* Mot. at 4. They are thus charged with knowledge of its contents and bound by its terms.

Plaintiffs' cited cases do not change this result. In *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1285 (9th Cir. 2017), the Ninth Circuit held that the plaintiff was not bound by an arbitration provision contained in a product brochure that the plaintiff neither saw nor signed (because it was simply provided in the product box), and "whose contractual nature [was] not obvious." Opp. at 12 (citing same). Here, to the contrary, Plaintiffs do not and cannot dispute

that they received and entered into the DAA, *see* Mot. at 4, which expressly provides that it is "the basic *agreement* between you [Plaintiff] and us (JPMorgan Chase Bank, N.A. or 'Chase')," and that "[b]y signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement." Deck Decl. Ex. A at 5; *id*. Ex. B at 2; *id*. Ex. C at 2 (emphasis added). Plaintiffs also cite *Soo v. Lorex Corp*., No. 20-CV-01437, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020), which is similarly unhelpful to them. *Soo* involved an arbitration agreement in a so-called "shrinkwrap" agreement included with a camera the plaintiff purchased. *Id*. at *5. The provision was placed in an unrelated section of the unsigned agreement regarding "State/Provincial Law." *Id*. The same is not true here: the "Telephone and Electronic Communications" heading in the DAA expressly notified Plaintiffs that the section contained terms regarding such communications, including the recording of calls and use of voice authentication technology.

As a last-ditch effort to avoid dismissal based on consent, Plaintiffs argue that Nuance has not established that they received the Privacy Notice. Opp. at 12–13. But the operative DAA during the relevant statute of limitations period—from which Plaintiffs themselves quote—is titled "Deposit Account Agreement *and Privacy Notice*," and the Notice appears at the end of the document. *See* Deck Decl. Ex. A at Privacy Notice (emphasis added); Mot. at 4, n.5; *see also* Opp. at 8. Consequently, because Plaintiffs received the DAA and associated Privacy Notice and are presumed to have notice of their terms, Plaintiffs are bound by the provisions within.[4] Their CIPA claims are thus barred as a matter of law and should be dismissed with prejudice.

**b. Plaintiffs' Section 631(a) and Section 632(a) Claims Fail Because Nuance is Not a Third Party to Plaintiffs' Communications with Chase.**

Plaintiffs do not dispute that a party cannot eavesdrop on its own conversations, nor do they dispute that a party to a conversation may use a tool to record it. Opp. at 14 (citing *Rogers v. Ulrich,* 52 Cal. App. 3d 894, 899 (1975) for the proposition that "when one party to the

[4] As Nuance states in its Motion (and the DAA itself provides, *see* Ex. A at 1), the DAA is regularly updated, and its current terms are readily available to Plaintiffs and binding on them.

conversation uses a tool to record the other party to the conversation, § 631 (a) is not violated because wiretapping or eavesdropping requires a third party.”). Instead, Plaintiffs’ Opposition focuses on mischaracterizing the substantial line of authority supporting dismissal (the so-called “extension” approach) as “narrow” and “poorly reasoned,” and urging the Court to follow other cases representing the minority approach. Opp. at 15. But this false choice is a red herring because both lines of cases lead to dismissal of Plaintiffs’ 631(a) and 632(a) claims.

As explained in Nuance’s Motion, Plaintiffs’ “eavesdropping” claim fails because their allegations show that Nuance’s software is merely a tool allegedly used by Chase, a party to the conversations. Mot. at 9–13. In fact, Plaintiffs themselves characterize Nuance’s software as “a *tool* intended to be integrated into the call centers of companies that have licensed Nuance’s software.” CAC ¶ 27 (emphasis added). Courts in *Graham v. Noom* and its progeny have held that a plaintiff’s failure to plausibly allege that a technology provider captures communications for its own purpose—rather than to facilitate the owner’s purpose—is strong indicia that the provider’s service is “merely a tool,” *i.e.*, an extension of the party with whom the plaintiff communicated, and thus a CIPA claim cannot stand against the software provider. 533 F. Supp. 3d 823 (N.D. Cal. 2021); *see also* Mot. at 3 n.3 (collecting cases following *Graham* to dismiss CIPA cases involving tools). *Graham*’s holding logically aligns with the language (and spirit) of CIPA: a company’s use of software to effectuate its business does not transform the software provider into a third-party eavesdropper or wiretapper.

Plaintiffs argue that the software in this case cannot be a tool because it can “analyze [and] process data” and therefore is not “sufficiently simple.” Opp. at 18. But this vague “sufficiently simple” standard—for which there is no basis in law or common sense—cannot replace the sound analysis in *Graham*, where the question was not *whether* the software processes data, but for *what purpose*. At bottom, the court in *Graham*—and many courts since—have focused on whether the software provider obtains the purportedly intercepted information *for its own separate gain* rather than merely providing it back to the customer. The Complaint makes clear that Plaintiffs allege no such separate gain. *See* Opp. at 16–17 (citing various CAC provisions).

To avoid this reality, Plaintiffs urge the Court to follow *Javier v. Assurance IQ, LLC* and related decisions, which take the position that a software provider can only be considered a tool rather than a third party eavesdropper if, as relevant here, the provider does not have "the capability to use its record of the interaction for any other purpose" besides relaying it back to the customer. 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). If applied to its extreme (as Plaintiffs advocate), the "capability" test set forth in *Javier* is plainly inconsistent with the spirit of CIPA, as it would lead to absurd results based solely on the hypothetical technical capabilities of a software provider. Luckily, many courts have already recognized this concern and have interpreted *Javier* to ask whether the communications at issue can be used for a software provider's own purposes *in light of* the circumstances and purpose of the purported interception. Under this view, Plaintiffs' claim still fails because they do not and could not plausibly allege that Nuance *can* use any information allegedly obtained for any other purpose besides allegedly relaying it to Chase, let alone that it *has* done so. Numerous courts following *Javier* have dismissed similar claims for this very reason.

For example, in *Swarts v. The Home Depot, Inc.*, No. 23-CV-0995, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023), the plaintiff alleged that a third party software provider "accesse[d] and analyze[d] the recorded conversation[s] to understand what Home Depot customers want, to increase sales, fix inefficiencies, and improve experiences." *Id*. at *7. The court adopted the *Javier* approach but nonetheless granted Home Depot's motion to dismiss because it held that "[n]owhere in [the plaintiff's] complaint does he allege that [the provider], or any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot," *id.*, and thus the third party software was merely a tool used by Home Depot, a party to the communications.

Similarly, in *Yockey v. Salesforce, Inc.,* No. 22-CV-09067, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023), the plaintiffs alleged that the software provider "directly receive[d] electronic communications of visitors" to its client's websites and "analyze[d] the customer-support agent interactions in real time to create live transcripts of communications." The court applied *Javier*'s reasoning to dismiss the plaintiffs' Section 631(a) claim because the "allegations [did] not support a reasonable inference that [the software provider] has the capability to use these communications

for any purpose other than furnishing them to [the client.]" *Id.*; *see also Balletto v. Am. Honda Motor Co.*, No. 23-CV-01017, 2023 WL 7026931, at *3 (N.D. Cal. Oct. 24, 2023) (same).

Dismissal is required here for the same reason. While Plaintiffs cite various allegations in the Complaint regarding Nuance's alleged "use" of their conversations, Opp. at 16–17, none of these alleged uses involve anything other than allegedly *relaying information back to Chase*. *See, e.g.*, *id.* at 16 ("Nuance promises its clients that it will not only record the audio data of its customers, but that it will additionally analyze customer data so that it can answer questions about Chase customers, including Plaintiffs, in real time."); *see also infra* Section II.C.ii. At bottom, Plaintiffs allege only that Chase allegedly used Nuance's software for Chase's own purposes (including to ensure Plaintiffs were the customers on the accounts they sought to access). Nuance thus cannot be an eavesdropper or wiretapper under CIPA, and Plaintiffs' Section 631(a) and Section 632(a) claims fail.[5]

**c. Plaintiffs Cannot State a Claim Under Clauses Two or Three of Section 631(a).**

**i. Plaintiffs' 631(a) Clause Two "Eavesdropping" Claim Fails Because They Do Not Plausibly Allege That Nuance Learns the Contents or Meaning of Communications.**

Plaintiffs also fail to plausibly allege that the Nuance software learned or attempted to learn the "contents or meaning" of Plaintiffs' communications with Chase, as required to state a claim under Section 631(a) Clause Two. The Ninth Circuit has held that the "contents" of a communication "refers to the intended message conveyed by the communication," which "does

---

[5] Plaintiffs assert that the party exemption is "irrelevant to § 632" (Opp. at 2) but simultaneously argue that Nuance's Section 632 argument fails "for the same reasons" as its Section 631 argument, tacitly acknowledging its relevance. Opp. at 22. Moreover, Plaintiffs' reliance on *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107 (2006), which they characterize as "directly on point" for their Section 632 claim, is entirely misplaced. Opp. at 22–23. Though Plaintiffs contend that *Kearney* "found that [the defendant] had violated § 632 in secretly recording conversations with plaintiffs," *id.*, that is patently false. In *Kearney*, the California Supreme Court held that "California law should apply in determining *whether* the alleged secret recording of telephone conversations at issue in this case constitutes an unlawful invasion of privacy," and remanded to the trial court to follow that directive. 39 Cal.4th at 128 (emphasis added). And even though Plaintiffs cite *Kearney* following their assertion that "Nuance is a third party to Plaintiffs' communications with Chase," Opp. at 22, *Kearney* did not involve third parties. In short, Plaintiffs present no viable response to Nuance's arguments regarding their Section 632 claim.

not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Here, Plaintiffs claim that Nuance's software analyzes speech characteristics to verify callers' identities (*e.g.*, CAC ¶¶ 2, 31): this is quintessential "record information" not subject to Section 631(a) Clause Two.

Plaintiffs concede that "[r]ecord information is information *about* communications, like who is making the communication, their address, and the subscriber number." Opp. at 20 (citing *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) for the proposition that "record" information includes "the *name*, address, and subscriber number or *identity of a subscriber or customer*") (emphasis added). Despite this concession, however, Plaintiffs maintain that Nuance allegedly learned or attempted to learn the "contents" of their communications with Chase because they claim the Nuance software "analyzed *what* consumers say," and also because Plaintiffs' alleged "identif[ication of] themselves as a Chase customer" constituted the "contents" of their communications with Chase. Opp. at 20–21. These arguments fail because they are based on fundamental mischaracterizations of the Complaint and Nuance's argument.

First, though Plaintiffs allege generally that Nuance "eavesdropped" upon "the content" of their communications with Chase, these allegations merely parrot the statutory language and are insufficient to meet federal pleading standards. *See* CAC ¶¶ 48, 57, 66 (alleging that "[t]he content of [each Plaintiff's] confidential communications with Chase were intercepted in transit and captured, recorded, collected, read, analyzed, and stored by Nuance"); *Allison v. Wells Fargo Bank, N.A.*, No. 22-CV-0510, 2022 WL 10756885, at *3 (S.D. Cal. Oct. 18, 2022) ("Complaint language that 'simply parrots the statute without providing any factual support for the allegations' does not satisfy the plausibility pleading standard.") (citation omitted).

Significantly, the non-conclusory allegations in Plaintiffs' Complaint make clear that the Nuance software allegedly learns only record information: characteristics of Plaintiffs' voices and speech patterns, which are used to authenticate Plaintiffs' identities. *See, e.g.*, Opp. at 21 (quoting allegations supporting their contention that "Nuance's role [is] verifying that Chase callers are who

they say they are"). Though Plaintiffs argue that they have alleged Nuance "analyzes *what* consumers say" (Opp. at 20), the specific allegations in the Complaint clarify that this is allegedly true *only in the sense* that Nuance software is analyzing speech *characteristics*—*i.e.*, "'*how a person uses language*, including word choice, grammar, emojis, and acronyms." CAC ¶ 31 (emphasis added). Nuance software does nothing to learn the "message conveyed by the communication." *In re Zynga*, 750 F.3d at 1106.

Second, Plaintiffs argue that "record" information can be considered "content" if it is the "subject of the communication," which is allegedly the case here because "the contents of the communication is simply that a customer is identifying themselves as a Chase customer." Opp. at 21. This is another diversion that ignores Nuance's argument and the fundamental nature of the software that forms the basis of Plaintiffs' claims. The Complaint contains no plausible allegation that the software authenticates callers' identities based on any message they allegedly convey (be it their names or otherwise).[6] Rather, Plaintiffs' non-conclusory allegations suggest only that Nuance software examines a caller's voice and speech characteristics to verify their identity. Thus, Plaintiffs' reliance on *In re Zynga* for the proposition that "record information can become content if the record is the subject of a communication" is entirely misplaced. *See* Opp. at 21. Plaintiffs fail to plausibly allege that Nuance software is "eavesdropping" on the "subject of the[ir] communication" *at all*. Rather, Plaintiffs allege only that Nuance software is analyzing their speech characteristics to verify their identities. Plaintiffs' Clause Two claim thus fails.

**ii. Plaintiffs' 631(a) Clause Three "Use" Claim Fails Because They Have Not Stated a Clause One or Two Claim and They Fail to Plead "Use."**

The parties agree that "establishing a violation under the third clause of 631(a) first requires establishing a violation under one of the first two prongs." Opp. at 22. Plaintiffs fail to plead a violation of Clauses One or Two, and their claim under Clause Three should be dismissed for that reason alone. But their claim also fails because the Complaint makes clear that Nuance's alleged "use" of the purportedly intercepted information amounts to nothing more than lawfully providing

[6] Plaintiffs' allegations related to "'yes' or 'no' statements" are irrelevant. *See infra*, at 14–15.

that information back for the bank's own security purposes. *See id*. (citing CAC ¶ 32 for the proposition that "Nuance uses its recordings of customers' voices to create voice prints, which Nuance then uses to assess whether customers are who they purport to be and sends real-time alerts *to Chase to confirm the identities of customers*") (emphasis added); *Licea v. Old Navy*, No. 22-CV-01413, 2023 WL 3012527, at *3 (C.D. Cal. Apr. 19, 2023) ("Plaintiff[s] must provide facts suggesting that [Nuance] recorded [Chase]'s customers' information for some use or potential future use *beyond simply supplying this information back to [Chase]*.") (emphasis added).

Plaintiffs rest their entire Clause Three claim on what they admit is only an inference from the Complaint, rather than a clear and plausible allegation. Opp. at 22 (arguing their allegations support the "inference" that "Nuance uses the content of the wiretapped conversations to provide services to other clients that are not Chase"). The Complaint alleges only that Nuance "amassed a massive voiceprint database of individuals, including those it considers to be 'fraudsters'" and "can supposedly '[a]uthenticate trusted calls and then check caller voices against a watchlist to immediately alert on known fraudsters.'" CAC ¶ 32. Crucially, it does not allege that any alleged database of customers' voice prints is used by anyone other than the intended bank recipients (because it cannot do so truthfully). Plaintiffs try to fill this fatal gap by retreating to the weak argument that use by others is inferred. Opp. at 22 (quoting CAC ¶ 32). But that is not sufficient under established pleading standards,[7] and indeed is contradicted by numerous other allegations asserting that customer voice prints allegedly captured by Nuance software are used only in furtherance of the bank's own fraud detection efforts. *See, e.g.,* CAC ¶ 1 ("Nuance markets and provides an artificial intelligence software-as-a service that *allows businesses* to authenticate *their* customers' identities with their voice.") (emphasis added); *id.* ¶ 27 ("[C]ompanies use Nuance's biometric voice recognition software to verify *their callers'* identities.") (emphasis added); *id.* ¶ 39 (alleging that "the data, or voiceprints, that Nuance extracts from consumers while eavesdropping is then analyzed by Nuance before being provided to its business partners *like*

[7] "[U]nwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Washington Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996).

*Chase Bank* to authenticate consumers") (emphasis added). Plaintiffs cannot amend their Complaint through their Opposition. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

Because Plaintiffs do not and cannot allege Nuance's independent "use" of Plaintiffs' voice print data, Plaintiffs' Section 631(a) Clause Three claim fails.

**d. Plaintiffs Fail to State a Claim Under Section 637.3 Because the Nuance Software Does Not Function as a Lie Detector.**

The parties agree that Section 637.3 applies narrowly to the use of voice stress patterns to "detect the truth or falsity of statements." CIPA § 637.3(a). Beyond conclusory allegations that merely restate the statutory language, however, Plaintiffs plead no facts indicating that the Nuance software analyzes voice stress patterns for the purpose of detecting lies. Rather, Plaintiffs allege that the Nuance software uses such patterns only to authenticate Plaintiffs' identities. The court in *Balanza*r recently rejected a nearly identical Section 637.3 claim related to voice authentication software for this precise reason, holding that because the software did "not require a caller to claim they are the account holder or to make any other claim or affirmative statement," it was "nothing more than a biometric passcode and [wa]s not a lie detector" in violation of Section 637.3. 654 F. Supp. 3d at 1085–86. Plaintiffs' Section 637.3 claim similarly fails.

Plaintiffs' Opposition criticizes Nuance for "rel[ying] entirely on the district court's holding in *Balanzar*" (Opp. at 24), yet Plaintiffs offer *no* cases in support of their position. Moreover, they fail to distinguish the court's well-reasoned decision in *Balanzar*. Plaintiffs seek to distance themselves from the facts in *Balanzar* by arguing that "when a customer calls Chase for the first time, they are asked a series of 'yes' or 'no' questions to identify themselves," and "Nuance records this information and analyzes it for its truth, *i.e.* is the customer's claim that their name is X or their account number is Y true?" Opp. at 24 (citing CAC ¶ 2). The problem with this argument is that it blatantly misrepresents the allegations in the Complaint. Indeed, paragraph 2 of the Complaint (the only paragraph Plaintiffs cite in support of this argument) *does not state* that customers are "asked a series of 'yes' or 'no' questions to identify themselves," or that the

Nuance software "analyzes" customers' answers to those questions "for [their] truth." Opp. at 24. Rather, paragraph 2 alleges only that "Nuance is essentially a new generation lie detector test-one that is far more advanced than an old-fashioned polygraph that can only ask binary 'yes' or 'no' questions," and that the Nuance software "analyzes 'more than 1,000 characteristics' of a person's unique voice . . . to determine whether the person is a potential fraudster or telling the truth when they identify themselves to a business" (*i.e.*, to determine their identity). CAC ¶ 2.

This is consistent with the thrust of the Complaint, which alleges repeatedly that the Nuance software (like MyVoice) uses "voice biometrics" to "[a]uthenticate customers based on the distinct characteristics of their voice[s]." CAC ¶¶ 30–31; *see also id.* ¶ 27 (characterizing Nuance's software as "biometric voice recognition software," like MyVoice); *id.* ¶ 29 (alleging that Nuance's software "compare[s] the voice *characteristics* of later callers against their saved voice prints") (emphasis added). Because Plaintiffs do not (and cannot) allege that Nuance's software "require[s]" an "affirmative statement" to verify identity, as in *Balanzar*, it is only a purported "biometric passcode" that cannot support a Section 637.3 claim. 654 F. Supp. 3d at 1085–86.

## III. CONCLUSION

Plaintiffs' claims must be dismissed for the reasons identified in Nuance's Motion, and Plaintiffs' Opposition does nothing to change this unavoidable conclusion. Because amendment would be futile, as there are no factual allegations Plaintiffs could assert that would render their claims plausible, Nuance respectfully requests that this Court grant dismissal with prejudice and without leave to amend. *See Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013) ("A party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile.") (alteration and citation omitted); *see also Smith*, 262 F. Supp. 3d at 956 ("[C]ourts can dismiss without leave to amend if the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.") (citation omitted).

DATED: February 2, 2024

JENNER & BLOCK LLP

By: */s/ Kate T. Spelman*

Kate T. Spelman
David C. Layden
Attorneys for Defendant
Nuance Communications, Inc.