**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
kspelman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

**JENNER & BLOCK LLP**
David C. Layden (*pro hac vice*)
dlayden@jenner.com
353 North Clark Street
Chicago, IL 60654
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

*Attorneys for Defendant*
*Nuance Communications, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANA TURNER, DANIEL SMITH, and AARON YOUSHEI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NUANCE COMMUNICATIONS, INC.,<br><br>Defendant. | Case No. 4:22-cv-05827-DMR<br>*Consolidated with 4:23-cv-00797-DMR*<br><br>**DEFENDANT NUANCE COMMUNICATIONS, INC.'S ANSWER AND DEFENSES TO PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Judge: The Honorable Donna M. Ryu |

Defendant Nuance Communications, Inc., by and through its undersigned attorneys, files this answer and defenses to Plaintiffs' Second Amended Consolidated Class Action Complaint. To the extent any allegation in the Second Amended Consolidated Class Action Complaint is not specifically or expressly admitted, the allegation is denied. Nuance denies all allegations contained in headings and unnumbered paragraphs. Nuance answers the corresponding numbered paragraphs of the Second Amended Consolidated Class Action Complaint as follows:

**NATURE OF THE ACTION**

1. Defendant Nuance markets and provides an artificial intelligence software-as-a-service that allows businesses to authenticate their customers' identities with their voice. Nuance describes its technology, called "Gatekeeper," as a "cloud-native biometric security solution that enables frictionless, fast, and accurate authentication for legitimate persons while detecting and preventing fraudsters."

Answer: Nuance admits that the allegations in Paragraph 1 quote from a page on the Nuance website that describes software licensed and used by some Nuance customers, but denies that Plaintiffs have accurately and completely described that software. Nuance denies the remaining allegations in Paragraph 1.

2. Nuance is essentially a new generation lie detector test—one that is far more advanced than an old-fashioned polygraph that can only ask binary "yes" or "no" questions. Nuance listens to an individual's speech and analyzes "more than 1,000 characteristics" of a person's unique voice, such as the sound of a person's voice, how they talk, what they say, their pattern of speech, word choice, grammar, and syntax. Nuance uses "deep neural networks" and machine learning to determine whether the person is a potential fraudster or telling the truth when they identify themselves to a business.

Answer: Nuance denies the allegations in Paragraph 2.

3. Nuance performs its voice examination entirely in the "background of each engagement" or phone call. In other words, Nuance listens to the consumer's voice quietly in the background of a call, and in such a way that consumers will likely be entirely unaware they are

unknowingly interacting with a third-party company. This surreptitious voice print capture, recording, examination, and analysis process is one of the core components of Nuance's overall biometric security suite.

Answer: Nuance denies the allegations in Paragraph 3.

4. Services like Nuance are becoming increasingly popular in the digital era, as businesses seek to authenticate the identities of their customers dialing into their call centers. Nuance developed proprietary voice recognition software that records a consumer's voice, creates a biometric voice print of the caller, and then examines that voice print to determine whether the caller is a potential fraudster in future calls, and—above all—to determine whether the caller is telling the truth when identifying themselves and attempting to gain access to their customer account.

Answer: Nuance admits that it has developed voice authentication software that Nuance customers can license and use to analyze a caller's voice characteristics and compare them against a previously created voice print to facilitate verification of the caller's identity. Nuance denies that when its customers use Nuance software the software requires a caller to "identify[] themselves." Nuance denies the remaining allegations in Paragraph 4.

5. Businesses can partner with Nuance, and thus allow Nuance to have access to conversations made through the business's call centers. With this level of access, Nuance can verify a consumer's identity and determine whether the consumer is who they purport to be.

Answer: Nuance denies the allegations in Paragraph 5.

6. Nuance offers a robust software-as-a-service which Nuance touts provides "proactive monitoring, guidance, and services." The Gatekeeper product suite includes a variety of "platform features" like "[s]upport from Nuance's in-house team" and access to a "Fraud Data Share" program, which provides access to a database of voice prints collected from various Nuance customers.

Answer: Nuance admits that the allegations in Paragraph 6 quote from several pages on the Nuance website that describe software licensed and used by some Nuance customers, but

denies that Plaintiffs have accurately and completely described that software. Nuance denies the remaining allegations in Paragraph 6.

7. Nuance also uses voice print data collected from unsuspecting consumers to "tune, enhance, and improve" its artificial intelligence and machine-learning services. The company promises paying customers they will always benefit from Nuance's "latest algorithms" without needing a plan for product upgrades or migrations.

Answer: Nuance denies the allegations in Paragraph 7.

8. The use of voice analysis software without a consumer's consent poses a serious privacy risk. Voices are highly personal and can reveal a surprising amount of information about the individual, such as the individual's mental state and behaviors. For instance, machine-learning analysis of an individual's voice can reveal whether the individual is suffering from anxiety, the probability of the individual defaulting on their loan, and even the likelihood of them leaving a job.

Answer: The allegations in Paragraph 8 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance denies the allegations in Paragraph 8.

9. Biometric identification software exposes consumers to serious and irreversible privacy risks. This is especially true here where consumers are discussing sensitive personal information, such as financial information, and it is not clear to consumers that Nuance is recording, examining, and storing their voice prints, or otherwise involved in the conversation at all. Nuance's service is also known to have serious security flaws, including reports that Artificial Intelligence ("AI") generated voices trained to sound like a specific person can circumvent Nuance's security systems and gain access to an individual's sensitive personal information.

Answer: Nuance denies the allegations in Paragraph 9.

10. Recognizing the need to protect its citizens from situations like these, California enacted the California Invasion of Privacy Act ("CIPA"), and specifically California Penal Code §§ 631, 632, and 637.3, to regulate companies that record and/or examine California citizens'

voice prints or voice stress patterns without first obtaining consumers' prior express written consent. If left unchecked, California citizens are at risk of unknowingly having their voices analyzed and mined for data by third parties to make various determinations about their lifestyle, health, credibility, trustworthiness—and above all determine if they are in fact who they claim to be.

Answer: The allegations in Paragraph 10 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 10 purport to characterize the legislative history of CIPA but denies that Paragraph 10 does so accurately and completely. Nuance admits that certain sections of CIPA are codified at California Penal Code §§ 631, 632, and 637.3. Nuance denies any remaining allegations in Paragraph 10.

11. Despite these laws, Defendant disregards consumers' statutorily protected privacy rights and unlawfully uses, records, and/or examines their biometric voice print or voice stress pattern data in violation of CIPA. Specifically, Defendant has violated (and continues to violate) the CIPA because it uses a system which examines and records California residents' voice prints or other voice stress patterns without first obtaining their express written consent, in violation of CIPA's provisions. *See* Cal. Penal Code §§ 631, 632, and 637.3(a).

Answer: Nuance denies the allegations in Paragraph 11.

12. Accordingly, this Complaint seeks an Order: (i) declaring that Defendant's conduct violates CIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding damages to Plaintiffs and the proposed Class.

Answer: Nuance admits that Plaintiffs' Second Amended Consolidated Class Action Complaint seeks damages and other relief from Nuance. Nuance denies that it violated CIPA or engaged in any other wrongful conduct, denies that this case may properly be certified as a class action, and denies that Plaintiffs or the putative class members are entitled to recover damages or any other relief from Nuance in this action. Nuance denies any remaining allegations in Paragraph 12.

**PARTIES**

13. Plaintiff Dana Turner is a natural person and citizen of the State of California.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13, and therefore denies those allegations.

14. Plaintiff Daniel Smith is a natural person and a citizen of the State of California.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14, and therefore denies those allegations.

15. Plaintiff Aaron Youshei is a natural person and a citizen of the State of California.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15, and therefore denies those allegations.

16. Defendant Nuance Communications, Inc., is a corporation existing under the laws of the State of Delaware with its principal place of business located at 15 Wayside Road, Burlington, Massachusetts 01803.

Answer: Nuance admits the allegations in Paragraph 16.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because (i) at least one member of the Class, which consists of at least 100 members, is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000.000, exclusive of interest, fees, and costs, and (iii) none of the exceptions under that subsection apply to this action.

Answer: Paragraph 17 consists of a legal conclusion to which no response is required. To the extent a response is required, Nuance admits that this Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act. Nuance denies the remaining allegations in Paragraph 17.

18. This Court has personal jurisdiction over Defendant because it conducts business in this State, and the conduct alleged in this Complaint occurred in, and/or emanated from, this

State. Further, Plaintiffs' voice print or voice stress patterns and the content of Plaintiffs' communications were collected in this State.

Answer: Paragraph 18 consists of a legal conclusion to which no response is required. To the extent a response is required, Nuance admits that this Court has personal jurisdiction over Nuance. Nuance denies the remaining allegations in Paragraph 18.

19. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the conduct at issue occurred in, and/or emanated, at least in part, from this District.

Answer: Paragraph 19 consists of a legal conclusion to which no response is required. To the extent a response is required, Nuance admits that venue is proper in this District. Nuance denies the remaining allegations in Paragraph 19.

**FACTUAL BACKGROUND**

**I. The California Invasion of Privacy Act.**

20. The California Legislature enacted the Invasion of Privacy Act to protect the privacy rights of California citizens. The legislature expressly recognized that devices and techniques which create a serious threat to the free exercise of personal liberties cannot be tolerated in a free and civilized society. Specifically, the legislature recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

Answer: The allegations in Paragraph 20 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 20 purport to characterize the legislative history of CIPA but denies that Paragraph 20 does so accurately and completely. Nuance denies any remaining allegations in Paragraph 20.

21. As part of the Invasion of Privacy Act, the California Legislature introduced California Penal Code § 631(a). Its purpose was to prohibit any person or entity from (i) "intentionally tap[ping], or mak[ing] any unauthorized connection . . . with any telegraph or

telephone wire," (ii) "willfully and without the consent of all parties to the communication . . . read[ing], or attempt[ing] to read, or to learn the contents or meaning of any . . . communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or (iii) "us[ing], or attempt[ing] to use . . . any information so obtained." California Penal Code § 631(a) also penalizes anyone who "aids, agrees with, employs, or conspires with any person" who conducts the aforementioned wiretapping. Cal. Penal Code § 631(a).

<u>Answer:</u> The allegations in Paragraph 21 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 21 purport to characterize Section 631(a) of CIPA but denies that Paragraph 21 does so accurately and completely. Nuance denies any remaining allegations in Paragraph 21.

22. As part of the Invasion of Privacy Act, the California Legislature also introduced California Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." Cal. Penal Code § 632(a).

<u>Answer:</u> The allegations in Paragraph 22 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 22 purport to characterize Section 632(a) of CIPA but denies that Paragraph 22 does so accurately and completely. Nuance denies any remaining allegations in Paragraph 22.

23. Finally, as part of the Invasion of Privacy Act, the California Legislature introduced California Penal Code § 637.3, which prohibits any person or entity from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without

his or her express written consent given in advance of the examination or recordation." Cal. Pen. Code § 637.3(a).

Answer: The allegations in Paragraph 23 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 23 purport to characterize Section 637.3 of CIPA but denies that Paragraph 23 does so accurately and completely. Nuance denies any remaining allegations in Paragraph 23.

24. Creating a voice print and examining an individual's voice stress patterns requires extracting and analyzing an individual's phonetic features (including their unique speech patterns and characteristics, tone, rhythm, and pitch) from their voice. Such examination reveals a significant amount of information about the individual and can reveal the speaker's behavioral traits and determine the truthfulness of their statements. As such, a voice print serves as an audible "fingerprint" which can directly identify an individual.

Answer: The allegations in Paragraph 24 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance denies the allegations in Paragraph 24.

25. The California Legislature intended to protect individuals from the unauthorized recording and examination of their voice prints or voice stress patterns, especially when it takes place without an individual's knowledge or permission. Such surreptitious recording and examination poses a serious threat to California residents' personal liberties.

Answer: The allegations in Paragraph 25 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 25 purport to characterize the legislative history of CIPA but denies that Paragraph 25 does so accurately and completely. Nuance denies any remaining allegations in Paragraph 25.

26. Individuals may bring an action against the violator of California Penal Code §§ 631 and 632 for $5,000 per violation. *See* Cal. Penal Code §§ 631 and 632. Individuals may bring

an action against a violator of California Penal Code § 637.3 to recover actual damages or $1,000, whichever is greater. *See* Cal. Penal Code § 637.3(c).

Answer: The allegations in Paragraph 26 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 26 purport to characterize Sections 631, 632, and 637.3 of CIPA but denies that Paragraph 26 does so accurately and completely. Nuance denies the remaining allegations in Paragraph 26.

**II. Nuance Violates the California Invasion of Privacy Act.**

27. Polygraph tests have traditionally been administered on individuals to ostensibly determine whether they are telling the truth. Polygraph tests measure several physical indicators such as an individual's heart rate, breathing rate, skin conductivity, and blood pressure while being asked questions. The theory behind a polygraph test is that deceptive answers will produce different physical responses from truthful answers.

Answer: The allegations in Paragraph 27 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27, and therefore denies those allegations.

28. Similarly, voice prints and voice stress analysis tests seek to determine whether an individual is being deceptive by analyzing indicators in the speaker's verbal response. A voice stress test relies on the theory that certain verbal cues, such as a speaker's tone, pitch, rhythm, micro-tremors, and other subtle changes in voice convey information about the physiological and psychological state of the speaker.

Answer: The allegations in Paragraph 28 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance denies the allegations in Paragraph 28.

29. Nuance provides a voice recognition software-as-a-service called "Gatekeeper," which is a tool intended to be integrated into the call centers of companies that have licensed

Nuance's software. The businesses using Nuance's software include the world's largest corporations and financial institutions, including Chase Bank (discussed below). These companies use Nuance's biometric voice recognition software to verify their callers' identities.

Answer: Nuance admits that it has developed voice authentication software that Nuance customers can license and use to analyze a caller's voice characteristics and compare them against a previously created voice print to facilitate verification of the caller's identity. Nuance admits that it makes its Gatekeeper biometric security software available for license to customers subject to terms. Nuance admits that Gatekeeper is licensed to and used by some customers as a biometric security solution, but denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 29.

30. In its marketing materials, Nuance claims that its biometric voice recognition service is intended to efficiently detect and prevent fraud. Nuance represents that, through the application of "advanced biometrics," it is able to "authenticat[e] individuals by the way they talk, text and type and flagging potential bad actors in as quick as half a second."

Answer: Nuance admits that the allegations in Paragraph 30 quote from a page on the Nuance website that describes software licensed and used by some Nuance customers, but denies that Plaintiffs have accurately and completely described that software. Nuance denies the remaining allegations in Paragraph 30.

31. This authentication relies on the initial creation of a voice print derived from a recording and examination of the consumers' voice and voice stress patterns.

Answer: Nuance admits that it has developed voice authentication software that Nuance customers can license and use to analyze a caller's voice characteristics and compare them against a previously created voice print to facilitate verification of the caller's identity. Nuance denies the remaining allegations in Paragraph 31.

32. For example, when a customer calls Chase Bank for the first time, they are asked to provide personal information including, but not limited to, their first and last name. Nuance records the responses and creates a voice print for the customer.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegation that, "when a customer calls Chase Bank for the first time, they are asked to provide personal information including, but not limited to, their first and last name," and therefore denies those allegations. Nuance denies the remaining allegations in Paragraph 32.

33. During later calls, Nuance performs what is essentially a modern day lie detector test to authenticate customers. When a customer calls Chase Bank, either a customer service representative or Chase Bank's automated interactive voice system asks the customer for their first and last name. Nuance analyzes the customer's responses and compares their voice characteristics against their saved voice prints to determine if the caller is who they claim to be and to complete the authentication process.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegation that "[w]hen a customer calls Chase Bank, either a customer service representative or Chase Bank's automated interactive voice system asks the customer for their first and last name" and therefore denies those allegations. Nuance denies the remaining allegations in Paragraph 33.

34. Gatekeeper is far beyond a simple voice passcode. Nuance provides customers with a suite of "[p]latform features," including continuous product upgrades, access to its "latest algorithms," and "[s]upport from Nuance's in-house team of certified fraud experts who offer proactive monitoring, guidance, and services."




<u>Answer:</u> Nuance admits that the allegations in Paragraph 34 quote from a page on the Nuance website that describes software licensed and used by some Nuance customers, but denies that the allegations accurately and completely describe that software. Nuance denies the remaining allegations in Paragraph 34.

35. Gatekeeper has found success among businesses, like Chase Bank, that are looking to authenticate a large volume of customers quickly. To do so, Gatekeeper utilizes an "AI Risk Engine" with "[d]eep neural networks" that "[a]uthenticate[s] customers based on the distinct characteristics of their voice[]" and "analyze[s] word choice, grammar, syntax, and other elements across messaging and transcribed voice interactions." By "segment[ing]" and "cluster[ing]" voices and metadata from prior callers, Nuance turns individuals' personal biometric data into a product offering for corporate clients.

<u>Answer:</u> Nuance admits that the allegations in Paragraph 35 quote from a page on the Nuance website that describes software licensed and used by some Nuance customers, but denies that Plaintiffs have accurately and completely described that software. Nuance further denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 35.

36. Gatekeeper uses "voice biometrics" to "[a]nalyze[s] a person's unique voice signature, including physical and speech delivery factors." Nuance also uses "[c]onversational biometrics" or specifically "what [consumers] say" by analyzing "how a person uses language,

including word choice, grammar, emojis, and acronyms." Nuance further notes it uses "behavioral biometrics" which "analyzes how a person sounds, how they talk or type, and how they behave, while checking their device, network, location, and other factors for signs of fraud," as shown by Nuance's marketing below.




Answer: Nuance admits that the allegations in Paragraph 36 reference information that appears or previously appeared on pages on the Nuance website that describe software licensed and used by some Nuance customers, but denies that Plaintiffs have accurately and completely described that software. Nuance denies the remaining allegations in Paragraph 36.

37. Over the course of the last several years, tech companies have launched many AI models built on deep neural networks—but fundamentally they all follow similar principles. As summarized by Microsoft, Nuance's parent company:

> Deep learning works by relying on neural network architectures in multiple layers, high-performance graphics processing units deployed in the cloud or on clusters, and **large volumes of labeled data to achieve very high levels of text, speech, and image recognition accuracy.**

(Emphasis added). The key is that companies like Nuance that build AI models must start with a large volume of data. According to Nuance, the "single most important ingredient for a model based on machine learning is data."

Answer: Nuance admits that Microsoft is currently its parent company. Nuance admits that the first quote included in Paragraph 37 appears on a page on the Microsoft website, but denies that the page specifically references Nuance or its software. Nuance admits that the second quote included in Paragraph 37 appears on a page on the Nuance website, but denies that Plaintiffs have accurately and completely described that page. Nuance denies the remaining allegations in Paragraph 37.

38. Nuance is currently on the ninth generation of its AI Risk Engine—meaning true to its representations—it has adapted, tuned, and enhanced its product over the years for clients like Chase Bank. Unbeknownst to consumers using Chase's banking services, Nuance captures and stores their voice print data not only to help Chase Bank authenticate its customers, but also to help Nuance improve and enhance its product.

Answer: Nuance admits that the allegation in Paragraph 38 that "Nuance is currently on the ninth generation of its AI Risk Engine" purports to characterize Nuance marketing materials regarding its software but denies that Paragraph 38 does so accurately and completely. Nuance denies the remaining allegations in Paragraph 38.

39. Nuance's Privacy Policy currently acknowledges this:

> To build, train, and improve the accuracy of our automated methods of processing (including AI), we manually review some of the predictions and inferences produced by the automated methods against the underlying data from which the predictions and inferences were made. Snippets of your voice data, may be manually reviewed and transcribed into text for Nuance's product operation, tuning, maintenance, and enhancement.

Answer: Nuance admits that the allegations in Paragraph 39 purport to characterize its Privacy Policy but denies that Paragraph 39 does so accurately and completely. Nuance denies the remaining allegations in Paragraph 39.

40. Building on decades of experience recording and creating consumer voice prints, Nuance has also amassed a massive voice print database of individuals, including those it considers to be known or suspected "fraudsters." Nuance's technology can supposedly "[a]uthenticate

trusted calls and then check caller voices against a watchlist to immediately alert on known fraudsters."

Answer: Nuance admits that the allegations in Paragraph 40 purport to characterize its marketing materials regarding its software but denies that Paragraph 40 does so accurately and completely. Nuance denies the remaining allegations in Paragraph 40.

41. Customers, like Chase Bank, can access Nuance's "Fraud Data Share" program, which provides voice prints and metadata "from the many Nuance customers." In other words, part of the service Nuance markets and provides to paying customers is access to a repository of voice print data from "their peers around the world." This means, for example, that other Nuance clients have access to and benefit from any data collected from Chase Bank customers and shared with the program, and Chase has access to data Nuance collects from other customers as well.

Answer: Nuance denies the allegations in Paragraph 41.

42. Nuance further promises that "[o]nce they've enrolled a voiceprint, [a consumer's] account is secured for life," suggesting the company retains callers' biometric data for a significant period of time.

Answer: Nuance admits that the allegations in Paragraph 42 purport to characterize its marketing materials regarding its software but denies that Paragraph 42 does so accurately and completely. Nuance denies the remaining allegations in Paragraph 42.

43. The consequences of amassing a database of suspected fraudsters classified solely through voice analysis performed by artificial intelligence is dire. As a preliminary matter, artificial intelligence is extremely susceptible to racial and gender bias. It has been shown that artificial intelligence struggles to properly identify voices of non-white people and women. The danger that non-white people and women (and almost anyone) could be improperly classified by artificial intelligence as liars and fraudsters is serious.

Answer: The allegations in Paragraph 43 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance denies the allegations in Paragraph 43.

44. The fear of being improperly classified as a liar by technology like Nuance's Gatekeeper is by no means mere fiction. When First Direct, an HSBC affiliated bank, decided to use voice examination technology in its call centers, some individuals complained that they were locked out of their accounts because the software determined the individual was not who they purported to be. One woman commented, "I was locked out of my account for two weeks, which really put me in jeopardy because I was unable to pay my bills."

Answer: The allegations in the second and third sentences in Paragraph 44 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance lacks knowledge or information sufficient to form a belief about the truth of those allegations, and therefore denies those allegations. Nuance denies the remaining allegations in Paragraph 44.

45. Nuance's service has also been known to include serious security flaws, including that Nuance's system can be easily fooled by fraudsters. In March 2023, the *Guardian* reported that Nuance's voice authentication system can be tricked by simply using a free online AI voice cloning service using an audio recording of a person's voice.

Answer: Nuance denies the allegations in Paragraph 45.

46. Worse, Nuance surreptitiously creates voice prints from the consumer's voice without their knowledge or express written consent. In fact, Nuance's software seamlessly incorporates into its customers' call centers, without adequate notice (or any at all) that Nuance (a third-party) is even involved in the call. Nuance explains that its voice recognition solution "passively authenticates customers in seconds," requiring "[n]o passwords, [an]d no effort" to be inputted by those who are subject to its use.

Answer: Nuance denies the allegations in Paragraph 46.

47. When Gatekeeper is used on a telephone conversation, it is not like a tape recorder, or a "tool" used by one party to record the other. Instead, Nuance—a separate and distinct third party entity from the parties to the conversation—uses Gatekeeper to eavesdrop upon, record, extract data from, and analyze a conversation to which they are not a known party. The data, or

voice prints, that Nuance extracts from consumers while eavesdropping is then analyzed by Nuance before being provided to its business partners like Chase Bank to authenticate customers.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 47.

48. Nuance further uses Gatekeeper on calls between consumers and businesses such as Chase Bank to ascertain the truth or falsity of statements that consumers make during their telephone conversations with call centers. For example, Gatekeeper assesses consumers' assertions regarding personal information they provide to Chase—in this case, answers they provide when asked their first and last name.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 48.

49. Neither Nuance nor its call center customers inform the consumer (i) that a third party, Nuance, is listening in on the consumers' confidential communications with Nuance's customers like Chase Bank; (ii) that Nuance is tapping or otherwise making unauthorized connection with consumers' telephone conversations using the biometric software Gatekeeper; (iii) that the content of the consumers' confidential communications with companies such as Chase Bank is being recorded, collected, intercepted, and analyzed by the third-party Nuance; or (iv) that Nuance will create unique voice prints from the consumers and/or analyze the consumers' voice stress patterns and subsequently use them to verify their identity.

Answer: Nuance denies that its customers did not disclose to callers the use of Nuance software, and also denies that Nuance takes any of the actions described in Paragraph 49. Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 49.

50. Likewise, Nuance fails to obtain consent from consumers—express written or otherwise—prior to recording, examining, intercepting, collecting, and analyzing the consumers

voice prints and/or voice stress patterns and the content of their confidential conversations with Nuance customers like Chase Bank.

Answer: Nuance denies that its customers did not obtain consent from callers for the use of Nuance software, and also denies that Nuance takes any of the actions described in Paragraph 50. Nuance denies the remaining allegations in Paragraph 50.

51. Ultimately, Nuance's conduct disregards consumers' statutorily protected privacy rights in violation of California Penal Code §§ 631, 632, and 637.3.

Answer: Nuance denies the allegations in Paragraph 51.

**FACTS SPECIFIC TO PLAINTIFF TURNER**

52. Plaintiff Turner has called Chase's customer support call center on numerous occasions, including, most recently in or about October 2022.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52 and therefore denies those allegations.

53. Plaintiff Turner reasonably expected her conversation with Chase to be confidential and only between Plaintiff Turner and Chase. The conversation was with a banking entity, which naturally involves the discussion of confidential information, and Plaintiff Turner spoke to Chase on her personal telephone and not in the direct presence of others.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53 and therefore denies those allegations.

54. During the call with Chase Bank, Plaintiff Turner was asked to "[S]tate your first and last name."

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54 and therefore denies those allegations.

55. Unbeknownst to her, when Plaintiff Turner called Chase Bank's Contact Center, her telephone was tapped by Nuance using Gatekeeper's voice biometric security solution.

<u>Answer</u>: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiff Turner alleges she called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 55.

56. Likewise, and unbeknownst to Plaintiff Turner, when she called Chase's customer support, Nuance's technology recorded and examined her voice, including her voice stress patterns, to create a voice print. Plaintiff Turner's voice print was also automatically enrolled in Nuance's biometric voice print database. The content of Plaintiff Turner's confidential communications with Chase were intercepted in transit and captured, recorded, collected, read, analyzed, and stored by Nuance using Gatekeeper's voice biometric security solution.

<u>Answer:</u> Nuance denies the allegations in Paragraph 56.

57. When Plaintiff Turner subsequently called Chase's customer support, Nuance's technology examined her voice and the voice print it has stored in its database to authenticate Turner's identity and to determine the truth or falsity of her answers to Chase's questions during the call, including but not limited to Chase's request to "state [her] first and last name."

<u>Answer:</u> Nuance denies the allegations in Paragraph 57.

58. Neither Nuance nor Chase disclosed to Turner that her voice was being recorded or analyzed by Nuance to make a voice print—nor that her voice print was being enrolled in Nuance's voice print database—for the purposes of determining the truth or falsity of Turner's statements. Likewise, Plaintiff Turner did not give her consent, written or otherwise, to either Nuance or Chase to allow Nuance to wiretap her confidential communications with Chase.

<u>Answer:</u> Nuance denies that it recorded or analyzed Plaintiff Turner's voice, denies that Plaintiff Turner's voiceprint was "being enrolled in Nuance's voice print database," and denies that Nuance "wiretap[ped] [Plaintiff Turner's] confidential communications with Chase." Nuance denies the remaining allegations in Paragraph 58.

59. Plaintiff Turner did not give her consent—written or otherwise—to Nuance to collect her voice print and to examine, record, wiretap, or analyze her voice for any purpose whatsoever.

Answer: Nuance denies that Plaintiff Turner did not give her consent for Chase Bank's use of Nuance software, and also denies that Nuance takes any of the actions described in Paragraph 59. Nuance denies the remaining allegations in Paragraph 59.

60. Plaintiff Turner has, therefore, been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

Answer: Nuance denies the allegations in Paragraph 60.

61. Plaintiff Turner seeks statutory damages under CIPA as compensation for the injuries Defendant has caused.

Answer: Nuance admits that Plaintiff Turner alleges she seeks statutory damages under CIPA. Nuance denies that it violated CIPA or engaged in any other wrongful conduct, and denies that Plaintiff Turner, Plaintiff Smith, Plaintiff Youshei, or the putative class members are entitled to recover damages or any other relief from Nuance in this action. Nuance denies any remaining allegations in Paragraph 61.

**FACTS SPECIFIC TO PLAINTIFF SMITH**

62. Plaintiff Smith has called Chase's customer support call center on numerous occasions within the past two years.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 and therefore denies those allegations.

63. Plaintiff Smith reasonably expected his conversation with Chase to be confidential and only between Plaintiff Smith and Chase. The conversation was with a banking entity, which naturally involves the discussion of confidential information, and Plaintiff Smith spoke to Chase on his personal telephone and not in the direct presence of others.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63 and therefore denies those allegations.

64. During the call with Chase Bank, Plaintiff Smith was asked to "[S]tate your first and last name."

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64 and therefore denies those allegations.

65. Unbeknownst to him, when Plaintiff Smith called Chase Bank's Contact Center, his telephone was tapped by Nuance using Gatekeeper's voice biometric security solution.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiff Smith alleges he called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 65.

66. Likewise, and unbeknownst to Smith, when he called Chase's customer support, Nuance's technology recorded and examined his voice, including his voice stress patterns, to create a voice print. Plaintiff Smith's voice print was also automatically enrolled in Nuance's biometric voice print database. The content of Plaintiff Smith's confidential communications with Chase were intercepted in transit and captured, recorded, collected, read, analyzed, and stored by Nuance using Gatekeeper's voice biometric security solution.

Answer: Nuance denies the allegations in Paragraph 66.

67. When Plaintiff Smith subsequently called Chase's customer support, Nuance's technology examined his voice and the voice print it has stored in its database to authenticate Smith's identity and to determine the truth or falsity of his answers to Chase's questions during the call, including but not limited to Chase's request to "state [his] first and last name."

Answer: Nuance denies the allegations in Paragraph 67.

68. Neither Nuance nor Chase disclosed to Smith that his voice was being recorded or analyzed by Nuance to make a voice print—nor that his voice print was being enrolled in Nuance's voice print database—for the purposes of determining the truth or falsity of Smith's statements. Likewise, Plaintiff Smith did not give his consent, written or otherwise, to either Nuance or Chase to allow Nuance to wiretap his confidential communications with Chase.

Answer: Nuance denies that it recorded or analyzed Plaintiff Smith's voice, denies that Plaintiff Smith's voiceprint was "being enrolled in Nuance's voice print database," and denies that

Nuance "wiretap[ped] [Plaintiff Smith's] confidential communications with Chase." Nuance denies the remaining allegations in Paragraph 68.

69. Plaintiff Smith did not give his consent—written or otherwise—to Nuance to collect his voice print and to examine, record, wiretap, or analyze his voice for any purpose whatsoever.

Answer: Nuance denies that Plaintiff Smith did not give his consent for Chase Bank's use of Nuance software, and also denies that Nuance takes any of the actions described in Paragraph 69. Nuance denies the remaining allegations in Paragraph 69.

70. Plaintiff Smith has, therefore, been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

Answer: Nuance denies the allegations in Paragraph 70.

71. Plaintiff Smith seeks statutory damages under CIPA as compensation for the injuries Defendant has caused.

Answer: Nuance admits that Plaintiff Smith alleges he seeks statutory damages under CIPA. Nuance denies that it violated CIPA or engaged in any other wrongful conduct, and denies that Plaintiff Turner, Plaintiff Smith, Plaintiff Youshei, or the putative class members are entitled to recover damages or any other relief from Nuance in this action. Nuance denies any remaining allegations in Paragraph 71.

**FACTS SPECIFIC TO PLAINTIFF YOUSHEI**

72. Plaintiff Youshei has called Chase's customer support call center multiple times during the past two years.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 72 and therefore denies those allegations.

73. Plaintiff Youshei reasonably expected his conversation with Chase to be confidential and only between Plaintiff Youshei and Chase. The conversation was with a banking entity, which naturally involves the discussion of confidential information, and Plaintiff Youshei spoke to Chase on his personal telephone and not in the direct presence of others.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 73 and therefore denies those allegations.

74. During the call with Chase Bank, Plaintiff Youshei was asked to "[S]tate your first and last name."

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74 and therefore denies those allegations.

75. Unbeknownst to him, when Plaintiff Youshei called Chase Bank's Contact Center, his telephone was tapped by Nuance using Gatekeeper's voice biometric security solution.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiff Youshei alleges he called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 75.

76. Likewise, and unbeknownst to Plaintiff Youshei, when he called Chase's customer support, Nuance's technology recorded and examined his voice, including Youshei's voice stress patterns, to create a voice print. Plaintiff Youshei's voice print was also automatically enrolled in Nuance's biometric voice print database. The content of Plaintiff Youshei's confidential communications with Chase were intercepted in transit and captured, recorded, collected, read, analyzed, and stored by Nuance using Gatekeeper's voice biometric security solution.

Answer: Nuance denies the allegations in Paragraph 76.

77. When Plaintiff Youshei subsequently called Chase's customer support, Nuance's technology examined his voice and the voice print it has stored in its database. As alleged above, Nuance's technology did so in order to assess the truth or falsity of his answers to Chase's questions during the call, including but not limited to Chase's request to "state [his] first and last name."

Answer: Nuance denies the allegations in Paragraph 77.

78. Neither Nuance nor Chase disclosed to Youshei that his voice was being recorded or analyzed by Nuance to make a voice print—nor that his voice print was being enrolled in Nuance's voice print database—for the purposes of determining the truth or falsity of Youshei's

statements. Likewise, Plaintiff Youshei did not give his consent, written or otherwise, to either Nuance or Chase to allow Nuance to wiretap his confidential communications with Chase.

Answer: Nuance denies that it recorded or analyzed Plaintiff Youshei's voice, denies that Plaintiff Youshei's voiceprint was "being enrolled in Nuance's voice print database," and denies that Nuance "wiretap[ped] [Plaintiff Youshei's] confidential communications with Chase." Nuance denies the remaining allegations in Paragraph 78.

79. Plaintiff Youshei did not give his consent—written or otherwise—to Nuance to collect his voice print and to examine, record, wiretap, or analyze his voice for any purpose whatsoever.

Answer: Nuance denies that Plaintiff Youshei did not give his consent for Chase Bank's use of Nuance software, and also denies that Nuance takes any of the actions described in Paragraph 79. Nuance denies the remaining allegations in Paragraph 79.

80. Plaintiff Youshei has, therefore, been exposed to the risks and harmful conditions created by Defendant's violations of CIPA alleged herein.

Answer: Nuance denies the allegations in Paragraph 80.

81. Plaintiff Youshei seeks statutory damages under CIPA as compensation for the injuries Defendant has caused.

Answer: Nuance admits that Plaintiff Youshei alleges he seeks statutory damages under CIPA. Nuance denies that it violated CIPA or engaged in any other wrongful conduct, and denies that Plaintiff Turner, Plaintiff Smith, Plaintiff Youshei, or the putative class members are entitled to recover damages or any other relief from Nuance in this action. Nuance denies any remaining allegations in Paragraph 81.

**CLASS ALLEGATIONS**

82. **Class Definition**: Plaintiffs Dana Turner, Daniel Smith, and Aaron Youshei bring this action on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All residents of the State of California who had their voice prints, voice stress patterns, or other elements of their conversation recorded and examined by Nuance without first obtaining prior written consent.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

Answer: Nuance admits that Plaintiffs purport to describe an alleged putative class they seek to represent but denies that there is a basis to certify such an alleged class or any other class in this action. Nuance denies the remaining allegations in Paragraph 82.

83. **Ascertainability and Numerosity**: The exact number of Class members is unknown to Plaintiffs at this time, but on information and belief, there are thousands of people in the Class, making joinder of each individual member impracticable. Additionally, the Class is ascertainable because its members will be easily identified through Defendant's records.

Answer: Nuance denies the allegations in Paragraph 83.

84. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant violated California Penal Code §§ 631, 632, and 637.3;

(b) whether Defendant used a system which intentionally accessed, intercepted, read, learned, recorded, collected, and analyzed the communications of Plaintiffs and the Class;

(c) whether Defendant used a system which examines or records the voice prints or voice stress patterns of Plaintiffs and the Class;

(d) whether Defendant used voice prints or voice stress patterns to determine the truth or falsity of statements made by Plaintiffs and the Class; and

(e) whether Defendant obtained prior express written consent from Plaintiffs and the Class.

Answer: Nuance denies the allegations in Paragraph 84.

85. **Typicality**: Plaintiffs' claims are typical of the claims of all the other members of the Class. Plaintiffs and the Class members sustained substantially similar damages as a result of Defendant's uniform wrongful conduct, based upon the same interactions that were made uniformly with Plaintiffs and the Class.

Answer: Nuance denies the allegations in Paragraph 85.

86. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86 as to Plaintiffs' counsel and therefore denies those allegations. Nuance denies that Plaintiffs can fairly and adequately represent and protect the interests of the putative class as defined in the Second Amended Consolidated Class Action Complaint. Nuance further denies the allegation that it has no defenses unique to Plaintiffs. Nuance denies the remaining allegations in Paragraph 86.

87. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief

from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

Answer: Nuance denies the allegations in Paragraph 87.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Violation of Cal. Penal Code § 631(a)**
**(On Behalf of Plaintiffs and the Class)**

88. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

Answer: Nuance incorporates and reasserts its responses to Paragraphs 1 through 87 as though fully set forth here.

89. California Penal Code § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192–93 (1978); Cal. Penal Code § 631(a).

Answer: The allegations in Paragraph 89 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 89 quote language from *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192–93 (1978), but denies that Paragraph 89 describes that decision accurately and completely. Nuance denies any remaining allegations in Paragraph 89.

90. To establish liability under California Penal Code § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, or contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

Cal. Penal Code § 631(a).

Answer: The allegations in Paragraph 90 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 90 purport to characterize Section 631(a) of CIPA but denies that Paragraph 90 does so accurately and completely. Nuance denies any remaining allegations in Paragraph 90.

91. Nuance's Gatekeeper product is a "machine, instrument, or contrivance, or . . . other manner" used to engage in the prohibited conduct at issue here.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 91.

92. Defendant Nuance is a "separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Nuance was third party to any communication between Plaintiffs and members of the Class, on the one hand, and any entity Plaintiffs and members of the Class were communicating with, such as Chase Bank, on the other. *Id.* at 521.

Answer: Nuance denies the allegations in Paragraph 92.

93. At all relevant times, by using Gatekeeper, Nuance intentionally tapped, electrically or otherwise, the lines of telephone communication between Plaintiffs and Class Members, on the one hand, and the entities with whom Plaintiffs and Class Members were communicating, on the other hand.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 93.

94. At all relevant times, by using Gatekeeper, Nuance willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, or attempted to read, or learn the contents or meaning of electronic communications of Plaintiffs and Class members, while the electronic communications were in transit or passing over any wire, line, or cable or were being sent from or received at any place within California.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 94.

95. At all relevant times, by using Gatekeeper, Nuance used the content of Plaintiffs' and Class members' communications to analyze Plaintiffs' and Class members' voices for identification and emotion, and that content was illegally obtained in violation of the other, aforementioned prongs of California Penal Code § 631(a). Upon information and belief, Nuance further used and/or uses Plaintiffs' and Class members' voice print data to refine, tune, and enhance its product, including its AI Risk Engine, and allows paying customers to access Plaintiffs' and Class members' voice print data through its database.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time at which Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 95.

96. Plaintiffs and Class members did not consent to any of Defendant's actions discussed above. Nor have Plaintiffs and Class members consented to Defendant's intentional

access, interception, reading, learning, recording, collection, and analysis of Plaintiffs and Class members communications.

Answer: Nuance denies that Plaintiffs and the putative class did not give their consent for the use of Nuance software, and also denies that Nuance takes any of the actions described in Paragraph 96. Nuance denies the remaining allegations in Paragraph 96.

97. The violation of California Penal Code § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

Answer: Nuance denies the allegations in Paragraph 97.

98. On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with CIPA's requirements for the intentional access, interception, reading, learning, record, collection, and analysis of Plaintiffs' and Class members' communications as described herein; and (2) damages of $5,000 for each violation of CIPA pursuant to California Penal Code § 631(a).

Answer: Nuance admits that Plaintiffs are alleging that Nuance violated Section 631(a) of CIPA and are seeking damages and other relief. Nuance denies that it violated Section 631(a) of CIPA or engaged in any other wrongful conduct, denies that this case may properly be certified as a class action, and denies that Plaintiffs or the putative class members are entitled to recover damages or any other relief from Nuance in this action. Nuance denies any remaining allegations in Paragraph 98.

**SECOND CAUSE OF ACTION**
**Violation of Cal. Penal Code § 632(a)**
**(On Behalf of Plaintiffs and the Class)**

99. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

Answer: Nuance incorporates and reasserts its responses to Paragraphs 1 through 98 as though fully set forth here.

100. California Penal Code § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, use[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a).

Answer: The allegations in Paragraph 100 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 100 purport to characterize Section 632(a) of CIPA but denies that Paragraph 100 does so accurately and completely. Nuance denies any remaining allegations in Paragraph 100.

101. Nuance's Gatekeeper product is an "electronic amplifying or recording device."

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 101.

102. At all relevant times, the communications between Plaintiffs and Class members, on the one hand, and Chase Bank, on the other, were confidential.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 102 and therefore denies those allegations.

103. At all relevant times, Nuance intentionally used Gatekeeper to eavesdrop upon and record the confidential communications of Plaintiffs and the Class members, on the one hand, and Chase Bank, on the other.

Answer: Nuance denies that Chase Bank was using Gatekeeper during the time Plaintiffs allege they called Chase Bank's Contact Center. Nuance denies the remaining allegations in Paragraph 103.

104. When communicating with Chase Bank, Plaintiffs and Class members had an objectively reasonable expectation of privacy. Plaintiffs and Class members did not reasonably expect that anyone other than Chase Bank would be on the line, and that another third-party entity,

Nuance, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiffs and the Class members.

Answer: Nuance lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 104 pertaining to Plaintiffs' expectation of privacy when communicating with Chase Bank and therefore denies those allegations. Nuance denies the remaining allegations in Paragraph 104.

105. Plaintiffs and Class members did not consent to any of Nuance's actions. Nor have Plaintiffs or Class members consented to Nuance's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiffs and the Class members.

Answer: Nuance denies that Plaintiffs and the putative class did not give their consent for the use of Nuance software, and also denies that Nuance takes any of the actions described in Paragraph 105. Nuance denies the remaining allegations in Paragraph 105.

106. The violation of California Penal Code § 632(a) constitutes an invasion of privacy sufficient to confer Article III standing.

Answer: Nuance denies the allegations in Paragraph 106.

107. On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with CIPA's requirements for the use of an electronic amplifying or recording device that eavesdrops upon and records the communications of Plaintiffs and Class members as described herein; and (2) damages of $5,000 for each violation of CIPA pursuant to California Penal Code § 632(a).

Answer: Nuance admits that Plaintiffs are alleging that Nuance violated Section 632(a) of CIPA and are seeking damages and other relief. Nuance denies that it violated Section 632(a) of CIPA or engaged in any other wrongful conduct, denies that this case may properly be certified as a class action, and denies that Plaintiffs or the putative class members are entitled to recover

damages or any other relief from Nuance in this action. Nuance denies any remaining allegations in Paragraph 107.

**THIRD CAUSE OF ACTION**
**Violation of Cal. Penal Code § 637.3**
**(On Behalf of Plaintiffs and the Class)**

108. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

Answer: Nuance incorporates and reasserts its responses to Paragraphs 1 through 107 as though fully set forth here.

109. California Penal Code § 637.3 prohibits any person or entity in the State of California from using "any system which examines or records in any manner voice prints or other voice stress patterns of another person to determine the truth or falsity of statements made by such other person without his or her express written consent given in advance of the examination or recordation." Cal. Penal Code § 637.3(a).

Answer: The allegations in Paragraph 109 do not plead factual allegations about or specific to Nuance in any way and therefore do not require a response. To the extent a response is required, Nuance admits that the allegations in Paragraph 109 purport to characterize Section 637.3 of CIPA but denies that Paragraph 109 does so accurately and completely. Nuance denies any remaining allegations in Paragraph 109.

110. Defendant is a corporation and therefore an "entity" under CIPA. *Id.*

Answer: Nuance admits it is a corporation. Nuance denies the remaining allegations in Paragraph 110.

111. When Plaintiffs and the Class called call centers using Nuance's software (including, for example, Chase Bank) and identified themselves in response to a series of questions, including but not limited to stating Plaintiffs' first and last name, Defendant examined and recorded their voice prints or voice stress patterns to determine the truth or falsity of their statements. In other words, Defendant used its biometric voice recognition software to examine the caller's voice and determine whether the caller's statements accurately reflect who they claim to be.

Answer: Nuance denies the allegations in Paragraph 111.

112. Defendant automatically enrolled Plaintiffs' and the Class Members' voice prints into its voice print database.

Answer: Nuance denies the allegations in Paragraph 112.

113. Defendant did not obtain express written consent from Plaintiffs and the Class to use, examine, or record their voice prints or voice stress patterns for any purpose whatsoever.

Answer: Nuance denies that Plaintiffs and the putative class did not give their consent for the use of Nuance software, and also denies that Nuance takes any of the actions described in Paragraph 113. Nuance denies the remaining allegations in Paragraph 113.

114. The violation of California Penal Code § 637.3 constitutes an invasion of privacy sufficient to confer Article III standing.

Answer: Nuance denies the allegations in Paragraph 114.

115. On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with CIPA's requirements for the use, recording, and examination of voice prints as described herein; and (2) damages of $1,000 for each violation of CIPA pursuant to California Penal Code § 637.3(c).

Answer: Nuance admits that Plaintiffs are alleging that Nuance violated Section 637.3(a) of CIPA and are seeking damages and other relief. Nuance denies that it violated Section 637.3(a) of CIPA or engaged in any other wrongful conduct, denies that this case may properly be certified as a class action, and denies that Plaintiffs or the putative class members are entitled to recover damages or any other relief from Nuance in this action. Nuance denies any remaining allegations in Paragraph 115.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Dana Turner, Daniel Smith, and Aaron Youshei, on behalf of themselves and the Class, respectfully request that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Turner, Smith, and Youshei as representatives of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate CIPA;

C. Awarding statutory damages of $5,000 for *each* violation of CIPA pursuant to California Penal Code §§ 631(a) and 632(a), and $1,000 for *each* violation of CIPA pursuant to California Penal Code § 637.3(c);

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class;

E. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

Answer: The Prayer for Relief consists of a summary of the relief Plaintiffs seek, to which no response is required. To the extent a response is required, Nuance admits that Plaintiffs purport to seek the relief set forth in the Prayer for Relief but denies that it violated CIPA or engaged in any other wrongful conduct, denies that this case may properly be certified as a class action, and denies that Plaintiffs or the putative class members are entitled to recover damages or any other relief from Nuance in this action.

**JURY TRIAL**

Plaintiffs Dana Turner, Daniel Smith, and Aaron Youshei demand a trial by jury for all issues so triable.

Answer: Nuance admits that Plaintiffs demand a trial by jury. Nuance demands a jury trial on all claims, causes of action, and issues so triable.

**DEFENSES**

Below are Nuance's defenses to Plaintiffs' CIPA Section 631(a), 632(a), and 637.3 claims. By setting forth these defenses, Nuance does not assume any burden of proof as to any fact issue or other element of any cause of action or defense that properly belongs to Plaintiffs. Nuance reserves the right to amend or supplement its defenses. In asserting defenses as to putative class members' claims, Nuance in no way concedes any class may properly be certified and reserves its right to oppose certification of any class.

**FIRST AFFIRMATIVE DEFENSE**

**(No Reasonable Estimate of Damages)**

1. The claims of Plaintiffs and the putative class are barred, in whole or in part, because the recovery requested would not be a reasonable estimate of any actual damages, but instead would amount to a disparate penalty, akin to punitive damages for strict liability, given that Plaintiffs and the putative class members have not suffered any injury or incurred any harm to warrant such relief.

**SECOND AFFIRMATIVE DEFENSE**

**(Excessive Penalty)**

2. Any award of statutory or liquidated damages to Plaintiffs, who do not allege any actual damages, or any member of the putative class who likewise does not claim any actual damages, would constitute a grossly excessive penalty and would therefore violate Nuance's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and comparable provisions of the California Constitution.

**THIRD AFFIRMATIVE DEFENSE**

**(No Causation)**

3. The claims of Plaintiffs and the putative class are barred, in whole or in part, because Nuance's actions were not the actual or proximate cause of any loss suffered by Plaintiffs and/or members of the putative class.

**FOURTH AFFIRMATIVE DEFENSE**

**(No Traceability)**

4. The claims of Plaintiffs and the putative class are barred, in whole or in part, because any purported injury is not fairly traceable to the alleged conduct of Nuance, and so the relief sought would not redress any such injury.

**FIFTH AFFIRMATIVE DEFENSE**

**(No Damages)**

5. Plaintiffs' claims and the putative class members' claims fail, in whole or in part, because they have not sustained any cognizable injury or damages. Plaintiffs do not allege any injury beyond a technical statutory violation.

**SIXTH AFFIRMATIVE DEFENSE**

**(Failure To Meet Requirements of Fed. R. Civ. P. 23)**

6. Plaintiffs are not entitled to maintain their case as a class action because they fail to meet the requirements of Federal Rule of Civil Procedure 23.

**SEVENTH AFFIRMATIVE DEFENSE**

**(No Attorneys' Fees)**

7. The claims of Plaintiffs and the putative class are barred as to their recovery of attorneys' fees as to any purported cause of action for which such relief is not available.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Consent)**

8. The claims of Plaintiffs and the putative class are barred because Plaintiffs expressly consented to the conduct alleged to have violated CIPA.

**NINTH AFFIRMATIVE DEFENSE**

**(No Willfulness)**

9. Nuance's actions were proper and legal, and at all times it acted in good faith and without malice. To the extent there was any violation of CIPA, which Nuance denies, such violation(s) were not knowing and willful.

**TENTH AFFIRMATIVE DEFENSE**

**(Public Policy)**

10. Plaintiffs' allegations in the Second Amended Consolidated Class Action Complaint are contrary to public policy.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Waiver)**

11. To the extent any Plaintiff or any alleged member of the putative class has continued to call Chase's customer support call center after the filing of this action, their claims are barred, in whole or in part, by the doctrine of waiver.

Dated: July 23, 2024 JENNER & BLOCK LLP

By: /s/ Kate T. Spelman
Kate T. Spelman
David C. Layden

*Attorneys for Defendant*
*Nuance Communications, Inc.*